# UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMEC CONSTRUCTION MANAGEMENT, INC.,<br>f/k/a Morse Diesel International, Inc.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | Case No. 99-279 and<br>consolidated cases<br>(Judge Braden) |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S FOURTH MOTION FOR ADDITIONAL RELIEF AND REPLY IN SUPPORT OF PLAINTIFF'S REQUEST FOR CLARIFICATION

### INTRODUCTION

Plaintiff, AMEC Construction Management, Inc. ("ACMI"), f/k/a Morse Diesel International, Inc., respectfully responds to the Government's fourth motion in this case for additional relief related to the Court's January 26, 2007 Opinion granting the Government's motion for partial summary judgment (the "January 2007 Opinion"). ACMI also replies in support of ACMI's request for clarification related to the January 2007 Opinion filed on April 6, 2007.

Shortly after the Court issued the January 2007 Opinion, the Government filed three motions[1] requesting additional relief, clarification, and modification of the Court's opinion. The Government has now filed a fourth, similar motion on April 27, 2007, that, *inter alia,* seeks forfeiture of ACMI's $22,279,529 claim on the St. Louis Courthouse Phase II contract, which is

---

[1] On February 6, 2007, the Government filed a Motion for Reconsideration of the Court's Jurisdictional Ruling and on February 8, 2007 the Government filed a Motion for Clarification and/or Reconsideration of the January 2007 Order as well as a Motion for Additional Relief. ACMI responded to these three motions on April 6, 2007.

currently pending before the Contracting Officer and thus is not subject to forfeiture by the Court. *See* Defendant's Motion for Additional Relief and its response to Plaintiff's Request for Clarification and Defendant's Reply to Plaintiff's Response to the Government's Three Motions Filed Following the Court's January 26, 2007 Decision and Order, April 27, 2007 (the "April 27th Motion"). In scattershot fashion, much of what the Government seeks to modify in the January 2007 Opinion is designed to better insulate the Opinion from appellate challenge concerning the unconstitutionality of the forfeiture.

ACMI requests that the Court: (1) limit its revision of the total amount of ACMI's forfeited claims to those arithmetic and/or typographical errors contained in the January 2007 Opinion that ACMI has brought to the Court's attention; (2) confirm that ACMI's argument that the Government has waived its right to forfeiture because it contracted with ACMI knowing full well of the fraud upon which the forfeiture is based, is still pending before the Court; (3) confirm that ACMI's argument that the forfeiture is so massive in relation to the harm to the Government that the forfeiture violates the Due Process clause of the Constitution, is still being considered and will be addressed by the Court; and (4) deem the Government's Fifth Counterclaim moot in light of the Court's January 2007 Opinion.

## ARGUMENT

### I. The Government's Attempt to Re-Write the Amount of the Forfeited Claims is Improper

Despite having failed to challenge the value of ACMI's claims that have been forfeited in its three motions requesting modification, clarification, or additional relief with regard to the January 2007 Opinion, the Government now does so. As discussed more fully below in section II, the Court's opinion as interpreted by the Government forfeits a total of $78,467,637.16. This massive forfeiture is the direct result of the Government's successful

efforts to improperly consolidate Board cases and claims pending before Contracting Officers with the cases before this Court in order to increase the forfeiture the Government anticipated. The Government now appears to realize that its efforts to increase the forfeiture amount worked all too well, since the forfeiture is so large that it violates the Due Process Clause. Realizing the perilous state of the forfeiture it helped to create, the Government now seeks to *reduce* the forfeiture amount by challenging the value of ACMI's claims, because the constitutionality of the forfeiture turns on the ratio of the damages allegedly suffered by the Government to the amount of forfeited claims. The Government's belated effort to reduce the value of ACMI's claims is without any factual basis.

The Government's challenge to the value of ACMI's claims illustrates that there is a genuine issue of fact regarding the amount of the claims relating to Case Nos. 06-173, 06-174, 06-175, 06-176 and 06-179, underscoring that this case was not appropriate for summary judgment. The Government's claim that "it is improper to include, in the summation of Morse Diesel claims, both the $10,288,289 at issue in Case No. 06-179, GSBCA No 51518 and the $13,329,355.06 at issue in Case No. 06-176, GSBCA No. 14372, because they were duplicative" is incorrect and illustrates the factual dispute. April 27th Motion at 18.

Although there is some overlap between the claims at issue in Case No. 06-179 and the claims at issue in Case Nos. 06-173, 06-174, 06-175, and 06-176, these claims are not duplicative. In fact, the Government took the opposite position in October 1999, arguing that "this case [Case No. 98-908C; which became GSBCA No. 51518 and then became Case No. 06-179] and the GSBCA proceeding [GSBCA No. 14372, now Case No. 06-176] do not involve overlapping issues with regard to GSA's potential liability." Defendant's Status Report, United States Court of Federal Claims, No. 98-908C, October 21, 1999. Discovery is necessary

to resolve the factual question of whether the claims are entirely duplicative, as the Government now claims, or whether they are not, as the Government conceded in 1999.

The Government also asserts that that it was improper for the Court to forfeit separate sums for (1) Case No. 06-173C, GSBCA No. 13486; (2) Case No. 06-174C, GSBCA No. 13491; (3) Case No. 06-175C, GSBCA No. 13492; and (4) Case No. 06-176C, GSBCA No. 14372[2] because the claims in the first three cases listed above are repeated in the fourth listed case, Case No. 06-176C, which is an omnibus claim. The overlap between the omnibus claim and the three separate claims is $631,620. Since, at this stage of the case, summary judgment has been granted in favor of the Government, there is no basis for the Government to contest the value of ACMI's claims. Thus, the claims referenced in the January 2007 Opinion as forfeited total:

| | | |
|---|---|---|
| Forfeited in 99-279: | $ 935,318.00 | |
| Forfeited in 99-530: | $ 189,527.00 | |
| Forfeited in 99-531: | $ 1,257,279.00 | |
| Forfeited in 05-840: | $ 28,000,000.00 | |
| Forfeited in 06-173: | $ 91,700.00 | |
| Forfeited in 06-174: | $ 417,676.00 | |
| Forfeited in 06-175: | $ 122,244.00 | |
| Forfeited in 06-176: | $ 13,329,355.16 | |
| Forfeited in 06-177: | $ 50,000.00 | |
| Forfeited in 06-178: | $ 81,611.00 | (corrected from $86,611.00 on p. 44 of the January 2007 Opinion) |
| Forfeited in 06-179: | $ 10,288,889.00 | (corrected from $10,289,889 on p. 44 of the January 2007 Opinion) |
| Forfeited in 06-181: | $ 28,359.00 | (ACMI inadvertently omitted this number from its prior calculation) |
| | $ 54,791,958.16 | (total with corrected numbers) |

Throughout this case, the Government has vehemently sought to prevent ACMI from proving its claims, both by successfully arguing that discovery in this case be limited to the

---

[2] The January 2007 Opinion should be corrected on pages 41-43 to reflect the fact that each of these four cases – (1) Case Nos. 06-173C, GSBCA No. 13486; (2) Case No. 06-174C, GSBCA No. 13491; (3) Case No. 06-175C, GSBCA No. 13492; and (4) Case No. 06-176C, GSBCA No. 14372 – relate to the Phase I project and concern GSA Contract No. GS06P94GYC0037. None of these four cases concern Phase II (GSA Contract No. GS06P95GCZ0051).

Government's counterclaims and by successfully moving for summary judgment on forfeiture grounds. In resolving this case at the summary judgment stage, the Court was required to construe all evidence in the light most favorable to ACMI, the non-moving party, and draw all reasonable inferences in ACMI's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Israel Bio-Engineering Project v. Amgen, Inc.*, 475 F.3d 1256, 1263 (Fed. Cir. 2007). The Government cannot have the benefit of both a favorable ruling on summary judgment and a favorable inference that factual doubts should be resolved in its favor. If the Government now believes that the Court should make a finding as to the value of ACMI's claims rather than take the amounts pled at face value, the parties will need to have substantial discovery and a substantive hearing to determine the value of ACMI's claims.

Therefore, ACMI respectfully requests that the Court correct certain arithmetic and/or typographical mistakes in the January 2007 Opinion to reflect that the amount forfeited is $54,791,958.16 based upon the matters then pending before the Court, and reject the Government's request to reconsider the value of ACMI's claims. In the alternative, the Court can schedule a trial at which Plaintiff can prove the value of its claims.

## II. The Court's Opinion Results in a Forfeiture of $78,467,637.16

ACMI has consistently argued and adheres to its position that forfeiture is improper in this case, and that the Court's forfeiture order cannot extend to cases or matters not pending before the Court of Federal Claims. However, should the Court nevertheless order the forfeiture of matters pending before Contracting Officers, the total forfeiture in this case would be $78,467,637.16 if the Government's requests are granted. This includes the $54,791,958.16 forfeited by the Court's January 2007 Opinion plus (1) the $1,396,150 relating to the San Francisco contract that the Government requested the Court to forfeit in its Motion for

Additional Relief (filed on February 8, 2007) and (2) the $22,279,529 relating to the St. Louis Courthouse Phase II contract that the Government requested the Court to forfeit in its Motion for Additional Relief (filed on April 27, 2007). In such circumstances, the total amount forfeited is $78,467,637.16.

## III. The Government Waived its Right to Seek Forfeiture

In its most recent filing, the Government stated three times that the "Court plainly rejected" ACMI's argument that the Government waived its right to forfeiture, because the Government contracted with ACMI after the Government became aware of the fraud upon which the forfeiture is based, with respect to both the St. Louis Phase II and the Sacramento Courthouse contracts. As ACMI has previously argued, in *Carrier Corp. v. United States*, 328 F.2d 328 (Ct. Cl. 1964), the Court allowed the contractor to recover costs and expenses that "would not have been incurred had [the Government] acted with reasonable promptness after the full facts [regarding the fraud] were made known." *Id*. at 337. The Government appears to imply from the Court's decision to forfeit ACMI's claims that the Court rejected ACMI's waiver argument. In support of its position, the Government directs the Court to pages 37-40[3] and page 41 of the January 2007 Opinion. Nowhere in those five pages, nor anywhere else in the January 2007 Opinion, does the Court "plainly reject" ACMI's waiver argument. In fact, the Court does not mention ACMI's waiver argument in these pages, or anywhere else in the 50 page opinion, except to acknowledge that ACMI made the argument. Slip Op. at 36.

As ACMI explained in its April 6, 2007 filing, the auditor for the Government, John Walsh, discovered ACMI's fraud on the Phase I contract in 1995, yet the Government continued to engage ACMI's services in the years that followed. Deposition testimony by John Walsh on

[3] All references to the January 2007 Opinion referenced herein are to pages of the Slip Opinion.

May 4, 2007 further establishes that the Government reinstated ACMI after it knew of the alleged fraud, and in doing so waived its right to seek forfeiture. Transcript of May 4, 2007 deposition of John Walsh at 74:7-74:12. Attached as Exhibit 1. When Mr. Walsh was asked "as of April 10, 1995, you were aware, as was Mr. Anderson [Special Agent, Office of Inspector General, Kansas City, MO], of the specifics…relating to the alleged falsified billing as it relates to bonding costs; correct," Mr. Walsh answered "that's correct." Transcript of May 4, 2007 deposition of John Walsh at 74:7-74:12.

The testimony clearly establishes that the Government contracted with ACMI and continued to accept its work for more than <u>four years</u> after Mr. Walsh discovered the fraud in April 1995. The most striking example is the Phase II contract. After the Government knew of ACMI's fraud on the Phase I Contract (in April 1995), the Government nonetheless entered into the new and distinct Phase II contract with ACMI in September 1995. Later, during the performance of the Phase II contract, in April 1996, the Government terminated for convenience ACMI's Phase II contract. Even more bizarrely, the Government reinstated ACMI on the Phase II contract less than a month later on May 2, 1996. Yet, more than three years later, the Government terminated ACMI for default on June 16, 1999. Thus, despite knowing as early as April 1995 of ACMI's fraud, the Government entered into a second contract with ACMI, then terminated ACMI on the Phase II contract for convenience, then reinstated ACMI on the Phase II contract, and then ultimately terminated ACMI on the Phase II contract for default more than three years later. Remarkably, the Government's June 1999 termination for default of the Phase II contract was not based upon ACMI's fraud, but on purported contractual issues. It is absurd that the Government could require ACMI to continue work on the Phase II contract for

more than three years after the Government knew of the fraud committed by ACMI, without waiving any right of the Government to seek forfeiture.

Therefore, ACMI now restates its request that the Court confirm that ACMI's waiver argument is still pending before the Court and permit further discovery on this issue.

## IV. The Forfeiture Ordered in this Case Violates the Due Process Clause

On page 48 of the January 2007 Opinion, the Court explains that "since the court has not determined the damages due to the Government for violations of the Anti-Kickback Act and the Fraudulent Claims Act, Plaintiff's constitutional challenge under the Due Process Clause is not yet ripe." Slip Op. at 48. The apparent meaning of the Court's language is that the Court needs to determine the damages due to the Government in order to conduct the constitutional Due Process balancing test as described more fully in ACMI's prior pleadings. Plaintiff respectfully requests that the Court confirm this interpretation of the language on page 48 of the January 2007 Opinion, and conduct the requisite constitutional analysis.

## V. The Court Should Reject the Government's Argument That the Court Should Reconsider Its Jurisdiction to Decide the Fifth Counterclaim

The Government has again asked the Court to reconsider its ruling that the Court does not have jurisdiction over the Government's Fifth Counterclaim. As the Court pointed out during the February 8, 2007 telephone status conference, the Fifth Counterclaim is duplicative and the Government is not entitled to additional relief from this counterclaim. The Government appears to understand this, as it states in the April 27th Motion "[a]s pled, our Fifth Counterclaim incorporated the same factual allegations as the counts for violation of the False Claims Act, the Anti-Kickback Act, and the Special Plea in Fraud, 28 U.S.C. § 2514." Therefore, since no additional relief can be granted to the Government based on these counterclaims, the Court should rule that the Fifth Counterclaim is moot.

CONCLUSION

The Government has now filed four motions in an attempt to revise the January 2007 Opinion to help insulate the Opinion from reversal on appeal. Throughout this litigation, the Government has urged the Court to forfeit the greatest amount of ACMI's claims possible, and now, realizing that ACMI's Due Process challenge requires the Court to look at the ratio of claims forfeited to harm allegedly suffered by the Government, the Government now attempts to reduce the values of ACMI's forfeited claims. The confusion created by the Government's backpedaling underscores the fact that this case was not appropriate for summary judgment.

For the reasons stated above, ACMI requests that the Court: (1) limit its revision of the total amount of ACMI's forfeited claims to those arithmetic and/or typographical errors that ACMI has brought to the Court's attention; (2) confirm that ACMI's waiver argument is still pending before the Court; (3) confirm that the Court needs to determine the damages due to the Government in order to conduct the constitutional Due Process balancing test and therefore that ACMI's Due Process argument is still being considered and will be addressed by the Court; and (4) deem the Government's Fifth Counterclaim moot in light of the Court's January 2007 Opinion.

Respectfully submitted,

s/ James D. Wareham

James D. Wareham
Attorney of Record for Plaintiff
Kirby D. Behre
Danielle W. Pierce
Paul, Hastings, Janofsky & Walker LLP
875 Fifteenth Street, N.W.
Washington, D.C. 20005
Tel: 202-551-1728
Fax: 202-551-0128

Date: May 14, 2006

LEGAL USE 74977294.6