No. 99-279C and consolidated cases
(Judge Braden)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MORSE DIESEL INTERNATIONAL, INC.,
d/b/a/ AMEC CONSTRUCTION MANAGEMENT, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ADDITIONAL RELIEF RE THE COURT'S JANUARY 26, 2007 DECISION

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

JOYCE R. BRANDA
Director

PATRICIA R. DAVIS
Assistant Director

DOMENIQUE KIRCHNER
Senior Trial Counsel
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Fax: (202) 514-8624
Attorneys for Defendant

OF COUNSEL:

TRACY L. HILMER
Trial Attorney
Commercial Litigation Branch
Civil Division

ERIC L. MILLER
Office of the Inspector General
General Services Administration

DALTON PHILLIPS
CATHERINE CROW
General Services Administration

May 24, 2007

## TABLE OF CONTENTS


INTRODUCTION ..................................................................... 1

ARGUMENT ..................................................................... 3

I. This Court Plainly Rejected Plaintiff's Waiver Argument ..................... 3

II. Plaintiff's Amended Request That The Court Revise The Amount Of Claims Forfeited Should Be Rejected ..................... 9

III. The Government's Fifth Counterclaim Is Not Moot ..................... 12

CONCLUSION ..................................................................... 14

## TABLE OF AUTHORITIES

### CASES

American Heritage Bancorp v. United States,
61 Fed. Cl. 376 (2004) .......... 10

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) .......... 10, 11

Anderson v. United States,
47 Fed. Cl. 438 (2000), aff'd,
344 F.3d 1343 (Fed. Cir. 2003) .......... 10

Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,
853 F.2d 1557 (Fed. Cir. 1988) .......... 11

Becton Dickinson & Co. v. C.R. Bard, Inc.,
922 F.2d 792 (Fed. Cir. 1990) .......... 10

Bernhlau v. Principi,
291 F.3d 795 (Fed. Cir. 2002) .......... 4

Brown Constr. Trades, Inc. v. United States,
23 Cl. Ct. 214 (1991) .......... 10

Carrier Corp. v. United States,
164 Ct. Cl. 666,
328 F.2d 328 (1964) .......... 6, 7, 8, 9

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) .......... 11

Daff v. United States,
78 F.3d 1566 (Fed. Cir. 1996) .......... 12

FDIC v. Deglau,
207 F.3d 153 (3d Cir. 2000) .......... 11

Geiserman v. MacDonald,
893 F.2d 787 (5th Cir. 1990) .......... 11

Hartman v. Nicholson,
2007 WL 1016989 (Fed. Cir. April 5, 2007) .......... 3, 4, 9

Little v. United States,
138 Ct. Cl. 733.
152 F. Supp. 84 (1957) ........................................ 6

Martin J. Simko Const., Inc. v. United States,
852 F.2d 540 (Fed. Cir. 1988) ........................................ 8, 12

Medina Const., Ltd. v. United States,
43 Fed. Cl. 537 (1999) ........................................ 8

Morse Diesel Int'l, Inc. v. United States,
74 Fed. Cl. 601 (2007) ........................................ 1

Nisenbaum v. Milwaukee,
333 F.3d 804 (7th Cir. 2003) ........................................ 11

Perkin-Elmer Corp. v. Computervision Corp.,
732 F.2d 888 (Fed. Cir. 1984) ........................................ 4, 5, 9

Slattery v. United States,
53 Fed. Cl. 258 (2002) ........................................ 11

Supermex, Inc. v. United States,
35 Fed. Cl. 29 (1996) ........................................ 10

Tibbs v. City of Chicago,
469 F.3d 661 (7th Cir. 2006) ........................................ 11

UMC Electronics Co. v. United States,
45 Fed. Cl. 507 (1999) ........................................ 8

UMC Electronics Co. v. United States,
43 Fed. Cl. 776 (1999), aff'd,
249 F.3d 1337 (Fed. Cir. 2001) ........................................ 10

United States v. JT Const. Co.,
668 F. Supp. 592 (W.D. Tex. 1987) ........................................ 9

United States v. Rockwell Int'l Corp.,
795 F. Supp. 1131 (N.D. Ga. 1992) ........................................ 9

United States v. Shell Oil Co.,
34 F. Supp.2d 429 (E.D. Tex. 1998) ........................................ 8

United States v. Unified Indus., Inc.,
929 F. Supp. 947 (E.D. Va. 1996) ........ 8

Young-Montenay, Inc. v. United States,
1993 WL 721993 (1993), aff'd,
15 F.3d 1040 (Fed. Cir. 1994) ........ 10

## STATUTES

28 U.S.C. § 2514 ........ 1, 13

31 U.S.C. § 3731(d) ........ 8

31 U.S.C. § 3905(b)(1) ........ 13

41 U.S.C. § 604 ........ 1, 12, 14

41 U.S.C. § 605(a) ........ 8, 9

48 C.F.R. § 33.210 ........ 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MORSE DIESEL INTERNATIONAL, INC., d/b/a/ AMEC CONSTRUCTION MANAGEMENT, INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 99-279C and consolidated cases (Judge Braden) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ADDITIONAL RELIEF RE THE COURT'S JANUARY 26, 2007 DECISION

INTRODUCTION

On January 26, 2007, this Court issued an opinion granting our motion for partial summary judgment and declaring to be forfeited, pursuant to 28 U.S.C. § 2514, numerous claims of plaintiff, Morse Diesel International, Inc., now known as AMEC Construction Management, Inc. ("Morse Diesel" or "ACMI"). Morse Diesel Int'l, Inc. v. United States, 74 Fed. Cl. 601 (2007) ("the January 2007 opinion").[1]

On February 7, 2007, we respectfully requested reconsideration of the Court's ruling that it did not possess jurisdiction to entertain our counterclaims raised pursuant to: (1) the anti-fraud provisions of the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. § 604 (the "Ninth Counterclaim"); and (2) breach of contract based upon plaintiff's misrepresentations and fraud during the course of its performance of the four contracts (the "Fifth Counterclaim"). On February 8, 2007, we filed two additional motions respectfully requesting: (1) clarification and/or reconsideration of certain statements in the Court's January 2007 opinion; and (2)

[1] All references to the Court's opinion are to pages of the slip opinion. "A__" references are to the appendicies filed by the parties in the summary judgment proceedings.

additional relief, specifically, that the Court enter a judgment declaring to be forfeited Morse Diesel's certified claim relating to the San Francisco Customs House contract.

On April 6, 2007, Morse Diesel, in its motion for clarification and response to our three motions, had no objections to our February 8, 2007 motion for clarification and/or reconsideration of various statements in the January 2007 opinion. Morse Diesel, however, raised additional requests for clarification and/or reconsideration of various issues relating to the January 2007 opinion, and responded to our motion requesting reconsideration of the Court's jurisdictional ruling and opposed our motion requesting additional relief regarding the San Francisco Customs House contract.

On April 27, 2007, we respectfully filed a motion for additional relief requesting that the Court declare to be forfeited a June 2005 claim regarding the St. Louis Courthouse Phase II contract and also identified other misstatements in the January 2007 opinion and requested their correction. We also addressed: (1) Morse Diesel's April 6, 2007 requests for clarification and/or reconsideration of the January 2007 opinion; (2) Morse Diesel's opposition to our motion for additional relief regarding the San Francisco Customs House contract; and (3) Morse Diesel's response to our jurisdictional motion.

On May 14, 2007, Morse Diesel filed a brief that further responded to our various motions and in support of its motion requesting clarification of the January 2007 opinion. In its brief, Morse Diesel argues that the Government waived its right to forfeiture with respect to the St. Louis Courthouse Phase II contract and cites in support of its argument the May 4, 2007 testimony of John Walsh, an auditor in the GSA Office of Inspector General ("OIG"). Morse Diesel also requests that the Court state that (1) its argument that the Government has waived its right to forfeiture because it contracted with ACMI knowing full well of the fraud upon which

the forfeiture is based is still pending with the Court; and (2) its argument that the forfeiture is so massive in relation to the harm to the Government that the forfeiture violates the due process clause of the Constitution is also still pending and will be addressed by the Court. See May 14, 2007 Pl. Br. 2. In its response, Morse Diesel modifies its position with regard to the Government's Fifth Counterclaim for breach of contract and now asserts that the Court should find that counterclaim to be moot. See May 14, 2007 Pl. Br. 9. In its response, Morse Diesel now requests that the Court revise the $53,534,679.16 amount stated on page 2 of its January 2007 opinion to $54,791,958.16.

ARGUMENT

I. This Court Plainly Rejected Plaintiff's Waiver Argument

Morse Diesel persists in requesting that the Court alter its January 2007 opinion by stating that Morse Diesel's argument that the Government waived its right to forfeiture of Morse Diesel's claims has not been decided and remains pending for later resolution by the Court. See May 14, 2007 Pl. Br. 2. In its summary judgment briefs, Morse Diesel previously asserted that the Government was not entitled to forfeiture of Morse Diesel's claims relating to the St. Louis Courthouse Phase II contract and the Sacramento Courthouse contract, because GSA allegedly knew of Morse Diesel's frauds on those two contracts during the early stages of those two contracts. See Pl. Br. filed August 29, 2003 at 41-42. Morse Diesel argues that, because this Court did not extensively discuss its waiver argument in its opinion, this Court must have failed to decide the waiver issue. See May 14, 2007 Pl. Br. 6.

This is a faulty argument. A "'litigant's right to have all issues fully considered and ruled on . . . does not equate to a right to a full written opinion on every issue raised.'" Hartman v. Nicholson, 2007 WL 1016989 at *3 (Fed. Cir. April 5, 2007) (quoting Bernhlau v. Principi, 291

F.3d 795, 801 (Fed. Cir. 2002). No statute or rule compels the conclusion that a court must provide a complete written discussion of every issue raised by the parties. Id. Further, that "'the court did not specifically mention the argument in its opinion forms no basis for an assumption that it did not consider it. . . . That a court does not discuss certain propositions does not make the decision inadequate or suggest the . . . court failed to understand them.'" Hartman, 2007 WL 1016989 at *3 (quoting Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 901 (Fed. Cir. 1984)).

As we have demonstrated, this Court plainly rejected Morse Diesel's argument that the Government waived its right to forfeiture of Morse Diesel's claims relating to the St. Louis Courthouse Phase II contract, since the Court ruled that the Government was entitled to forfeiture of Morse Diesel's claims relating to the St. Louis Courthouse Phase II contract. Slip op. 37-40. Morse Diesel's contention that the Government waived its right to forfeiture of Morse Diesel's claims on the St. Louis Phase II contract was directly contrary to the Court's ruling that the Government was entitled to forfeiture of those same claims. Further, this Court did address Morse Diesel's waiver argument in its opinion since it found, "John Walsh, GSA Office of Inspector General, testified that before he received a November 8, 1996, memo from Plaintiff's Director of Risk Management [Kirwin Ford], Mr. Walsh did believe that the bond invoices stamped paid [for the St. Louis Courthouse Phase II contract] were accurate." Slip op. 18. Morse Diesel had argued that GSA knew about the "invoice stamping issue" on the St. Louis Courthouse Phase II contract in either late 1995 or early 1996. Pl. Br. filed August 29, 2003 at 41-42. This Court rejected that assertion because it found that John Walsh did believe prior to November 8, 1996, that the stamped paid invoices for the St. Louis Courthouse Phase II contract were accurate. Slip op. 18.

Similarly, this Court rejected Morse Diesel's argument that the Government waived its right to forfeiture of Morse Diesel's claims on the Sacramento contract, because the Court forfeited Morse Diesel's claims relating to the Sacramento Courthouse contract. Slip op. 40-41. Again, Morse Diesel's contention that the Government waived its right to forfeiture of Morse Diesel's claims on the Sacramento contract was directly contrary to the Court's ruling that the Government was entitled to forfeiture of those claims. Id.

Morse Diesel apparently confuses matters by now raising assertions involving the St. Louis Courthouse Phase I contract in attempting to argue for a waiver of the Government's right to forfeiture of claims relating to the St. Louis Courthouse Phase II contract. Thus, Morse Diesel asserts that John Walsh learned of Morse Diesel's fraud on the St. Louis Phase I contract in April 1995, and the Government later entered into the St. Louis Phase II contract with Morse Diesel in September 1995, and then terminated for convenience the St. Louis Phase II contract and reinstated it, by an agreement of Morse Diesel and GSA, on May 2, 1996. See May 14, 2007 Pl. Br. 7. Morse Diesel asserts that it is an absurd conclusion that, for more than three years after the Government knew of the fraud committed by Morse Diesel on the St. Louis Courthouse Phase I contract, the Government could require Morse Diesel to continue to work on the Phase II contract, without waiving any right of the Government to seek forfeiture on the Phase II contract. See May 14, 2007 Pl. Br. 7-8.

Morse Diesel has not even demonstrated that "the Government" knew about the fraud on the St. Louis Phase I contract in April 1995. A GSA OIG auditor is not "the Government" in any contractual sense, and Mr. Walsh and his supervisor did not have any contractual authority. Morse Diesel did not demonstrate the knowledge of the GSA contracting officer. Morse Diesel did not demonstrate that the GSA contracting officer knowing full well of the fraud on the St.

Louis Phase I contract entered into the St. Louis Phase II contract with Morse Diesel.

In addition, Morse Diesel's argument confuses two separate contracts: the St. Louis Phase I contract and the St. Louis Phase II contracts. A contractor's fraud on the St. Louis Phase I contract would not entitle the Government to a forfeiture of the claims of the contractor on the St. Louis Phase II contract. Little v. United States, 138 Ct. Cl. 773, 778, 152 F. Supp. 84, 87-88 (1957). Further, this Court imposed a forfeiture of Morse Diesel's claims on the St. Louis Phase II contract because of Morse Diesel's fraud on the St. Louis Phase II contract. Slip op. 40-41. Those frauds were committed by Morse Diesel in its submission of the first payment application on the Phase II contract in November 1995. On December 12, 2000, Morse Diesel entered a guilty plea in U.S. District Court for the Eastern District of Missouri in the matter United States v. Morse Diesel Int'l, Inc., No. 4:00CR00552 (E.D. Mo.) ("the E.D. Mo. plea"), with regard to this payment application. A110.

Moreover, as we demonstrated previously, there is no factual or legal basis for concluding that the Government waived its entitlement to forfeiture pursuant to the Special Plea in Fraud. See, e.g., Government's brief filed January 16, 2004, at 19. Morse Diesel bases its waiver argument upon Carrier Corp. v. United States, 164 Ct.Cl. 666, 328 F.2d 328 (1964). There, the contracting officer learned of the contractor's fraud in producing high-explosive shells and "ordered all production stopped." 328 F.2d at 332. Thereafter, the contracting officer, with the apparent knowledge of the Assistant Secretary of the Army, entered into a "supplemental agreement . . . untouched by the issue of fraud" and, on December 1, 1953, the contractor resumed production of the shells and reimbursed the Government for any damages that had been sustained. Id. at 336. On December 29, 1953, after production had been resumed, the Army cancelled the contract for violation of the False Claims Act. Id. at 334. The Court of Claims

allowed the contractor to recover only its cost and expenses of operation for the period December 1 through December 29, 1953, which resulted from the "supplemental agreement." Id. at 337.

The differences between Carrier and this case are evident. See, e.g., Government's brief filed January 16, 2004, at 19. In Carrier, the senior management of the company was unaware of the fraud. 328 F.2d at 332. In the present case, it has been admitted that senior officials (including the Chief Executive Officer (Piser) and the Chief Financial Officer (Fornella)) knew about the false indemnity charges, and it has been admitted in two guilty pleas that Morse Diesel bears liability for the acts of its Risk Manager (Ford) in procuring false bond invoices for presentment to the GSA. See Def. PFUF Nos. 57, 60, 90, 99, 106, filed April 29, 2003, and our Rebuttal to Plaintiff's Responses to same filed January 20, 2004; A720-23, 1448, 1451-53.

Further, in Carrier, the officers of the company "cooperated fully" in the investigation of the allegations. 328 F.2d at 332. Here, Morse Diesel's officers did not cooperate with the Government's investigation. Mr. Ford testified only after receiving immunity letters, and both the CEO (Mr. Piser) and the CFO (Mr. Fornella) declined to answer any of the Government's questions, invoking instead the protections of the Fifth Amendment. Morse Diesel also refused to turn over notes from its investigation of the matter, even though it had relied upon information garnered in that investigation in attempting to defend itself before GSA's debarring official. See Defendant's Motion to Compel (filed Feb. 13, 2001). Thus, unlike the Carrier case, where the Government gained knowledge of the fraud with the company's cooperation, the Government in this case has discovered the fraud solely by its own efforts. Indeed, Morse Diesel has attempted to evade responsibility in this proceeding even for conduct to which it has admitted in its guilty pleas. Morse Diesel refused to concede civil liability for its criminal misconduct until November 27, 2002 (Plaintiff's Answer to Defendant's Counterclaim, A49-75), filing multiple answers to

the Government's counterclaims over the course of three years denying liability under the FCA. See Plaintiff's Answer to Defendant's Counterclaims in Case No. 00-531, served February 22, 2001, ¶¶ 108-10, 113-15, denying FCA liability; Plaintiff's Answer to Defendant's Counterclaims in Case No. 99-279, filed March 18, 2002, ¶¶ 128-30, 132-34, denying FCA liability. This behavior continued even after ACMI's guilty pleas, notwithstanding that ACMI was liable under the FCA as a matter of law under 31 U.S.C. § 3731(d) and by the operation of collateral estoppel. Id.

Further, unlike Carrier, Morse Diesel did not enter into a "subsequent agreement . . . untouched by the issue of fraud," and never resumed production pursuant to such an agreement. 328 F.2d at 336. In addition, Carrier predates Congress' adoption of the CDA in 1978. In the CDA, Congress provided that a contracting officer is not authorized "to settle, compromise, pay, or otherwise adjust any claim involving fraud." 41 U.S.C. § 605(a)[2]; Martin J. Simko Const., Inc. v. United States, 852 F.2d 540 (Fed. Cir. 1988) (holding that Government's fraud counterclaims need not, and as a matter of law cannot, be the subject of a contracting officer's final decision because the contracting officer, under 41 U.S.C. § 605(a), does not have authority to issue decisions upon claims involving fraud); UMC Electronics Co. v. United States, 45 Fed. Cl. 507, 509 (1999) ("contracting officer cannot find fraud, but must refer suspected cases of fraud to the Department of Justice for revew pursuant to 41 U.S.C. § 605(a)"); Medina Const., Ltd. v. United States, 43 Fed. Cl. 537, 549 (1999); see United States v. Shell Oil Co., 34 F. Supp.2d 429, 432 (E.D. Tex. 1998) ("Federal agencies are specifically prohibited by statute from adjudicating or compromising civil fraud claims."); United States v. Unified Indus., Inc., 929 F.

[2] The FAR implements this CDA provision and instructs contracting officers not to settle, compromise, pay or adjust any claim involving fraud. 48 C.F.R. § 33.210.

Supp. 947, 950 (E.D. Va. 1996) (section 605(a) was added to the CDA to "insure that cases involving fraud were not subject to the contract dispute resolution provisions of [§605(a)]"); United States v. Rockwell Int'l Corp., 795 F. Supp. 1131 (N.D. Ga. 1992); United States v. JT Const. Co., 668 F. Supp. 592 (W.D. Tex. 1987). Thus, pursuant to the CDA, 41 U.S.C. § 605(a), a contracting officer cannot even make a "supplemental agreement" like the one at issue in Carrier. Accordingly, the Court should deny Morse Diesel's request that it modify its January 2007 ruling by stating that Morse Diesel's waiver argument remains pending and that Morse Diesel's argument that the Government waived its right to frfeiture because it contracted with Morse Diesel knowing full well of the fraud is still pending before the Court. See May 14, 2007 Pl. Br. 2.[3]

II. Plaintiff's Amended Request That The Court Revise The Amount Of Claims Forfeited Should Be Rejected

In its May 14, 2007 brief at 4-5, Morse Diesel requests that the Court revise the $53,534,679.16 amount stated on page 2 of its January 2007 opinion to $54,791,958.16, and asserts that the Government and the Court must take the amounts pled in Morse Diesel's

[3] Morse Diesel also requests that this Court confirm that its argument that the forfeiture is so massive in relation to the harm to the Government that the forfeiture violates the due process clause of the Constitution is still being considered and will be addressed by the Court. See May 14, 2007 Pl. Br. 2.

Like its waiver argument, Morse Diesel's due process defense to the requested forfeiture of its claims was necessarily decided by the Court in its January 2007 opinion. Morse Diesel's assertion that the requested forfeitures of its claims violated due process was directly contrary to the Court's ruling that Morse Diesel's claims were forfeited because of its fraud. As discussed above, that a court does not discuss certain propositions does not make the decision inadequate or suggest the . . . court failed to understand them.'" Hartman, 2007 WL 1016989 at *3 (quoting Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 901 (Fed. Cir. 1984)). This Court rejected Morse Diesel's due process defense to the forfeitures of its claims because it granted those same forfeitures.

complaints and notices of appeal to the GSBCA "at face value." Morse Diesel further asserts that, if its claim relating to the San Francisco contract and its claim relating to the St. Louis Courthouse Phase II contract are also forfeited, then the amount should be $78,467,637.16. See May 14, 2007 Pl. Br. 5. Morse Diesel asserts that if the amounts pled are not taken "at face value," the parties will need to have substantial discovery and a hearing to determine the true value of Morse Diesel's claims. See May 14, 2007 Pl. Br. 4-5.

Morse Diesel's argument is without merit for several reasons. First, only disputes about issues of material fact preclude entry of summary judgment. The substantive law identifies which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 796 (Fed. Cir. 1990). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. In this case, the asserted value of Morse Diesel's claims was not a material fact in the determination of the Government's motions for partial summary judgment. No statute, regulation or rule compels the Court's determination of a contractor's claims prior to its determination of the Government's Special Plea in fraud. Indeed, this Court generally determines the merits of the Government's Special Plea in fraud, often in summary judgment proceedings, before any consideration of the merits of a contractor's claims. See, e.g., American Heritage Bancorp v. United States, 61 Fed. Cl. 376 (2004) (granting summary judgment on Special Plea); Anderson v. United States, 47 Fed. Cl. 438 (2000) (same), aff'd, 344 F.3d 1343 (Fed. Cir. 2003); UMC Electronics Co. v. United States, 43 Fed. Cl. 776 (1999), aff'd, 249 F.3d 1337 (Fed. Cir. 2001); Supermex, Inc. v. United States, 35 Fed. Cl. 29 (1996); Young-Montenay, Inc. v. United States, 1993 WL 721993 (Fed. Cl. 1993), aff'd, 15 F.3d 1040 (Fed. Cir. 1994); Brown Constr. Trades, Inc. v. United States, 23 Cl. Ct. 214 (1991).

Further, even if the issue of fact is material, however, summary judgment is not precluded

unless the dispute about a material fact is "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). Accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Avia Group Int'l, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1560 (Fed. Cir. 1988).

It is evident that there is no factual basis for either the amount stated on page 2 of the January 2007 opinion or the amount stated in Morse Diesel's briefs. Morse Diesel's amount of $54,791,958.16 is derived solely from amounts stated in its complaints and notices of appeal to the GSBCA. But, a party's complaint or notice of appeal is not evidence. Tibbs v. City of Chicago, 469 F.3d 661, 663 n.2 (7th Cir. 2006); Nisenbaum v. Milwaukee, 333 F.3d 804, 810 (7th Cir. 2003); FDIC v. Deglau, 207 F.3d 153, 172 (3d Cir. 2000); Geiserman v. MacDonald, 893 F.2d 787, 793 (5th Cir. 1990); Slattery v. United States, 53 Fed. Cl. 258, 281 (2002). Morse Diesel's amount of $54,791,958.16, based solely upon its complaints and notices of appeal, has no evidentiary basis, and should be rejected. Id. Further, Morse Diesel's argument that the Court is required to construe all evidence in the light most favorable to ACMI and draw all reasonable inferences in its favor, see May 14, 2007 Pl. Br. 5, is irrelevant, because there is no evidence supporting Morse Diesel's $54,791,958.16 amount. Moreover, as we have demonstrated, Morse Diesel's current argument is remarkable for the fact that it even contradicts the statements of James Brogan, then ACMI's Executive Vice President, who submitted a signed declaration to this Court, dated February 19, 2004. See Government's Brief filed April 27, 2007, at 9-18.

Similarly, there is no evidentiary basis for Morse Diesel's assertion that if its claim relating to the San Francisco contract and its June 15, 2005 claim relating to the St. Louis

Courthouse Phase II contract are also forfeited, then the total amount should be $78,467,637.16. See May 14, 2007 Pl. Br. 5. Mr. Brogan, in his February 19, 2004 signed declaration at p. 12, which was submitted by Morse Diesel, attributed only $624,000 to Morse Diesel's San Francisco contract claim, not the $1,296,150 amount asserted in Morse Diesel's brief. See May 14, 2007 Pl. Br. 5. Again, Morse Diesel makes arguments without a basis in fact and contrary to the signed declaration of its authorized representative.

III. The Government's Fifth Counterclaim Is Not Moot

We respectfully requested reconsideration of the Court's ruling that it did not possess jurisdiction to entertain our counterclaims raised pursuant to: (1) the anti-fraud provisions of the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. § 604 (the "Ninth Counterclaim"), and (2) breach of contract based upon plaintiff's misrepresentations and fraud during the course of its performance of the four contracts (the "Fifth Counterclaim"). Martin J. Simko Constr., Inc., 852 F.2d at 548 (Government's fraud based claims were improperly denied for want of a prior decision of a contracting officer); Daff v. United States, 78 F.3d 1566, 1574 n.11 (Fed. Cir. 1996). At the February 8, 2007 status conference, the Court indicated that it had not intended to dismiss our Ninth Counterclaim, which asserted violation of the anti-fraud provisions of the CDA, 41 U.S.C. § 604. Morse Diesel has no objection to the Court's granting our motion with regard to the Ninth Counterclaim. See April 6, 2007 Pl. Br. 4.

Morse Diesel now asserts that the Government's Fifth Counterclaim for breach of contract based upon fraud is moot, because no additional relief allegedly can be granted by the Court on the Fifth Counterclaim. See May 14, 2007 Pl. Br. 9. This Court has not yet awarded the Government any damages, and Morse Diesel's assertion that this Court can not grant any additional relief on the Fifth Conterclaim is premature. Morse Diesel also does not cite any legal

authority for its argument.

As pled, our Fifth Counterclaim incorporates the same factual allegations as the counts for violation of the False Claims Act, the Anti-Kickback Act, and the Special Plea in fraud, 28 U.S.C. § 2514. Thus, for example, the Fifth Counterclaim also incorporates the Government's allegations that, despite certifying on each progress payment application that Morse Diesel had complied with regulatory and contractual requirements, Morse Diesel on a regular basis withheld payments from subcontractors and suppliers, and made payments to subcontractors more than seven days after the Government had paid Morse Diesel for the work performed by the subcontractors. We also alleged that MDI used its false certifications that it (1) had paid past subcontractor and supplier invoices, and (2) would pay current invoices from the proceeds of progress payments, to obtain payment from GSA. FAR 52.232-5 clearly provided that the Government would not pay a contractor unless it made such a representation on its invoices. We alleged that Morse Diesel's certifications were false because, Morse Diesel had not paid subcontractor and supplier invoices from the prior invoicing period, and did not pay some for the current period. According to FAR 52.232-27, entitled "Prompt Payment for Construction Contracts," which implements the Prompt Payment Act, 31 U.S.C. § 3905(b)(1), Morse Diesel was required to pay its subcontractors and material suppliers within seven days of receipt of payment from the Government for the invoice. The Government's allegations relating to subcontractors have not yet been addressed and they are part of the Fifth Counterclaim. In sum, this Court has not yet awarded the Government any damages, and elements of the Government's counterclaims have not yet been resolved. Accordingly, our Fifth Counterclaim may not be dismissed as moot.

CONCLUSION

For the reasons stated above and those stated in our prior motions, we respectfully request that the Court correct certain misstatements in its January 2007 opinion. The Court also should reconsider its January 2007 opinion and hold that it possesses jurisdiction of the Government's Ninth Counterclaim brought pursuant to the CDA's anti-fraud provision, 41 U.S.C. § 604, and its Fifth Counterclaim for breach of contract based upon plaintiff's multiple frauds. The Court also should grant additional relief by directing entry of a judgment declaring to be forfeited Morse Diesel's claim relating to the San Francisco Customs House contract and its June 2005 certified claim relating to the St. Louis Courthouse Phase II contract. The Court also should deny Morse Diesel's motions for modification/clarification of its January 2007 opinion.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

JOYCE R. BRANDA
Director

PATRICIA R. DAVIS
Assistant Director

s/Domenique Kirchner
DOMENIQUE KIRCHNER
Senior Trial Counsel
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Fax: (202) 514-8624
Attorneys for Defendant

Of Counsel:
TRACY L. HILMER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice

ERIC L. MILLER
Office of the Inspector General
General Services Administration

DALTON PHILLIPS
CATHERINE CROW
General Services Administration

May 24, 2007