**UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| AMEC CONSTRUCTION MANAGEMENT, INC.,<br>f/k/a Morse Diesel International, Inc.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Case No. 99-279 and<br>consolidated cases<br>(Judge Braden) |

**PLAINTIFF'S OPPOSITION TO GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT ON DAMAGES**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

A. The Government Destroyed Relevant Documents ..... 3

B. The Government Received Value from the Surety Bonds at Issue ..... 4

C. The Government Previously Accepted the Time Value of Money Approach to Damages ..... 4

III. ARGUMENT ..... 5

A. The Government's Failure to Issue a Litigation Freeze Notice, and the Resulting Destruction of Documents Relating to This Matter, Makes Summary Judgment Inappropriate ..... 6

B. At Most the Government is Entitled to the Time Value of Money Damages for False Claims Act Violations ..... 7

C. Anti-Kickback Act Damages Are Improper in this Case ..... 10

D. The Government is Not Entitled to Maximum Allowable Penalties ..... 11

IV. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

## CASES

AAB Joint Venture v. United States,
75 Fed. Cl. 432 (2007) ........ 3

BMW of N. America, Inc. v. Gore,
517 U.S. 559 (1996) ........ 9

BMY - Combat Systems Division of Harsco Corporation v. United States,
44 Fed. Cl. 141 (1998) ........ 8

Cooper Industries, Inc. v. Leatherman Tool Group,
532 U.S. 424 (2001) ........ 9

Ford Motor Co. v. United States, 157 F.3d 849 (Fed. Cir. 1998) ........ 5

Greenberg v. de Tessieres,
902 F.2d 1002 (D.C. Cir. 1990) ........ 12

Jay v. Sec'y of Dep't of Health & Human Servs., ........ 5
998 F.2d 979 (Fed. Cir. 1993)

Monon Corp. v. Stoughton Trailers, Inc.,) ........ 5
239 F.3d 1253 (Fed. Cir. 2001

State Farm Mutual Automobile Insurance Co. v. Campbell,
123 S. Ct. 1513 (2003) ........ 9

Tingley System, Inc. v. CSC Consulting, Inc.,
152 F. Supp. 2d 95 (D. Mass. 2001) ........ 7

United States v. Irizarry-Colon, 2006 U.S. District LEXIS 38850, at 23-34 (D.P.R. June
8, 2006) ........ 8

United States v. Kruse,
101 F. Supp. 2d 410 (E.D. Va. 2000) ........ 11

United States v. Lippert,
148 F.3d 974 (8th Cir. 1998) ........ 13

Young-Montenay, Inc. v. United States,
15 F.3d 1040 (Fed. Cir. 1994) ........ 7, 8

**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AMEC CONSTRUCTION MANAGEMENT, INC., f/k/a Morse Diesel International, Inc.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | Case No. 99-279 and consolidated cases (Judge Braden) |

**PLAINTIFF'S OPPOSITION TO GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT ON DAMAGES**

## I. INTRODUCTION

Plaintiff, AMEC Construction Management, Inc. ("ACMI"), f/k/a Morse Diesel International, Inc., respectfully opposes the Government's Motion for Summary Judgment on Damages. The Government has failed to meet its burden regarding the calculation of its damages, in part because it has presented so many conflicting theories for calculating damages in this case, and genuine issues of material fact remain unresolved. Furthermore, recent events in this case demonstrate that the Court's granting of summary judgment on liability was improper. At best, the Motion is premature, and should be denied.

The Government has failed to meet its burden in calculating the damages allegedly incurred by the Government as a result of the false stamping of the surety bond invoices. The Government now argues that this Court should assess damages based on the full invoice value of the bonds, yet that position is inconsistent with earlier Government reports that note that damages may be measured as the time-value of money lost to the Government because it paid the

bond invoices earlier than it should have. The Government's vacillation on this critical issue makes it impossible for the Court to decide damages on this record.

In addition, the Government's damages expert, GSA auditor John Walsh, who is also a key factual witness, admitted recently during his court-ordered deposition that he has been destroying relevant evidence. Subsequently, on June 11, 2007, Mr. Walsh attempted to recant a portion of his testimony on this issue via a deposition errata sheet, stating that "my answer is incorrect," without attempting to explain why he provided inaccurate information under oath.[1] Therefore, ACMI is entitled to re-depose Mr. Walsh before the Court rules on this Motion.

Mr. Walsh's admissions draw into question whether ACMI received full discovery prior to having to respond to the Government's Motion for Summary Judgment on liability. Depending upon what is learned after the document destruction issue is more fully explored,[2] the Court's ruling on liability may be found to have been based upon erroneous or incomplete facts. In addition, Mr. Walsh's admission document of destruction prejudices ACMI in responding to this Motion for Summary Judgment on Damages, and is therefore a basis to deny this Motion.

---

[1] By errata sheet, Mr. Walsh attempts to recant portions of his testimony on this issue. Specifically, the errata sheet states that he knows "that [he] needed to save all final electronic documents substantively relating to this case that [he] created or received that directly relate to [his] audit findings and report conclusions." Walsh Errata Sheet, June 11, 2007 (attached as Exhibit 1). But in that statement he differentiated between "electronic documents" and "e-mail messages." And, he did not recant any of his prior testimony regarding his earlier destruction of relevant documents.

[2] Shortly after the deposition, on May 8, 2007, ACMI asked the Government to provide copies of any freeze notices that they may have issued with regards to this case, but the Government has not yet provided a single document in response to that request.

The Government's complete reversal of its position on damages, coupled with its failure to preserve documents related to the Government's damages calculation, makes summary judgment on damages inappropriate. The Government's motion should be denied.

## II. BACKGROUND

### A. The Government Destroyed Relevant Documents

On January 26, 2007, this Court issued an order granting the Government's Motion for Summary Judgment regarding the Government's First, Second, Sixth, and Seventh Counterclaims and denying the motion as to the Government's Fifth and Ninth Counterclaims. As a result of that ruling, a status conference was held on February 8, 2007, during which the Government represented to the Court that it would be relying on an expert report by GSA OIG Auditor John Walsh to support its claim of damages. *See* Transcript of Status Conference of Hearing, February 8, 2007 ("Feb. 8, 2007 Tr."), at 35:1-36:22 (relevant excerpts attached as Exhibit 2). As a result of that representation, the Court ordered that the Government make Mr. Walsh available for a deposition by ACMI, *see* Feb. 8, 2007 Tr. at 39:1-12, and he was deposed on May 4, 2007.

Mr. Walsh admitted the Government's flagrant violations of the duty to preserve documents. *See* Transcript of Walsh Deposition, May 4, 2007, at 102:2-106:11 (relevant excerpts attached as Exhibit 3). That duty requires that "[w]hen a lawyer who has been retained to handle a matter learns that litigation is probable or has been commenced, the lawyer should inform the client of its duty to preserve potentially relevant documents in the client's custody or control and of the possible consequences of failing to do so." ABA Civil Discovery Standards (revised Aug. 2004), std. 10; *see also AAB Joint Venture v. United States*, 75 Fed. Cl. 432, 440-41 (2007) (Damich, C.J.) ("Federal courts have long recognized a duty of the parties to preserve

relevant evidence for litigation."). The Government produced some documents relating to prior, inconsistent versions of Mr. Walsh's damages report, but those documents were obtained from the Government Attorney's computer rather than Mr. Walsh's files because Mr. Walsh deleted many of his emails and electronic records relevant to the case. In light of the revelation that Mr. Walsh has been destroying relevant documents and e-mails, the Government has abandoned its reliance on Mr. Walsh in its Motion for Summary Judgment on Damages.

### B. The Government Received Value from the Surety Bonds at Issue

The surety bonds that are at the center of the Government's damages calculation were required by each of the four contracts. These bonds had real value to the Government, and the Government had an obligation to pay ACMI for these bonds. The Government paid ACMI for these bonds before payment was due, and as a result, the Government incurred damages equal to the time-value of money for the length of the delay between when it paid ACMI for the bonds and when it should have paid ACMI for the bonds.

### C. The Government Previously Accepted the Time-value of Money Approach to Damages

The Government has repeatedly used the time-value of money calculation to determine the actual harm to the Government caused by the stamping of the surety bond invoices. In 2002, Mr. Walsh calculated the Government's damages using the time-value of money. Computation of Harm for Fraud Committed by Morse Diesel International, Inc. (now known as Amec Construction Management), at 10-16 ("Walsh 2002 Damages Report") (Attached as Exhibit 4). Likewise, the Report prepared by the OIG's office in 1999 by Steven Anderson, also used the time-value of money to calculate the actual harm to the Government. IG Report prepared by Steven Anderson, Case File No. I-95-0509, February 18, 1999, at 7 ("Anderson 1999 Report") (Attached as Exhibit 5). Only in the Government's most recent filings has it asserted that the full

value of the bond is the *only* measure of damages to the Government. A ruling by the Court that the full value of the bond invoices is the appropriate means for calculating damages would not only overstate the harm to the Government, but such a decision would be at odds with the Government's own internal calculations. Additionally, the Government's historical reports calculating time-value of money damages have been inconsistent with regard to the relevant interest rates, the applicable time periods, and the method of computing the interest. *See* Anderson 1999 Report, at 7; Walsh 2002 Damages Report, at 10-16. The Government has submitted no information on this issue in the current briefing.

## III. ARGUMENT

Summary judgment is appropriate only where the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rules of the Court of Federal Claims, Rule 56(c); *Ford Motor Co. v. United States*, 157 F.3d 849, 854, 857 (Fed. Cir. 1998) (reversing summary judgment order because the court "does discern triable issues of fact"). "The party moving for summary judgment 'bears the burden of demonstrating absence of all genuine issues of material fact.'" *Jay v. Sec'y of Dep't of Health & Human Servs.*, 998 F.2d 979, 982 (Fed. Cir. 1993) (citing *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107 (Fed. Cir. 1985)). In determining whether the moving party has met that burden, "the trial court must assume that the evidence presented by the non-movant is credible and draw all justifiable inferences therefrom in the non-movant's favor." *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)). The Government has failed to meet that burden, and thus summary judgment would be improper here.

### A. The Government's Failure to Issue a Litigation Freeze Notice, and the Resulting Destruction of Documents Relating to This Matter, Makes Summary Judgment Inappropriate

On May 4, 2007, ACMI deposed John Walsh based on Government counsel's representation to the Court and to ACMI that the Government would rely on Mr. Walsh's report for its damages calculation. During that deposition, Mr. Walsh revealed that he had not received a litigation freeze notice from Government counsel, or any similar instruction to preserve documents.[3] In fact, Mr. Walsh admitted that he deleted e-mails and threw away documents that were *relevant to this matter*. Tr. of May 4, 2007 Walsh Dep. at 102:1 – 106:11.

Throughout the investigation and litigation regarding these matters, the Government has presented and analyzed two theories of damages. First, in the GSA IG's report, the Government's position was that the time-value of money was the proper way to calculate harm to the Government. *See* Anderson 1999 Report at 7. Second, in the 2002 report, Mr. Walsh calculated damages based on the full value of the surety bond invoices, but also presented the time-value of money calculation as a viable alternative. Walsh Damages Report 2002 at 10-16. Finally, in Mr. Walsh's 2007 report on damages, upon which the Government represented to the Court and ACMI that it would rely but ultimately did not, the only damages calculation presented was for the full value of the bond invoices. Computation of Damages and Penalties for Fraud Committed by Morse Diesel International, Inc. (d/b/a Amec Construction Management, Inc.) (ACMI) Limited to Summary Judgment Issues Only, Mar. 28, 2007. ("Walsh 2007 Damages Report") (Attached as Exhibit 6).

---

[3] As noted in footnote 1, Mr. Walsh now "remembers" in his deposition errata sheet that he did know that he was not supposed to destroy any "final electronic documents substantively relating to this case that [he] created or received that directly relate to [his] audit findings and report conclusions." Walsh Errata Sheet, June 11, 2007.

The Government's ever-changing theory of how to calculate damages undermines the basis for its motion, and the Government's failure to preserve records related to this case has created holes in the factual record. ACMI is entitled to explore inconsistencies between the Government reports in order to establish that summary judgment is not warranted. Moreover, in light of Walsh's further conflicting representations regarding whether he was aware of his duty to preserve documents, his deposition should be reopened. *See Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 120-21 (D. Mass. 2001). Furthermore, Mr. Walsh's admission of document destruction and the absence of a freeze notice raises serious questions regarding whether summary judgment on liability was warranted. At the very least, additional discovery should be provided to ACMI on the issue of the Government's failure to issue a litigation freeze notice, and potentially relevant documents that may have been destroyed as a result.

**B. <u>At Most the Government is Entitled to the Time-value of Money Damages for False Claims Act Violations</u>**

The most accurate and appropriate method of calculating damages is based on the time-value of money, rather than the full value of the surety bond invoices. The actual harm to the Government in this case was the loss of the use of the money it paid ACMI prematurely. Anderson 1999 Report at 7.

Despite previous Government reports and damages calculations to the contrary, the Government now argues that damages consist of the full front-loaded amount of the surety bond invoices, rather than the lost interest alone. In switching its position completely, the Government has wholly eliminated the method of calculation that it once deemed appropriate. The Government relies exclusively on the Federal Circuit's decision in *Young-Montenay, Inc. v. United States*, 15 F. 3d. 1040 (Fed. Cir. 1994), where the court rejected the contractor's

argument that damages should only equal the amount of the loss of interest to the Government, or the time-value of money, for the period that the Government was denied use of its funds because of the early payment of the additional funds. The Federal Circuit held that awarding the full difference between the altered invoice and the original invoice was "a reasonable measure of damages." *Id.* at 1043.

In its extensive discussion of *Young-Montenay*, the Government attempts to persuade the Court that awarding the full value of the falsely stamped invoice is the *only* means of calculating harm to the Government, but *Young-Monteney* merely says that such a calculation of damages is "*a reasonable* measure of damages." *Id.* (emphasis added). Moreover, in applying *Young-Montenay* to calculate damages under the False Claims Act, there is no set formula by which the Court must calculate damages. *See United States v. Irizarry-Colon*, 2006 U.S. District LEXIS 38850, at *23-34 (D.P.R. June 8, 2006) (in applying *Young-Montenay*, the court awarded damages of the full amount wrongly paid by the Government, but then applied a credit for funds recouped by the Government).

In fact, in *BMY – Combat Systems Division of Harsco Corporation v. United States*, 44 Fed. Cl. 141, 149-50 (1998), a case decided four years after *Young-Montenay*, the Government sought damages consisting of interest for the period of time between the submission of the invoice and the date of either inspection of the part, or replacement of the part if replacement was required. *Id.* at 149. In *BMY*, the court found that, in that case, interest on the premature contract payments was "a more appropriate measure of damages." *Id.* at 150. Therefore, *BMY* clearly supports a reading of *Young-Montenay* that damages of the full front-loaded amount are permissible, but far from mandatory. In this case, the Court should award interest-only damages

because ACMI's fraud was based on the actions of a few ACMI employees and was not a company-wide, systemic breakdown.

Even if the Court were to award damages to the Government in the full amount of the falsely stamped invoices, the time-value of money is the proper number to be used in determining actual harm to the Government for Constitutional Due Process balancing purposes.[4] In conducting its Constitutional Due Process analysis, the Court is required to follow the three-part test established by the Supreme Court in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996), and applied in *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003):

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*State Farm*, 538 U.S. at 409. *See also Gore*, 517 U.S. at 575; *Cooper Industries, Inc. v. Leatherman Tool Group*, 532 U.S. 424, 435 (2001).

The second prong of this test focuses on *actual harm* suffered, not the value of damages allowed under the law. In this case, the actual harm to the Government was clearly the interest that the Government would have earned on the funds it paid to ACMI before that payment was due. The surety bond invoices submitted to the Government, that were falsely stamped "paid," were, in fact, paid by ACMI at a later date, and the Government would have been required to pay ACMI the same amount of money at that later date. Therefore, the only actual harm to the Government as a result of the false stamping is the time-value of money, which is the loss of interest on the delay in payment.

[4] The Court has not yet conducted such an analysis. *See Morse Diesel International, Inc. v. United States*, 74 Fed. Cl. 601, 635 (2007) (Due Process Clause challenge "is not ripe.").

The damages asserted for the other two asserted false claims – the "commission splitting" and the "AMEC indemnity" – would also be subject to a time-value of money analysis. These were fixed price contracts – by the end of the contract the Government would pay the entire contract amount. The "commission splitting" and "AMEC indemnity" purportedly allowed ACMI to obtain some funds sooner than it would have. If those amounts should not have been paid at the beginning of the contract, ACMI would have still been paid the funds at the end of the contract anyway. As to these two types of damages, the period of time ACMI had the money (the period between the first pay application and the last pay application) was longer than with the falsely stamped invoices. Yet the time-value of money principle still applies.

### C. Anti-Kickback Act Damages Are Improper in this Case

ACMI respectfully adheres to its position that summary judgment on the Anti-Kickback Act was improper. The Anti-Kickback Act forbids prime contractors from seeking payments from subcontractors in return for the prime contractor giving favorable treatment to the subcontractor relating the project (e.g., choosing the subcontractor to do the work or accepting substandard or defective work from the subcontractor). The agreement between AMEC plc and Willis Corroon, on the other hand, consisted of nothing more than a discount, promotional allowance or rebate given to AMEC plc with the knowledge of both AMEC plc and ACMI. Moreover, this agreement predated the Government contracts at issue and applied to all AMEC plc contracts, which negates the premise that this was a scheme created to induce ACMI to choose Willis Corroon for the bonding needs on the four federal government projects. In addition, the four contracts at issue were fixed price contracts. As a result, there was no additional cost to the Government arising out of ACMI's choice to use Willis Corroon – ACMI was entitled to a fixed amount from the Government under the contracts, and the choice to use Willis Corroon did not increase the cost to the Government. Therefore, the agreement did not

constitute an improper kickback, and the Court's decision to grant summary judgment in favor of the Government on the Anti-Kickback Act was improper. Anti-Kickback Act damages are thus inappropriate.

## D. The Government is Not Entitled to Maximum Allowable Penalties

Under the False Claims Act, the Court has the discretion to award civil penalties of not less than $5,000 and not more than $10,000 per claim. Under the facts of this case a $5,000 penalty per violation is appropriate. In *United States v. Kruse*, 101 F. Supp. 2d 410, 414 (E.D. Va. 2000), the district court held that the per occurrence penalties under the Anti-Kickback Act should not automatically be awarded, and that the imposition of a $10,000 per occurrence penalty was impermissible under the Excessive Fines Clause when awarded in addition to a penalty of double the amount of actual kickbacks. The facts of this case, when set against *Kruse*, even more strongly support a finding that the imposition of the maximum per occurrence penalty would violate the Excessive Fines Clause. Unlike the defendant in *Kruse*, who was penalized at the rate of twice the amount of kickbacks, ACMI faces damages under the False Claims Act that triple the amount of harm the Government alleges ACMI caused, in addition to the staggering forfeiture order. Under these facts, the imposition of the maximum $10,000 per occurrence penalty would violate the Excessive Fines Clause.

Moreover, the Court should award a per occurrence penalty of $5,000 because the harm was limited to isolated portions of the contract. The contracts at issue in this case were massive in scope and the alleged fraud on these contracts was not pervasive, *e.g.*, there was no fraud in the creation of the contract. The alleged fraud was limited to only a few mid-level employees. Furthermore, as to Phase II of the St. Louis Courthouse project the Government knew of the

fraud[5] and passively allowed ACMI to continue to work on the project for almost three years thereafter.

The Government's arguments for the maximum penalty are unpersuasive and without basis. The Government has asserted that because it was required to litigate this case it is entitled to the maximum penalty. That argument misstates the law. *See, e.g.*, *Greenberg v. de Tessieres*, 902 F.2d 1002, 1004-05 (D.C. Cir. 1990) ("The American Rule on attorney fees and costs of litigation encourages those with actual and significant disagreements to seek their resolution in a civil, nonviolent setting; it does not seek to make the loser pay the other's costs of presenting his or her side. . . . Sanctions for bringing a case or an argument to court ought to be reserved for unusual circumstances."). Stated simply, the parties are allowed to have legitimate disagreements without the losing party bearing the burden of the legal fees of that litigation. With respect, ACMI has a legitimate legal basis for arguing that the indemnity and the commission splitting were not illegal, and the fact that ACMI was not victorious on this issue in this Court, does not render its argument frivolous.

The Government states in its brief that "because the amount of each kickback is already included in the false request for bond reimbursement, the Government does not seek additional damages under the [Anti-Kickback Act]." Br. at 9. The Government then argues that because it has not asked for separate Anti-Kickback Act damages it is entitled to the maximum penalty

---

[5] The Government states that it learned of the fraud in November 1996, more than 2 ½ years before the Phase II contract ended. *See* Defendant's Reply to Plaintiff's Response to Defendant's Motion for Additional Relief, at 4, filed May 24, 2007). ACMI contends that the Government knew of the fraud on the Phase I contract by April 1995 per Mr. Walsh's deposition testimony. In addition, Mr. Haddock of CRSS (which was the Government's agent) also knew of the false stamping on the Phase I contract before the first pay application on the Phase II contract was submitted. *See* ACMI Response to Government's Proposed Findings of Fact, Response 20.

under the False Claims Act. Courts have held that seeking recovery on both AKA and FCA damages would be improperly duplicative. *See United States v. Lippert*, 148 F.3d 974, 976 (8th Cir. 1998). The Government had the choice of pursuing either the AKA or FCA damages in this case; it chose to pursue damages under the FCA which provide for triple the amount of actual harm, rather than double the amount of harm available under the AKA. This choice does not merit awarding the Government greater penalties under the FCA.

Finally, the Government's actions during the litigation process have hindered ACMI, and therefore, ACMI should get the minimum penalties under the FCA. Throughout the litigation the Government has caused delays by preventing ACMI from conducting efficient discovery. The failure of Government Counsel to issue a freeze notice led to the destruction of documents by key witnesses, which prejudiced ACMI significantly. In light of the Government's dilatory and obstructive behavior, ACMI should receive the minimum $5,000 per occurrence penalty.

## IV. CONCLUSION

Summary judgment is improper on the issue of damages, just as it was improper on the issue of liability. The Government's current position regarding the value of ACMI's claims is at odds with its prior position, making summary judgment inappropriate. Furthermore, the destruction of documents relating to the alleged damages makes summary judgment at this stage inappropriate.

The actual harm to the Government in this case is the time-value of money on the bonds, which was previously the Government's internal position. ACMI requests that the Court deny the Government's Motion for Summary Judgment on Damages, and order further discovery regarding damages. In the alternative, ACMI requests that if the Court is to grant summary judgment on the issue of damages it should rule that the time-value of money is the only proper method to calculate the damages to the Government in this case.

Additionally, the limited and isolated nature of the actual harm in this case favors the minimum penalty rather than maximum penalty. As the District Court in the Eastern District of Virginia explained in *Kruse*, awarding penalties in addition to treble damages could constitute an excessive fine, which certainly cautions against awarding maximum damages in addition to treble damages and an enormous forfeiture. Finally, the Government's argument that ACMI's decision to litigate the issues in this case should result in ACMI paying higher penalties flies in the face of the American legal system, under which parties are free to present their best arguments, and the party on the losing side need not pay the other side's litigation fees and expenses.

Respectfully submitted,

s/ James D. Wareham

James D. Wareham
Attorney of Record for Plaintiff
Kirby D. Behre
Danielle W. Pierce
Paul, Hastings, Janofsky & Walker LLP
875 Fifteenth Street, N.W.
Washington, D.C. 20005
Tel: 202-551-1728
Fax: 202-551-0128

Date: June 15, 2006