Nos. 99-279C and consolidated cases
(Judge Braden)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MORSE DIESEL INTERNATIONAL, INC.
d/b/a AMEC CONSTRUCTION
MANAGEMENT, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# UNITED STATES' REPLY TO PLAINTIFF'S OPPOSITION TO UNITED STATES' MOTION FOR SUMMARY JUDGMENT ON DAMAGES

OF COUNSEL:

TRACY L. HILMER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice

ERIC L. MILLER
Office of the Inspector General
General Services Administration

DALTON PHILLIPS
CATHERINE CROW
General Services Administration

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

JOYCE R. BRANDA
Director

PATRICIA R. DAVIS
Assistant Director

DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Fax: (202) 514-8624

Attorneys for Defendant

July 20, 2007

## TABLE OF CONTENTS


I. The Government Has Met Its Burden Under Rule 56(c) .......... 4

A. There Is No Dispute As To Any Material Fact .......... 5

B. The Government Is Entitled To The Judgment Sought As A Matter Of Law .......... 6

II. ACMI's Due Process Argument Is Not Supported By The Facts Or The Law .... 12

III. ACMI's Excessive Fine Argument Is Without Merit .......... 13

IV. The Maximum Statutory Penalty Is Appropriate Here .......... 15

V. ACMI's Arguments Based Upon John Walsh's Deposition Are Not Relevant ... 16

VI. ACMI Has Not Established Any Prejudice .......... 17

CONCLUSION .......... 19

## TABLE OF AUTHORITIES

### CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) .......... 4, 5

Avia Group International, Inc. v. L.A. Gear California, Inc.,
853 F.2d 1557 (Fed. Cir. 1988) .......... 5

BMW of N. Am., Inc. v. Gore,
517 U.S. 559 (1996) .......... 14

BMY-Combat System Division of Harsco Corp. v. United States,
44 Fed. Cl. 141 (1998) .......... 2, 8, 9, 15

Balice v. United States Dep't of Agriculture,
203 F.3d 684 (9th Cir. 2000) .......... 14

Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,
731 F.2d 831 (Fed. Cir. 1984) .......... 5, 6

Becton Dickinson & Co. v. C.R. Bard, Inc.,
922 F.2d 792 (Fed. Cir. 1990) .......... 4

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) .......... 5

Christopher Village, L.P. v. United States,
360 F.3d 1319 (Fed. Cir. 2004) .......... 16

Cook County, Ill. v. United States ex rel. Chandler,
538 U.S. 119 (2003) .......... 12, 13

Daewoo Engineering & Const. Co., Ltd. v. United States,
73 Fed. Cl. 547 (2006) .......... 16

Institut National Des Appellations D'Origine v. Vinters Int'l Co.,
958 F.2d 1574 (Fed. Cir. 1992) .......... 4

Kit v. United States,
277 F.3d 1330 (Fed. Cir. 2002) .......... 14

Larry Harmon Pictures Corp. v. Williams Restaurant Corp.,
929 F.2d 662 (Fed. Cir. 1991) .......... 5

Long Island Savings Bank, FSB v. United States,
476 F.3d 917 (Fed. Cir. 2007) .......... 16

Octocom Systems, Inc. v. Houston Computer Services, Inc.,
918 F.2d 937 (Fed. Cir. 1990) .......... 3, 5, 6

Processed Plastico Co. v. United States,
473 F.3d 1164 (Fed. Cir. 2006) .......... 5, 6

San Huan New Materials High Tech, Inc. v. Int'l Trade Comm.,
161 F.3d 1347 (Fed. Cir. 1999) .......... 14

State Farm Mutual Automobile Ins. Co. v. Campbell,
538 U.S. 408 (2003) .......... 2, 12, 13

Supermex, Inc. v. United States,
35 Fed. Cl. 29 (1996) .......... 16

Sweats Fashions v. Pannill Knitting Co.,
833 F.2d 1560 (Fed. Cir.1987) .......... 4, 5, 6

United States ex rel. Roby v. Boeing Co.,
302 F.3d 637 (6th Cir. 2002) .......... 10

United States v. Bajakajian,
524 U.S. 321 (1998) .......... 14, 15

United States v. Bornstein,
423 U.S. 303 (1976) .......... 13

United States v. Irizarry-Colon,
2006 U.S. District LEXIS 38850 (D.P.R. June 8, 2006) .......... 9

United States v. Kruse,
101 F. Supp. 410 (E.D. Va. 2000) .......... 13, 14

United States v. Mackby,
339 F.3d 1013 (9th Cir. 2003), cert. denied,
541 U.S. 936 (2004) .......... 14, 15

Young-Montenay, Inc. v. United States,
15 F.3d 1040 (Fed. Cir. 1994) .......... passim

**STATUTES**


31 U.S.C. § 3729 .......... 1

31 U.S.C. § 3729(a) .......... 1, 12

41 U.S.C. § 51 .......... 1

41 U.S.C. § 55(a)(1) .......... 12

28 C.F.R. § 0.13 .......... 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MORSE DIESEL INTERNATIONAL, INC. d/b/a AMEC CONSTRUCTION MANAGEMENT, INC., Plaintiff, | ) | |
| v. | ) | Nos. 99-279C and consolidated cases (Judge Braden) |
| THE UNITED STATES, Defendant. | ) | |

**UNITED STATES' REPLY TO PLAINTIFF'S OPPOSITION TO UNITED STATES' MOTION FOR SUMMARY JUDGMENT ON DAMAGES**

In our motion for summary judgment on damages due to the United States for AMEC Construction Management, Inc.'s ("ACMI") violations of the False Claims Act, 31 U.S.C. §§ 3729-33, and the Anti-Kickback Act, 41 U.S.C. §§ 51-58, as determined in the Court's January 2007 ruling, we demonstrated that there were no issues of material fact and that the Government is entitled to the amounts requested as a matter of law pursuant to Rule 56(c) of the Rules of the United States Court of Federal Claims ("RCFC"). The controlling authority of the United States Court of Appeals for the Federal Circuit in Young-Montenay, Inc. v. United States, 15 F.3d 1040 (Fed. Cir. 1994), provides that, where a contractor wrongfully induces the Government to make a progress payment on a fixed price contract at a time before the full amount is actually due, the Government's single damages equal the amount by which the pay application has been falsely inflated. Pursuant to 31 U.S.C. § 3729(a), the single damages amount is then trebled.

In response, ACMI does not effectively challenge our Proposed Findings of Undisputed Fact, nor does it take issue with our contention that the damages amount based upon Young-

Montenay is $6,972,666. ACMI argues that Young-Montenay is not controlling and that this Court should rely instead upon BMY-Combat System Division of Harsco Corp. v. United States, 44 Fed. Cl. 141 (1998) (Tidwell, J.) – a non-final decision in a case in which the Government did not seek Young-Montenay damages and which did not in any sense purport to disagree with the ruling in Young-Montenay. Pl. Op. 8.[1]

In the alternative, ACMI asserts that the damages award should be limited to a time-value of money computation because of State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408 (2003), and other cases limiting punitive damages awarded by juries in common law matters. Pl. Op. 9. State Farm has no application to this case, where the damages available are fixed by acts of Congress.

ACMI claims that the Court should disregard the law and undisputed record evidence supporting the Government's damages claim and instead hold a trial on damages because of preliminary computations made by the General Services Administration ("GSA") Office of Inspector General ("OIG") investigator on the case, Steven Anderson, or because of the inclusion of an alternative damages computation in a report prepared in 2002 for Government counsel by a GSA OIG auditor, John Walsh. Pl. Op. 1-2. These arguments have no merit and should be rejected.

ACMI also asserts that it has been prejudiced because Mr. Walsh did not save copies of his draft reports or e-mails with Government counsel relating to those reports. Pl. Op. 2.

---

[1] "Pl. Op." refers to "Plaintiff's Opposition To The Government's Motion For Summary Judgment On Damages," filed June 15, 2007. "Pl. Res. Def. PFUF No._" refers to "Plaintiff's Response To Defendant's Proposed Findings Of Uncontroverted Fact In Support Of Its Claim For Damages Pursuant To The Court's January 26, 2007 Ruling." "SA" refers to the appendix to this brief.

ACMI's assertion is conclusory only, and ACMI does not attempt to demonstrate any actual prejudice. Also, ACMI has been provided with copies of Mr. Walsh's draft reports and e-mails with Government counsel, and none of those hundreds of pages of documents are relevant to this Court's determination of the appropriate measure of damages.

Finally, ACMI claims that it is entitled to reopen the May 4, 2007 deposition of Mr. Walsh before this Court rules on our motion for summary judgment because Mr. Walsh corrected his deposition testimony. Pl. Op. 2. As we explain in detail in our motion for protective order, which is being filed today, Mr. Walsh's deposition testimony and his correction of the deposition transcript are not relevant to the Court's determination of damages or to any other issue in the case. Accordingly, the Court should reject ACMI's unjustified effort to prolong the resolution of the case and should proceed to enter a summary judgment ruling upon the purely legal question of the proper measure of damages for ACMI's frauds.

## I. <u>The Government Has Met Its Burden Under Rule 56(c)</u>

RCFC 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Where a motion for summary judgment is made and supported in accordance with Rule 56, it is incumbent upon the nonmovant to proffer countering evidence sufficient to create a genuine dispute of material fact. <u>Octocom Systems, Inc. v. Houston Computer Services, Inc.</u>, 918 F.2d 937, 940 (Fed. Cir. 1990). "The substantive law will identify which facts are material." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Becton Dickinson & Co. v. C.R. Bard, Inc.</u>, 922 F.2d 792, 796 (Fed. Cir. 1990). "Only

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Factual disputes that are irrelevant or unnecessary do not preclude summary judgment. Id.

Even if the issue of fact is material, however, summary judgment is not precluded unless the dispute about a material fact is "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and resolve the material, factual matter in favor of the non-movant. Anderson, 477 U.S. at 248; Institut National Des Appellations D'Origine v. Vinters Int'l Co., 958 F.2d 1574, 1581(Fed. Cir. 1992); Octocom Systems, 918 F.2d at 940; Sweats Fashions v. Pannill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir.1987). The nonmoving party may not rest upon his complaint or arguments in his brief, but must show sufficient significant probative evidence tending to support its version of the disputed material facts. Anderson, 477 U.S. at 248. The party opposing a motion for summary judgment also must point to an evidentiary conflict created on the record, at least by a counterstatement of facts set forth in detail in an affidavit by a knowledgeable affiant; mere denials or conclusory statements are insufficient. Processed Plastico Co. v. United States, 473 F.3d 1164, 1170 (Fed. Cir. 2006); Octocom Systems, 918 F.2d at 940-41; Sweats Fashions, 833 F.2d at 1562-63; Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd., 731 F.2d 831, 835-36 (Fed. Cir. 1984). Further, "if the evidence [presented by the nonmoving party] is merely colorable, [citation omitted] or is not significantly probative, [citation omitted] summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Larry Harmon Pictures Corp. v. Williams Restaurant Corp., 929 F.2d 662, 663 n.1 (Fed.

Cir. 1991); Avia Group International, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1560 (Fed. Cir. 1988).

**A. There Is No Dispute As To Any Material Fact**

ACMI does not challenge the authenticity of the documents upon which the United States relies, nor the amounts reflected in those documents that constitute the false requests for bond reimbursements and parent company "indemnity" amounts, nor the amounts of the bond commissions kicked back to AMEC plc. These documents and the figures they show are the evidence of the Government's damages claims, and they are undisputed. Further, ACMI does not challenge the mathematical accuracy of the damages computation based upon Young-Montenay. Therefore, there is no genuine issue as to any material fact, and consequently, there is no reason for the Court to hold an evidentiary hearing on the damages claim.

In its responses to the Government's Proposed Findings of Undisputed Fact, ACMI merely attempts to relitigate issues this Court has already resolved in its January 26, 2007 and July 15, 2005 opinions granting the Government's motions for partial summary judgment. The Court's decisions are law of the case and therefore are not a proper subject for dispute unless and until ACMI files an appeal. Therefore, ACMI's "disputes" as to the Government's Proposed Findings are mere denials or conclusory statements, which are insufficient to defeat the Government's motion. See Processed Plastico Co., 473 F.3d at 1170; Octocom Systems, 918 F.2d at 940-41; Sweats Fashions, 833 F.2d at 1562-63; Barmag Barmer Maschinenfabrik, 731 at 835-36.

**B. The Government Is Entitled To The Judgment Sought As A Matter Of Law**

The legal question before the Court is how the Government's damages should be computed. The Federal Circuit's decision in Young-Montenay is controlling. ACMI urges the Court to disregard this precedent and instead to utilize a "time-value of money" approach, but ACMI cites no applicable authority or cogent argument in support of its position.

Indeed, we demonstrated in our summary judgment motion that ACMI's violations in this case harm the Government in the same manner as the contractor's violations in Young-Montenay. Specifically, on a fixed-price contract, the contractor submitted a progress payment request supported by an invoice the contractor had falsely inflated to include an amount it knew was not yet owed by the Government. Even though the amount later became due, the Federal Circuit affirmed the trial court's conclusion that the submission of the falsely inflated invoice violated the False Claims Act and that the Government was damaged in the amount of the overpayment. In Young-Montenay, the Federal Circuit explicitly rejected the contractor's argument that the Government's damages were limited to the loss of interest on the amount of the overpayment for the period between the contractor's false claim and the time when the full sum actually became due, or a time-value of money computation of damages. The Federal Circuit rejected a time-value of money computation because the Government was harmed in two respects. First, "the government was denied the use of the money" it had overpaid. Young-Montenay, 15 F.3d at 1042 n.3. Second, the contractor, having received an early payment, had less incentive to complete the job on time and in a satisfactory manner, and the Government's interest in retaining financial incentives to assure timely completion was thus harmed by the contractor's fraud. Id. Thus, the Federal Circuit has already flatly rejected ACMI's contention

that "the only actual harm to the Government" is "the time-value of money, which is the loss of interest on the delay in payment." Pl. Op. 9.

Here, the Court has found that ACMI submitted false certifications and false documents in order to obtain payment from the Government for its bond premiums before such payments were due. ACMI sought "reimbursement" for these unpaid bond premiums in the first pay application on each of the four GSA contracts. As a result, ACMI's first pay application for each of the four contracts was inflated by the amount claimed for the unpaid bond premiums. Thus, the first pay application for Phase I contract was inflated by $118,907; the first pay application for the San Francisco contract was inflated by $75,246, the first pay application for the Sacramento contract was inflated by $517,491, and the first pay application for the Phase II contract was inflated by $923,900. See Pl. Res. Def. PFUF Nos. 5, 11, 14, 16, 20, 23.

The Court also concluded that ACMI had fraudulently claimed "reimbursement" for a non-existent "parent company indemnity" on the Phase I and Sacramento contracts resulting in additional overpayments by GSA to ACMI. The second application on the Phase I contract was inflated by $118,907, and the first pay application for the Sacramento contract was inflated by an additional $569,771. See Pl. Res. Def. PFUF Nos. 27, 28, 37.

The Court also found ACMI liable under the FCA for inflating the bond premium amounts to include a commission "rebate" that ACMI's bond brokers' agreed to kick back to ACMI's parent company, AMEC, plc. The amount of the kickbacks included in the certified first pay applications for the four GSA contracts was $14,155.78 for Phase I; $8,952 for San Francisco; $37,426.74 for Sacramento; and $49,194 for Phase II. See Pl. Res. Def. PFUF Nos. 47-62. Since these false rebates were included in the bond premium amounts presented to the

GSA for reimbursement in the first pay applications for the four contracts and paid by GSA, the false rebates are already included in our claim for damages based upon the fraudulent claims for bond "reimbursement."

Accordingly, based upon Young-Montenay, our single damages for the false claims upon which the Court has granted summary judgment total $2,324,222 ($1,635,544 for the false bond reimbursement claims plus $688,678 for the false "parent company indemnity" claims).

ACMI offers no cogent argument as to why the Court should depart from the clearly applicable authority of Young-Montenay. The only case upon which ACMI bases its challenge to the application of Young-Montenay is a trial court decision in which the Government did not seek Young-Montenay damages, but rather sought FCA damages for premature contract payments based upon a time-value of money calculation. BMY-Combat Systems, 44 Fed. Cl. 141, 149-50. The trial court's decision did not purport to overrule Young-Montenay, or even to disagree with it; the trial court simply granted the damages requested by the Government without extensive analysis. Further, the main issue in the BMY-Combat Systems case was the contractor's provision of uninspected and defective parts, not frontloading, as here. Thus, the Government's claim for damages in the BMY-Combat Systems case was not limited to claims for interest on premature payments, but also included claims for the costs for inspection, repair and replacement of the uninspected and defective parts. 44 Fed. Cl. at 149-50. In any event, the trial court's decision was not a final resolution of the damages claim, but rather left a number of issues undecided for further proceedings. The public record of the case shows that it was

voluntarily dismissed by the parties on June 22, 1999 before any final ruling by the court on the damages issues.[2]

In its briefs and statements to this Court, the United States has consistently sought damages based upon Young-Montenay. Moreover, the frauds committed by ACMI fit the fact pattern at issue in Young-Montenay – namely, submission of falsely inflated claims for payment, backed by false invoices, in an effort to frontload the contractor's receipt of money from the Government. Just as in Young-Montenay, the GSA not only lost the use of the overpaid money because of ACMI fraud, but it thereby lost financial leverage to impel ACMI to complete the St. Louis Courthouse "in a timely or satisfactory manner." Young-Montenay, 15 F.3d at 1043 n. 3. Eventually, GSA declared the contract in default and had to finish the project itself. Young-Montenay is consistent with the principle that "FCA damages 'typically are liberally calculated to ensure that they afford the government complete indemnity for the injuries done it.'" United States ex rel. Roby v. Boeing Co., 302 F.3d 637, 646 (6th Cir. 2002) (internal citations omitted).

ACMI incorrectly contends that the United States has switched damages theories. In support of this contention, ACMI points to the preliminary damages computations made by the GSA OIG investigator assigned to the case, Steven Anderson. ACMI also claims that the GSA

[2] ACMI's citation to United States v. Irizarry-Colon, 2006 U.S. District LEXIS 38850 (D.P.R. June 8, 2006), also is unavailing. First, that case involved false claims for emergency loans and indemnities from the Department of Agriculture, not frontloading on construction contracts. Second, the district court did not purport to rely upon or to depart from Young-Montenay: it simply cited that ruling, among others, for the correct point that "the touchstone of FCA damages is the pay-out of government funds as a result of the defendant's fraud." Id. at ** 26-29. Third, the district court reduced the damages award (after trebling the single damages) based upon a partial recoupment of the funds obtained by the defendant through fraud. Here, however, there has been no recoupment. Accordingly, this ruling provides no basis for any reduction in the damages award, and no basis for this Court to depart from Young-Montenay.

OIG auditor John Walsh formerly advanced a theory of damages based upon a time value of money computation. However, Mr. Walsh's 2002 computation of harm report, included as Exhibit 4 to ACMI's Opposition, belies ACMI's point. Indeed, the first 10 pages of the 17-page report consist of "Harm Computation Under the False Claims Act, Using Young-Montenay." That Mr. Walsh, at the direction of Government counsel (see Pl. Op. Ex. 3 at 107:13-19), included an alternative computation of harm using an interest calculation does not mean that the Government has ever abandoned its contention that the proper measure of damages in this case should be based upon the Federal Circuit's ruling in Young-Montenay.[3] The Government's litigation position is that which is set forth in the pleadings and statements made to the Court by the Department of Justice attorneys authorized to represent the Government in the matter. See 28 C.F.R. § 0.13. ACMI points to no pleading filed by the Government advocating an interest-based damages standard because there is no such pleading.[4]

ACMI also argues that the Court should award the Government only its lost interest on equitable grounds "because ACMI's fraud was based on the actions of a few ACMI employees

---

[3] As explained below and in our motion for protective order, ACMI's claims of supposedly "massive" document destruction by Mr. Walsh are not only overwrought and unsupported, but they are also irrelevant to the matter at hand or any other issue in the case.

[4] At a status hearing on February 8, 2007, Government counsel alerted the Court that interpretation of the Federal Circuit's decision in Young-Montenay is the decisive issue on damages:

> The big issue on damages is whether the Federal Circuit's decision in Young Mott Naye [sic] applies here, construing the False Claims Act damages, and so it involves the parties' interpretation, our interpretation of that decision, the Plaintiff's interpretation of that decision, and of course the Court will decide what the appropriate damages are in view of the law.

SA29-30 (Tr. 17-18).

and was not a company-wide systemic breakdown." Pl. Op. 8-9. Damages, of course, are the form of the relief afforded under a claim at law, and there is no basis for the Court to turn to equitable principles to reduce what Congress has provided for by statute. In any event, there is no factual basis for ACMI's argument. Those "few ACMI employees" who participated in the frauds included the Chief Executive Officer (Donald Piser) and the Chief Financial Officer (Norman Fornella), as well as its Accounting Manager (Ronald Estock), its Regional Managers (William Lyons and Anthony Cooney), and its Risk Manager (Kirwin Ford).[5] ACMI's attempt to minimize its culpability for these frauds is undercut by the knowledge and direct involvement of these senior managers in the misconduct. ACMI's argument that the size of its unproven claims that have been forfeited because of its fraud should be considered as a mitigating factor in the Court's award of damages and penalties is likewise untenable and should be rejected. Plainly, there is no justification in law or equity for "going easy" on this company.

## II. ACMI's Due Process Argument Is Not Supported By The Facts Or The Law

ACMI argues that the Government's statutory damages should be subject to the same limitations as those held to apply to punitive damages verdicts in state common law cases. For

[5]See, e.g., Morse Diesel Int'l, Inc. d/b/a AMEC Constr. Management, Inc. v. United States, No. 99-279C and consolidated cases, revised slip op. (June 29, 2007) at 11-15, 18-19 (detailing participation of Ford); 16-17 (participation of Estock and Lyons); 20-21 (detailing participation of Cooney and Fornella); see also United States' Proposed Findings of Uncontroverted Fact Nos. 12 and 16 and Ex. 6 and 10 (filed Dec. 7, 2001) (showing Piser's and Fornella's involvement in establishing commission kickback scheme); Deft's Rebuttal to Plt's Response to Deft's Proposed Findings of Undisputed Fact No. 60 (filed Jan. 20, 2004) and A720-23 (filed Apr. 29, 2003) (showing participation of Piser and Fornella in Board meeting adopting policy of charging fictitious AMEC "indemnity"); Deft's Rebuttal to Plt's Response to Deft's Proposed Findings of Undisputed Fact No. 106 (filed Jan. 20, 2004) and A1029-30 (filed Apr. 29, 2003) (memorandum from Fornella to Piser re: inclusion of "$600,000 in extra bond fee" in the first pay application on the Sacramento contract).

this remarkable proposition, ACMI relies upon State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408 (2003). That decision has no bearing here. In State Farm, the Supreme Court was concerned with "the imprecise manner in which punitive damages systems are administered," particularly by juries. Id. at 417. The Court observed that the jury that rendered the subject punitive damages award had received evidence of dissimilar and out-of-state conduct that may have been lawful where it occurred. Id. at 420-21. None of these concerns is a factor in the Government's claims for damages and penalties under the FCA and the Anti-Kickback Act. To the contrary, the measure of damages under each claim is prescribed by an act of Congress. The FCA provides for mandatory treble damages and a penalty ranging from $5,000 to $10,000 per false claim. 31 U.S.C. § 3729(a). The Anti-Kickback Act provides for mandatory double damages and a penalty up to $10,000 per kickback. 41 U.S.C. § 55(a)(1). Thus, there is no possible risk of an open-ended or arbitrary damages award.

ACMI's reliance upon State Farm is thus plainly misplaced. The Supreme Court decision applicable here is Cook County, Ill. v. United States ex rel. Chandler, 538 U.S. 119 (2003). In that case, the Court considered the question whether municipalities may be subject to suit under the FCA. Among Cook County's arguments as to why it should not be subject to the FCA were the assertions that municipalities generally may not be subject to punitive damages and that the treble damages provision of the FCA is a "punitive" remedy. See id. at 129-30. In response, the Supreme Court clarified that "the treble damages have a compensatory side, serving remedial purposes in addition to punitive objectives." Id. at 130. The Court held: "There is no question that some liability beyond the amount of the fraud is usually 'necessary to compensate the Government completely for the costs, delays, and inconveniences occasioned by fraudulent

claims.'" Id. at 130-31, quoting United States v. Bornstein, 423 U.S. 303, 315 (1976). While a large percentage of the fraud recovery may be payable to a qui tam relator, the Court observed that treble damages

> may also be needed for full recovery even when there is no qui tam relator to be paid. The FCA has no separate provision for prejudgment interest, which is usually thought essential to compensation . . . and might well be substantial given the FCA's long statute of limitations, § 3731(b). Nor does the FCA expressly provide for the consequential damages that typically come with recovery for fraud. . . .

Id. at 131. Specifically – and fatally to ACMI's reliance upon State Farm – the Supreme Court ruled: "Treble damages certainly do not equate with classic punitive damages, which leave the jury with open-ended discretion over the amount. . . ." Id. at 132. Under both the FCA and the Anti-Kickback Act, it is the trial court that applies the appropriate multiplier to the actual damages, and the trial court that also sets the penalty within the statutorily mandated range. Accordingly, the concerns about unfettered and arbitrary jury verdicts that drove the State Farm decision do not arise under the FCA and the Anti-Kickback Act, and have no application here where the trial court will determine both the damages and penalty amounts.

## III. ACMI's Excessive Fines Argument Is Without Merit

ACMI argues that the statutory penalties imposed in this case should be subject to an excessive fines analysis, citing United States v. Kruse, 101 F. Supp. 410, 414 (E.D. Va. 2000). Pl. Op. 11, 14. There, Kruse was liable for 59 kickbacks and the court awarded double the amount of the kickbacks, or $1,569,120. The court declined to impose penalties of $10,000 per kickback, which would have added $590,000 ($10,000 times 59) to the award, which it viewed as an excessive fine. Id. at 414.

"A fine under the Eighth Amendment is a payment to the government that "constitute[s] punishment for an offense.'" Kit v. United States, 277 F.3d 1330, 1337 (Fed. Cir. 2002) (quoting United States v. Bajakajian, 524 U.S. 321, 328 (1998)). Even if an excessive fines analysis is warranted here, the requested penalties totaling $50,000 (five occurrences times $10,000 per violation) are plainly appropriate and not excessive.

Courts "consider the maximum penalty prescribed by Congress as part of [] [an] Excessive Fines Clause inquiry." United States v. Mackby, 339 F.3d 1013, 1018 (9th Cir. 2003), cert. denied, 541 U.S. 936 (2004); see also Bajakajian. 524 U.S. at 336 ("judgments about the appropriate punishment for an offense belong in the first instance to the legislature"); Balice v. United States Dept of Agriculture, 203 F.3d 684, 699 (9th Cir. 2000) (a $225,500 fine did not violate the Eighth Amendment where the maximum fine was $528,000, notwithstanding the lack of monetary loss suffered by the government).

An excessive fines inquiry also focuses upon whether the penalty amount calculated is grossly disproportionate to the damages. For example, in San Huan New Materials High Tech, Inc. v. Int'l Trade Comm., 161 F.3d 1347, 1350, 1364-65 (Fed. Cir. 1999), the United States Court of Appeals for the Federal Circuit upheld the Commission's imposition of civil penalties of $50,000 per violation day for a period of 31 days, or a total of $1,550,000. The Federal Circuit sustained the agency's determination that this amount was about three times the value of infringing imports, and ruled that this was a "relatively low ratio of penalty to value of infringing goods" and "well within constitutional limits." Id. at 1364 (citing BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 581 (1996) ("not more than 10 to 1" ratio) (two million dollar punitive damages

award was grossly excessive when compensatory damages amounted to only $4,000), and Bajakajian, 524 U.S. at 337 ("grossly disproportional" fine is unconstitutional)).

ACMI asserts that the minimum statutory penalty of $5,000 per pay application, or $25,000 total, is appropriate. Pl. Op. 11. The $25,000 amount that ACMI believes appropriate is one per cent of the single damages amount ($2,324,222). We are respectfully requesting instead that the Court impose penalties of $50,000, or a mere two per cent of the single damages amount. There is therefore no substantial argument that the amount requested is grossly disproportional such that it would amount to an excessive fine. See also Mackby, 339 F.3d at 1018 (upholding $555,000 in civil penalties (111 claims times $5,000) as not excessive where the single damages amount totaled less than $59,000), aff'g, 221 F. Supp.2d 1106 (N.D. Cal. 2002).

## IV. The Maximum Statutory Penalty Is Appropriate Here

ACMI also misstates our argument for application of the maximum penalty. Pl. Op. 12. We are not seeking an extra penalty of $10,000 for those progress payments that included commission kickbacks as well as the false bond amounts and the non-existent parent company indemnity. As presented in our summary chart, we seeks a **total** penalty of $10,000 for each of the five progress payments. Both the FCA and the Anti-Kickback Act authorize a penalty at that level. The Court should award the maximum allowable penalty as recognition of the multiple intentional frauds included in those pay applications.

Indeed, as noted above, and as the court announced it would do in BMY Combat Systems, 44 Fed. Cl. at 151, this Court should also take into account ACMI's continued refusal to accept responsibility for these frauds and its attempts to minimize even that conduct as to

which it has twice pleaded guilty to criminal felonies.[6] Defrauding the Government is an exceptionally serious matter, as exemplified by the strong stance against fraud in Government procurement expressed by Congress in enacting and amending the statutes under which we have sought relief in these cases, and the lack of tolerance for fraud expressed by this Court in its decisions in this case, by other judges of this Court (e.g., BMY Combat Systems, supra; Daewoo Engineering & Const. Co., Ltd. v. United States, 73 Fed. Cl. 547 (2006), appeal pending, Fed. Cir. No. 2007-5129; Supermex, Inc. v. United States, 35 Fed. Cl. 29 (1996)), and by Federal Circuit (e.g., Long Island Savings Bank, FSB v. United States, 476 F.3d 917, 929 (Fed. Cir. 2007), petition for rehearing pending, Fed. Cir. No. 2006-5029; Christopher Village, L.P. v. United States, 360 F.3d 1319, 1335 (Fed. Cir. 2004)). $50,000 is hardly excessive for ACMI's misconduct here. It is a mere two percent of the Government's single damages in this case, and it is plainly warranted by ACMI's pattern of fraudulent frontloading and kickbacks, approved at the highest levels of the company as well as its parent, on four Government contracts.

---

[6] ACMI implies that, in seeking the maximum allowable penalties, we are attempting to subvert the American Rule that parties bear their own legal costs. We take no such position. Rather, we respectfully request that, in considering the penalties to be imposed, the Court note ACMI's failure to accept civil responsibility for the misconduct to which it twice pleaded guilty and its continuing to press arguments that have no factual basis whatsoever (e.g., ACMI's repetition in its Opposition at 10-11 of the argument that the commission kickbacks were a "discount, promotional allowance, or rebate," notwithstanding the complete lack of testimonial or documentary support in the record for this claim). The efforts by ACMI and its succession of counsel over nearly eight years to put off the day of reckoning have caused an unnecessary expenditure of judicial and Government resources, and it is entirely proper for the Court to consider these costs in assessing the penalty, just as Judge Tidwell signified he would do in the BMY Combat Systems case. As noted in our opening brief, the House Report on the Anti-Kickback Act plainly allows the Court to consider that "the government incurs expenses in investigating and prosecuting kickback cases" when it is determining the appropriate penalty. House Report No. 99-964, at 15 (1986), reprinted in 1986 U.S.C.C.A.N. 5960, 5972.

## V. ACMI's Arguments Based Upon John Walsh's Deposition Are Not Relevant

As explained in detail in our motion for protective order, Mr. Walsh's testimony and reports are not relevant to the Court's resolution of our motion for summary judgment on damages. As ACMI acknowledges, our motion for summary judgment on damages does not depend upon Mr. Walsh's testimony or his reports. Pl. Op. 6. There are no material facts for which Mr. Walsh's testimony or his reports form a necessary factual predicate. On June 15, 2007, ACMI presented a complete response to our summary judgment motion and has not identified any particular factual findings for which this Court must now hear testimony from Mr. Walsh.[7]

## VI. ACMI Has Not Established Any Prejudice

ACMI claims that it has been prejudiced as a result of the alleged destruction of documents by Mr. Walsh. Pl. Op. 2. ACMI attempts to establish prejudice by asserting that the documents Mr. Walsh allegedly destroyed "related to the Government's damages calculations"

[7] Contrary to ACMI's assertion (Pl. Op. 3, 6), Government counsel did not represent to the Court or plaintiff that the Government would rely upon Mr. Walsh's damages report as the evidentiary basis for its motion for summary judgment on damages. Government counsel stated that the numbers in Mr. Walsh's damages report from 2002 would have to be adjusted to take into account the rulings made in the Court's January 2007 opinion, that his revised report would be provided to ACMI's counsel, and that the parties would be having discussions regarding the amount of damages. SA30, 32-33 (Tr. 18, 36-37). Government counsel also stated that no deposition of Mr. Walsh was necessary because his role was calculations. SA32-33 (Tr. 36-37) Government counsel stating: "I really don't understand why you would need to take a deposition of another computation that's just reformulated and you are minusing out items. . . I think the Plaintiff could wait and see whether they really want to take a deposition and burn up money on arithmetic."). As ACMI admits, the Government's damages brief does not rely at all upon Mr. Walsh's testimony. Pl. Op. 6.

and, therefore, that summary judgment is inappropriate and the Court should "order further discovery regarding damages." Pl. Op. 3, 13.

ACMI has copies of Mr. Walsh's draft reports and e-mails relating to his damages reports, and, if such documents were truly relevant, ACMI could and should have offered them as evidence and demonstrated their probative value to the Court's determination of some material fact at issue. ACMI has not done so. ACMI has also failed to demonstrate how it has been prejudiced, given the numerous pages of draft reports and e-mails provided by the Government. Copies of such documents are contained in our appendix to our motion for protective order also filed today. As is evident from their content, these documents are not probative evidence or pertinent to the Court's decision on damages or any other matter at issue in these cases.

Further, ACMI's eleventh-hour attempt to create an issue where there is none should be firmly rejected. Mr. Walsh testified that he provided assistance to Government counsel and that he had to maintain documents he "created for use in the [litigation of the] case," but he would not keep drafts of those documents as it becomes a problem knowing whether he is "working with the most current version or not." SA15 (Dep. 103). Mr. Walsh testified that in preparing his reports for Government counsel, he saved his changes over the most recent electronic version of the document, and he did not save the e-mails that he sent to Government counsel conveying drafts of his reports. SA15 (Dep. 103-04). ACMI twists this testimony into an accusation that Mr. Walsh destroyed substantive evidence. Pl. Op. 1-2. Moreover, ACMI has copies of the electronic documents that Mr. Walsh did not save on his computer, i.e., his draft reports and e-mails with Government counsel concerning those reports. SA15-16 (Dep. 104-05).

Mr. Walsh's testimony regarding the work product that he prepared during the litigation is similar to that of ACMI's expert witness. ACMI's expert witness Joseph Barsalona also did not maintain any drafts of the reports that he provided to ACMI's counsel and about which he testified in the Government's deposition. SA26 (Dep. 28-29). Indeed, Mr. Barsalona testified that it was his standard practice not to retain drafts of his reports, and that he had not maintained any drafts of his reports in this case. SA26 (Dep. 28) (A..."As a matter of practice, as we go through, we don't save our drafts. We only maintain the final work product."). Mr. Barsalona testified as follows:

> Q. So I take it that you have not maintained any drafts leading up to the final report; is that right?
> A. That is correct.
> Q. That's your usual practice?
> A. Yes, it is.

SA26 (Dep. 28). ACMI relied extensively upon Mr. Barsalona's testimony in opposing our motions for summary judgment and again invokes his testimony in opposing our motion for summary judgment on damages. See Pl. Res. Def. PFUF Nos. 30 and31, at page 20 and 21.[8] The Court should reject ACMI's arguments regarding John Walsh.

## CONCLUSION

For all the foregoing reasons and those stated in our motion, we respectfully request that the Court grant our motion for summary judgment and award treble damages in the amount of $6,972,666, and penalties in the amount of $50,000, for a combined total of $7,022,666.

---

[8] Mr. Barsalona has no personal knowledge related to the material facts at issue in the case, but ACMI's reliance upon him when he admittedly engaged in the same retention practices as Mr. Walsh exposes ACMI's allegation of "obstructive behavior" by the Government as a disingenuous and desperate maneuver after all else has failed. Pl. Op. 13.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/Jeanne E. Davidson
JEANNE E. DAVIDSON
JOYCE R. BRANDA
Directors

PATRICIA R. DAVIS
Assistant Director

s/Domenique Kirchner
DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Fax: (202) 514-8624
Attorneys for Defendant

Of Counsel:
TRACY L. HILMER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice

ERIC L. MILLER
Office of the Inspector General
General Services Administration

DALTON PHILLIPS
CATHERINE CROW
General Services Administration
July 20, 2007