**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **AMEC CONSTRUCTION MANAGEMENT, INC. (f/k/a/ Morse Diesel International, Inc.)** <br> **Plaintiff,** <br> **v.** <br> **UNITED STATES,** <br> **Defendant.** | **No.: 99-279** <br> **(Judge Braden)** |

**MEMORANDUM IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER AND IN SUPPORT OF MOTION TO COMPEL (1) CONTINUATION OF DEPOSITION OF JOHN WALSH AND (2) PRODUCTION OF DOCUMENTS**

## TABLE OF CONTENTS

**Page**


I. Introduction .......... 1

II. Argument .......... 5

A. ACMI Is Entitled to Continue Mr. Walsh's Deposition Because His Errata Render His Deposition Incomplete .......... 5

1. Mr. Walsh's Recanting of Testimony Renders His Deposition Incomplete and Useless .......... 6

2. Continuing Mr. Walsh's Deposition Is Required Because His Testimony Directly Affects Summary Judgment on Damages .......... 8

3. Courts Have Reopened Depositions Based on Contradictions of Testimony Regarding Document Destruction .......... 9

B. In the Alternative, this Court Should Grant ACMI Leave to Continue Mr. Walsh's Deposition .......... 12

1. The Government Cannot Demonstrate Good Cause Why Leave Should Not Be Granted .......... 12

2. Continuing Mr. Walsh's Deposition Is Justified by the Government's Reliance on His Contradictory Errata .......... 15

3. Rule 56(f) is Inapplicable .......... 16

C. The Government's Four Documents Relating to Preservation Instructions in this Case are not Protected by the Attorney-Client Privilege or Work Product Doctrine and should be Produced .......... 16

III. Conclusion .......... 20

# TABLE OF AUTHORITIES

## CASES

*AAB Joint Venture v. United States*,
75 Fed. Cl. 432 (2007) .......................................................................................11

*In re "Agent Orange" Product Liab. Litig.*,
98 F.R.D. 558 (E.D.N.Y. 1983) ..........................................................................19

*Ameristar Jet Charter Inc. v. Signal Composites, Inc.*,
244 F.3d 189 (1st Cir. 2001) ........................................................................13, 14

*In re Asousa P'ship*,
No. 1-12295DWS, 2005 Bankr. LEXIS 2373 (E.D. Pa. Nov. 17, 2005) ..........................18

*BMY - Combat Sys. Div. of Harsco Corp. v. United States.*,
44 Fed. Cl. 141 (1998) .........................................................................................8

*Clay v. Board of Trustees of Neosho County Community College*,
No. Civ. A. 94-2282-EEO, 1995 WL 646817 (D. Kan. Sept. 26, 1995) ..........................15

*De Seversky v. Republic Aviation Corp.*,
2 F.R.D. 113 (E.D.N.Y. 1941) ...............................................................................6

*Doe v. District of Columbia*,
230 F.R.D. 47 (D.D.C. 2005) ...............................................................................18

*Eckert v. Kemper Fin. Servs., Inc.*,
No. 95 C 6831, 1998 WL 699656 (N.D. Ill. Sept. 30, 1998) ...........................................8

*In re Enron Corp.*,
349 B.R. 115 (S.D.N.Y. 2006) ..............................................................................13

*Hurley v. Jarc Bulders, Inc.*,
164 F.R.D. 39 (E.D. Pa. 1995) ..............................................................................13

*Independence Park Apartments v. United States*,
59 Fed. Cl. 765 (2004) .........................................................................................13

*Jade Trading, LLC v. United States*,
64 Fed. Cl. 85 (2005) ...................................................................................10, 12, 13

*Judicial Watch, Inc. v. United States Department of Commerce*,
34 F. Supp. 2d 47 (D.D.C. 1998) ...........................................................................10

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Keck v. UBS*,
No. 94CIV.4912 (AGS), 1997 WL 411931 (S.D.N.Y. July 22, 1997)....................9, 10, 14

*Lugtig v. Thomas*,
89 F.R.D. 639 (N.D. Ill. 1981)..........................................................................5, 6

*Melhorn v. New Jersey Transit Rail Operations, Inc.*,
203 F.R.D. 176 (E.D. Pa. 2001)..........................................................................14

*Muhl v. Tiber Holding Corp.*,
No. 95-5284, 1997 U.S. Dist. LEXIS 217 (E.D. Pa. Jan. 9, 1997)...................................19

*Nike, Inc. v. Brandmania.com, Inc.*,
No. 00-5148, 2002 U.S. Dist. LEXIS 20355 (E.D. Pa. Oct. 3, 2002) ...............................19

*Perkasie Indust., Corp. v. Advance Transformer Inc.*,
Civ. A. No. 90-7359, 1992 WL 166042 (E.D. Pa. June 11, 1992) .................................5, 6

*Reilly v. TXU Corp.*,
230 F.R.D. 486 (N.D. Tex. 2005) .........................................................................5

*Renda Marine v. United States*,
58 Fed. Cl. 57 (2003) ........................................................................................11

*Rios v. Welch*,
856 F. Supp. 1499 (D. Kan. 1994),
*aff'd*, 67 F.3d 1543 (10th Cir. 1995)....................................................................8

*Sanford v. CBS, Inc.*,
594 F. Supp. 713 (N.D. Ill. 1984) ......................................................................5, 6

*In re Sulfuric Acid Antitrust Litig.*,
230 F.R.D. 527 (N.D. Ill. 2005)........................................................................13, 14

*The Pueblo of Laguna v. United States*,
60 Fed. Cl. 133 (2004) ......................................................................................11

*Tingley Sys., Inc. v. CSC Consulting, Inc.*,
152 F. Supp. 2d 95 (D. Mass. 2001) ....................................................................6

*United Med. Supply Co. v. United States*,
73 Fed. Cl. 35 (2006) ........................................................................................11

**TABLE OF AUTHORITIES**
(continued)

**Page**

*United States Fire Ins. Co. v. Bunge North America, Inc.*,
No. 05-2192-JWL, 2007 WL 2103353 (D. Kan. July 23, 2007) ....................................18

*United States ex rel. Burch v. Piqua Engineering*,
152 F.R.D. 565 (S.D. Oh. 1993) ....................................................................................5

**OTHER AUTHORITIES**

7 James Wm. Moore, et al., Moore's Federal Practice-Civil
§ 30.05 [1][c] (Lexis 2006)..........................................................................................13

Fed. R. Civ. P. 34(a) ..........................................................................................................3

Rule of the Court of Federal Claims 30(a)(2)..................................................................13

Rule of the Court of Federal Claims 30(a)(2)(B)...............................................1, 12, 13, 14

Rule of the Court of Federal Claims 36(b)(2)...........................................................12, 14

Rule of the Court of Federal Claims 37 ..........................................................................1

Rule of the Court of Federal Claims 37(a)(2)(A) ............................................................1

Rule of the Court of Federal Claims 56(f) ......................................................................16

Wright & Miller, 8A Fed. Prac. & Proc. Civ. 2d § 2118 (2007) ......................................5

AMEC Construction Management, Inc. ("ACMI") respectfully submits its Memorandum in Opposition to the Government's Motion for Protective Order and in Support of ACMI's Motion to Compel the Continuation of the Deposition of John Walsh and for Production of Documents pursuant to Rule of the Court of Federal Claims ("RCFC") 37. ACMI moves to compel the continuation of Mr. Walsh's deposition regarding his submission of errata contradicting his deposition testimony admitting his destruction of relevant documents. Additionally, ACMI moves to compel the production of documents in response to ACMI's June 21, 2007 Request for Production of Documents relating to any instructions given to Mr. Walsh to preserve documents relating to this litigation. Alternatively, ACMI seeks leave of Court to continue Mr. Walsh's deposition pursuant to RCFC 30(a)(2)(B).

Pursuant to RCFC 37(a)(2)(A) ACMI has in good faith conferred with the United States (the "Government") in an effort to secure Mr. Walsh's deposition without this Court's action.[1] The Government refused to appear with Mr. Walsh for his deposition on July 27, 2007. *Id.*

## I. INTRODUCTION

Mr. Walsh first testified at his deposition that he routinely deleted e-mails and that he was under no instructions to retain electronic documents. Now, Mr. Walsh recants his testimony and contends that he was aware that he needed to save certain "final" electronic documents. At his May 4, 2007 deposition, Mr. Walsh testified *twice* that he did not receive any instructions to preserve e-mails or electronic documents:

> Q. Did you receive any instructions from counsel or from anyone in your office about retaining e-mails, electronic documents, hard copy documents, during the pendency of a court case?

[1] *See* July 10, 2007 Letter from D. Kirchner to K. Behre (Exh. 1); July 16, 2007 Letter from K. Behre to D. Kirchner (Exh. 2); July 17, 2007 Letter from D. Kirchner to K. Behre (Exh. 3).

A Not that I can recall

Q. But it's your testimony here today that you're under no instruction to retain, not delete, and not to otherwise save and safeguard electronic documents relating to the case; is that correct?
A. I would say that's my understanding, that's correct.

2007 Walsh Dep. at 102:22-103:3; 106:3-11. Mr. Walsh testified that he did not save e-mails:

Q. So at the present time, as best you understand it, you're under no obligation to retain records, documents, e-mails, electronic documents or the like relating to this entire matter?
A. Any document I could not – we have files and files that I realized all those files have to be maintained, but as far as e-mails go, it's my understanding that that – I've not been given an instruction to retain any e-mail messages.

2007 Walsh Dep. at 103:4-14. Mr. Walsh also testified: "I get so many e-mails, that it's unmanageable to -- for me to save e-mails, and I'll delete e-mails that are unimportant soon after sending them or receiving them." 2007 Walsh Dep. at 103:6-10.

Mr. Walsh further testified that he deleted all drafts of his reports and other documents:

Q What about other electronic records, spreadsheets, Word documents and the like?
A I would have to maintain any documents that I -- any spreadsheets I created, any documents that I created for use in the case. I wouldn't keep drafts of those documents, it becomes a problem with whether I'm working with the most current version or not. So when I create a document, I will either save the new document over the top of the old document, or, if there was a separate file, I would delete that file, but my most common practice would be just to save whatever changes I made over the current document that is on file.

2007 Walsh Dep. at 103:15-104:6 (all excerpts attached as Exhibit "Exh." 4).

More than five (5) weeks after this May 4, 2007 deposition, on June 11, 2007, Mr. Walsh submitted errata recanting his deposition testimony that he deleted e-mails and threw away relevant documents. Walsh Dep. 5/4/07 at 102-106. Mr. Walsh now contends:

My answer on these lines (10-11) is incorrect. When I gave my answer, I thought the questions referred to e-mail messages and the question actually refers to 'electronic documents.' The correct answer is – Although I do not remember a specific instruction, I know that I need to save all final electronic documents

> substantively relating to this case that I created or received that directly relate to my audit findings and report conclusions.

6/11/07 Errata Sheet to page 106 (Exh. 5).

Moreover, Mr. Walsh's errata also recanted his deposition testimony that he "would have to maintain any documents that I – any spreadsheets I created, *any documents that I created for use in the case*. I wouldn't keep drafts of those documents." 2007 Walsh Dep. at 103:15-104:6 (emphasis added). Now, Mr. Walsh states that he only knew he needed to save final documents "*substantively relating* to this case that I created or received that *directly relate* to my audit findings and report conclusions." 6/11/07 Errata Sheet (emphasis added). ACMI does not know what Mr. Walsh means by the terms "substantively relating" and "directly relate." It is known that Mr. Walsh destroyed all drafts in violation of the Government's discovery obligations because his errata refers to saving only "final" documents. 6/11/07 Errata to page 106 (Exh. 5).

Additionally, the distinction Mr. Walsh draws between e-mail and electronic documents is illusory because e-mails *are* electronic documents. Fed. R. Civ. P. 34(a) and Committee Note (stating "Rule 34(a) is expansive and includes any type of information that is stored electronically. A common example often sought in discovery is electronic communications, such as e-mail."). Mr. Walsh's distinction also does not make sense because Mr. Walsh had already testified that "I've not been given an instruction to retain any e-mail messages." Further, Mr. Walsh evidently understood the meaning of the terms "e-mail" and "documents" because he differentiated between e-mails and other documents in his answer to ACMI's counsel's question earlier in the deposition. 2007 Walsh Dep. at 103:4-14.

As a result of Mr. Walsh's errata, on June 21, 2007, ACMI served a notice on the Government to re-depose Mr. Walsh on July 27, 2007 (Exh. 6) and a request for production of

documents ("RFP") on the Government (Exh. 7). The Government refused to appear at the deposition and filed its Motion for Protective Order on July 20, 2007.

In its response to ACMI's Request for Production of Documents, the Government refused to produce (1) any documents relating to this litigation regarding notification and instructions to preserve, retain, or cease destruction of documents and (2) any communications with Mr. Walsh relating to notification and instructions to preserve, retain, or cease destruction of documents relating to this litigation. (RFP Nos. 1 and 3; 07/24/07 Defendant's Response to Plaintiff's Request for Production of Documents ("Resp. to RFP") at pp. 2-4, 5-6) (Exh. 8). Notably, however, the Government did not object to the Request for Production on the grounds that it was impermissible. The Government objected to those requests on the basis of attorney-client privilege, and produced only generic preservation instructions unrelated to this case.[2] The Government submitted a privilege log listing four (4) pieces of correspondence. (07/24/07 Privilege Log of Documents ("Privilege Log") (Exh. 9)). Additionally, the Government *for the first time* conceded that another employee – the former Contracting Officer, Karen Poole – destroyed documents relating to this case "sometime prior to April 2001," a full two years after the Government knew it was involved in litigation with ACMI. (Resp. to RFP, at pp. 3-4).

ACMI therefore moves to compel both the continuation of Mr. Walsh's deposition to examine him about his recanted testimony and the production of documents requested pertaining to any instructions to preserve documents given to Mr. Walsh.

[2] On May 8, 2007, shortly after Mr. Walsh's deposition, ACMI first asked the Government to provide copies of any freeze notices that it may have issued regarding this case, but the Government has not yet provided a single document in response to that request.

# II. ARGUMENT

## A. ACMI Is Entitled to Continue Mr. Walsh's Deposition Because His Errata Render His Deposition Incomplete.

Mr. Walsh's deposition should be continued because his attempt to flatly recant his testimony via his errata sheet materially modifies his original deposition testimony in which he admitted his destruction of relevant e-mails and draft documents but stated that he knew he needed to save "any [final] documents that I created for use in the case." 2007 Walsh Dep. at 102-106. Mr. Walsh's deposition is incomplete without further testimony on those issues and the reasons for his recantation.

Federal courts uniformly recognize that "[i]f a witness makes changes in a deposition in accord with Rule 30(e) that 'make the deposition incomplete or useless without further testimony, the party who took the deposition can reopen the examination.'" *See, e.g.*, *Perkasie Indust., Corp. v. Advance Transformer Inc.*, Civ. A. No. 90-7359, 1992 WL 166042, at *3 (E.D. Pa. June 11, 1992) (holding deposition could be reopened based on errata changes, granting attorneys' fees and costs for reopened deposition and citing *Lugtig v. Thomas*, 89 F.R.D. 639, 642 (N.D. Ill. 1981) (permitting deposition to be reopened and awarding attorneys' fees and costs of re-taking deposition)); *Sanford v. CBS, Inc.*, 594 F. Supp. 713, 714-15 (N.D. Ill. 1984) (holding plaintiff could reopen deposition of Michael Jackson to inquire about errata changes and awarding attorneys' fees and costs of re-taking deposition); *Reilly v. TXU Corp.*, 230 F.R.D. 486, 491 (N.D. Tex. 2005) (reopening deposition and granting attorneys' fees and costs of re-taking deposition); *United States ex rel. Burch v. Piqua Engineering*, 152 F.R.D. 565, 567 (S.D. Ohio 1993) (same); Wright & Miller, 8A Fed. Prac. & Proc. Civ. 2d § 2118 (2007). A single contradicted answer in an errata sheet is sufficient grounds to reopen a deposition. *Perkasie*, 1992 WL 166042, at *3-4.

The entitlement to reopen a deposition after a witness submits errata changes pursuant to Rule 30(e) exists as a safeguard against abuse of that Rule. *Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 120 (D. Mass. 2001) (granting motion to reopen depositions to inquire about the reasons for altered testimony contained in errata sheets).[3] Even where the errata changes do not, of necessity, contradict deposition testimony, but rather supply "more detailed and comprehensive answers to the questions asked," it is proper to permit a deposition to be reopened because "the witness' initial response all but foreclosed specific follow-up inquiries." *Perkasie*, 1992 WL 166042, at * 4. In a reopened deposition, "[d]eposing counsel can ask questions which were made necessary by the changed answers, questions about the reasons the changes were made, and questions about where the changes originated, whether with the deponent or with his attorney." *Lugtig*, 89 F.R.D. at 642; *Sanford*, 594 F. Supp. at 715.

### 1. **Mr. Walsh's Recanting of Testimony Renders His Deposition Incomplete and Useless.**

Mr. Walsh's direct contradiction of his deposition testimony renders the deposition incomplete and useless. It is a longstanding principle that "there is no value to a deposition if the answer 'no' is thereafter changed to 'yes' or white is changed to black." *De Seversky v. Republic Aviation Corp.*, 2 F.R.D. 113, 115 (E.D.N.Y. 1941) (granting motion to reopen deposition and stating that an "examination should not be considered finished if a witness seeks to recant his testimony"). Had ACMI known that Mr. Walsh was going to change his deposition testimony regarding his receipt of instructions to preserve documents, ACMI's counsel would have

[3] The Government mischaracterizes the holding of *Tingley* by failing to point out that the errata corrections on which that court permitted reopening the depositions were corrections that changed the substance of the witnesses' testimony. (Mot. For Prot. Order at 6). The *Tingley* court only denied reopening the depositions where the corrections were merely typographical in nature. 152 F. Supp. 2d at 120-21.

examined Mr. Walsh on the circumstances of his destruction of documents, including e-mails, and the contours of any instructions to preserve documents that he received.

Additionally, had ACMI known that Mr. Walsh was going to change his deposition testimony to state that instead of saving "any documents that [he] created for use in the case" he actually only knew he needed to save final documents "*substantively relating* to this case that I created or received that *directly relate* to my audit findings and report conclusions," ACMI would have examined Mr. Walsh on the meaning of the terms "substantively relating" and "directly relate" to determine what documents he destroyed that did not meet those qualifiers. 6/11/07 Errata Sheet (emphasis added).

The Government's belated and convoluted attempt to further explain Mr. Walsh's recantation is illogical and inconsistent with Mr. Walsh's errata and deposition testimony. (Mot. For Prot. Order at 7-10). The Government's lengthy explanation is completely unattested to or verified by Mr. Walsh. Mr. Walsh's errata recantation does not "resolve[] an inconsistency in his testimony," as the Government contends. (Mot. For Prot. Order at 7). The question at issue was about *instructions* to preserve *electronic documents*. 2007 Walsh Dep. at 106. Mr. Walsh testified that he was under no such instructions. *Id*. Mr. Walsh had testified earlier in the deposition that he had not been given an instruction to retain *email messages*, but that he "realized" that "files have to be maintained." 2007 Walsh Dep. at 103. "Realizing" ephemerally the need to maintain files is very different from receiving an actual "instruction" to preserve documents, which is what Mr. Walsh was asked about and testified that he did not receive. No inconsistency was present between Mr. Walsh's answer that he was under no instruction to retain email messages and that he was under no instruction to retain electronic documents. Mr. Walsh's recantation implies that he received some sort of instruction – although he says not a

"specific" instruction – to retain certain final electronic documents. *See* Errata Sheet to page 106. ACMI should be permitted to ask Mr. Walsh about his recanted testimony, the reasons for the recantation, and at whose suggestion the recantation was made.

### 2. **Continuing Mr. Walsh's Deposition Is Required Because His Testimony Directly Affects Summary Judgment on Damages.**

A deponent cannot change his deposition testimony after a party has filed a summary judgment motion in order to create or eliminate a disputed issue of fact. *See, e.g.*, *Eckert v. Kemper Fin. Servs., Inc.*, No. 95 C 6831, 1998 WL 699656, at *6-7 (N.D. Ill. Sept. 30, 1998) (prohibiting plaintiff's contradictory errata changes made after defendant's motion for summary judgment was filed as an attempt to create a "sham issue of fact"); *Rios v. Welch*, 856 F. Supp. 1499, 1502 (D. Kan. 1994) (holding "a plaintiff is not permitted to virtually rewrite portions of a[n expert's] deposition, particularly after the defendant has filed a summary judgment motion"), *aff'd*, 67 F.3d 1543 (10th Cir. 1995).

Here, the Government is relying on Mr. Walsh's testimony to assert that "[t]here are no material facts for which Mr. Walsh's testimony or his reports form a necessary factual predicate." *See* 07/20/07 United States' Reply to Plaintiff's Opposition to United States' Motion for Summary Judgment on Damages, at 2-3, 17-18. Mr. Walsh submitted his errata on June 11, 2007, 24 days after the Government filed its Summary Judgment Motion on Damages and only four (4) days prior to the deadline for ACMI's Opposition. Mr. Walsh's errata change apparently seeks to eliminate a disputed issue of fact – the Government's recognition in 2002 of an alternative theory of damages – time-value of money damages – that is consistent with ACMI's reliance on *BMY – Combat Sys. Div. of Harsco Corp. v. United States*. 44 Fed. Cl. 141, 149-50 (1998). As this Court is aware, ACMI relies on the Court's decision in *BMY* that the damages in this case should not exceed the time-value of money. The documents that Mr. Walsh

now states he was instructed to retain might have included documents relating to the time-value of money theory, and ACMI should be given the opportunity to inquire about why his answer changed and why he destroyed documents concerning that issue despite instructions to retain documents.

ACMI is entitled to Mr. Walsh's *complete* testimony about his destruction of documents because his complete testimony is critical to a determination by this Court regarding whether summary judgment is even proper. *See* 06/15/07 Plaintiff's Opposition to Government's Motion for Summary Judgment on Damages, at 6-7. Mr. Walsh's recanted testimony draws into question whether ACMI received full discovery prior to having to respond to the Government's Motion for Summary Judgment on Damages. Upon continuing Mr. Walsh's deposition, ACMI could rely on his testimony regarding his failure to preserve these relevant documents and adequacy of the Government's instructions (if any) to preserve documents. Mr. Walsh's further testimony would establish whether documents once existed that demonstrate the reasons he included the time-value of money theory of damages in his 2002 report; the reasons for the deletion of that theory between his 2002 report and his 2007 report; the materials he relied on in drafting his 2002 report and his 2007 report; his reliance on the Report prepared in 1999 by the OIG's office by Steven Anderson (which only used a time-value of money calculation); and whether Mr. Walsh or the Government's counsel requested Mr. Walsh to change his answer to his deposition.

### 3. <u>Courts Have Reopened Depositions Based on Contradictions of Testimony Regarding Document Destruction.</u>

At least one court has reopened a deposition of a witness when the witness contradicted his earlier testimony about whether certain documents had been deleted or retained. *Keck v. UBS*, No. 94CIV.4912 (AGS) (JCF), 1997 WL 411931, at *2 (S.D.N.Y. July 22, 1997). In *Keck*,

a witness testified that he "routinely delete[d]" certain daily-generated documents and retained other monthly-generated documents, but after the deposition the same witness told another witness that documents had been "mysteriously purged from [his] computer." *Id*. The plaintiffs argued that any missing information was deleted as the witness initially testified. *Id*. The court, however, held that "[t]here is thus a disputed factual issue that warrants reopening the depositions." *Id*. The court noted that the "substantive information sought is plainly relevant to UBS's defense . . . Moreover any role that [plaintiffs] might have played in the destruction of evidence would affect [their] credibility at trial and could be the basis for imposition of sanctions, including invocation of an adverse inference that the evidence would have been damaging to [plaintiffs'] case." *Id*. Moreover, this Court has cited with approval cases in which the court has permitted a second deposition of witnesses regarding the destruction of documents. *Jade Trading, LLC v. United States*, 64 Fed. Cl. 85, 86-87 (2005) (granting leave to conduct second deposition, awarding attorneys' fees and costs of re-taking deposition), and citing *Judicial Watch, Inc. v. United States Department of Commerce*, 34 F. Supp. 2d 47, 51, 54-55 (D.D.C. 1998) (noting also that due to evidence of the Government's destruction of documents, the Government filed a motion for entry of judgment *against itself*)).

Likewise, reopening Mr. Walsh's deposition is appropriate because Mr. Walsh's wide-ranging and persistent destruction of relevant documents and the Government's apparent failure to issue appropriate document preservation instructions is a serious matter that is relevant to ACMI's defenses on damages, affects the Government's credibility, and may indeed warrant sanctions.[4] As a CPA, no doubt Mr. Walsh is aware of his obligations to retain documentation related to the audits he has performed, particularly when litigation arises related to his activities.

[4] ACMI intends to bring an appropriate motion regarding sanctions if necessary.

*See, e.g.,* Statement on Auditing Standards 96 and 103, AU Sections 339 and 339A. Moreover, Mr. Walsh has been aware of the facts underlying the Government's allegations since at least 1995, when the Government first became aware of the alleged fraudulent acts as a result of Mr. Walsh's own audit work. Thus, Mr. Walsh's admitted destruction of documents encompasses a lengthy 12-year period. This Court has issued preservation orders, sanctioned or compelled production from the Government where document destruction was evident. *See, e.g., AAB Joint Venture v. United States*, 75 Fed. Cl. 432, 447 (2007) (ordering restoration of back-up tapes after finding Government's production of emails inadequate); *United Med. Supply Co. v. United States*, 73 Fed. Cl. 35, 35-36 (2006) (issuing order requiring Government to preserve evidence extending to all electronic documents after evidence revealed Government allowed several boxes of relevant documents stored in a warehouse to be destroyed); *The Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138-41 (2004) (issuing order requiring Government to preserve all relevant documents, including electronic documents, e-mail, and metadata, after evidence revealed that Government had lost and destroyed documents in the past); *Renda Marine v. United States*, 58 Fed. Cl. 57, 65 (2003) (ordering Government to produce back-up tapes at its expense after evidence revealed contracting officer's practice of deleting relevant e-mail documents). The continuation of Mr. Walsh's deposition is critical to uncovering the reasons for his recanted testimony in order to determine the extent to which the Government and Mr. Walsh destroyed relevant documents that bear on the damages and ongoing issues in the case. Mr. Walsh is a fact witness regarding the alleged fraud, and the Government requested and the Court has ruled that it is preserving the Government's Ninth Counterclaim based on the Contract Disputes Act. *See* 06/29/07 Memorandum Opinion and Order at 4 (Exh. 10); 06/22/07 Status Hearing Tr. at 6:19-7:9 (Exh. 11). Accordingly, Mr. Walsh's deposition should be continued.

## B. <u>In the Alternative, this Court Should Grant ACMI Leave to Continue Mr. Walsh's Deposition.</u>

Although leave of Court is generally not required to reopen a deposition where a deponent changes his deposition testimony by errata so as to render the deposition incomplete or useless, ACMI requests, in the alternative, that the Court grant ACMI leave to reopen Mr. Walsh's deposition for the purpose of inquiring about Mr. Walsh's destruction of relevant documents and the contents of those destroyed documents. ACMI has been unable to locate a single federal case that considers a motion to reopen a deposition based on a deponent's errata changes in the context of Rule 30(a)(2)(B). Rather, it appears that courts rely on Rule 30(a)(2)(B) when parties argue that new information or new allegations necessitate taking a second deposition. Moreover, the Government has not demonstrated any prejudice from ACMI noticing Mr. Walsh's deposition prior to seeking leave under Rule 30(a)(2)(B), and cannot do so because the same issues raised now in the Government's Motion for Protective Order and this motion would have been litigated prior to serving the notice.

### 1. <u>The Government Cannot Demonstrate Good Cause Why Leave Should Not Be Granted.</u>

This Court has recognized that "[s]ome courts have opined that leave to conduct a second deposition should ordinarily be granted, and that the party opposing the second deposition must demonstrate good cause why the second deposition should not be taken." *Jade Trading,* 64 Fed. Cl. at 86. That approach is consistent with the language of learned treatises as well as case law. Specifically, "[t]he decision to grant or deny leave to re-depose a witness is guided by Rule 26(b)(2), *which requires the party opposing the second deposition to demonstrate* that: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information sought; or (3) the burden or expense of the

proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." 7 James Wm. Moore et al., Moore's Federal Practice-Civil, § 30.05[1][c] (Lexis 2006) (emphasis added) (cited in *In re Enron Corp*., 349 B.R. 115, 129 (S.D.N.Y. 2006)). The text of RCFC 30(a)(2)(B) also recognizes that leave "shall be granted to the extent consistent with the principles stated in RCFC 26(b)(2)."

This Court has granted leave to conduct a second deposition under RCFC 30(a)(2) in situations much less persuasive than the instant case, such as where the Government counsel had a family medical problem and could only take the initial deposition telephonically and where the initial deposition was conducted six months before. *Jade Trading*,, 64 Fed. Cl. at 86-87; *Independence Park Apartments v. United States*, 59 Fed. Cl. 765 (2004) (granting leave to depose an expert witness twice). *See also Hurley v. Jarc Bulders, Inc.*, 164 F.R.D. 39, 40 (E.D. Pa. 1995) (granting motion for second deposition where plaintiff first learned certain facts during first deposition of the witness). All of the cases cited by the Government applying Rule 30(a)(2)(B) are inapposite because none of them involve a request to reopen a deposition after the witness recanted his testimony. *See Ameristar Jet Charter Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 191-93 (1st Cir. 2001) (involving attempt to take second depositions of corporation and three employees after magistrate issued findings and recommendations and noting defendant did not articulate any dissatisfaction with the testimony already received); *In re Sulfuric Acid Antitrust Litig.*, 230 F.R.D. 527, 528-32 (N.D. Ill. 2005) (involving motion to compel additional deposition to ask witness about handwritten notes where notes had been produced five months prior to first deposition where witness was deposed for 17 hours and plaintiff had opportunity to

ask questions about the notes at that deposition); *Melhorn v. New Jersey Transit Rail Operations, Inc.*, 203 F.R.D. 176, 180 (E.D. Pa. 2001) (denying motion to compel second deposition because preserving impeachment value of surveillance conducted after first deposition did not warrant second deposition, and denying motion for protective order on deposition due to failure to show good cause).[5] Moreover, in two of those cases discovery was already closed. *See Ameristar*, 244 F.3d at 191; *Sulfuric*, 230 F.R.D. at 531. Here, the Court explicitly lifted the stay of discovery and discovery remains open. 02/08/07 Status Hearing, 40:25-41:16 (Exh. 12).

The Government cannot demonstrate that reopening Mr. Walsh's deposition would satisfy any of the Rule 26(b)(2) criteria. *See Keck*, 1997 WL 411931, at *2 (finding plaintiffs could not satisfy Rule 26(b)(2) criteria and granting motion to reopen depositions). First, reopening Mr. Walsh's deposition is not unreasonably cumulative or duplicative because Mr. Walsh's directly contradictory errata requires examination on the details of any preservation instructions he received, whether he destroyed documents despite those instructions, what destroyed documents may have existed in support of his time-value of money calculation in his 2002 Report, and his subsequent deletion of that calculation from his 2007 Report. Had Mr. Walsh been forthright in his May 2007 deposition, reopening his deposition would not be necessary. This testimony cannot be obtained from any other source, as Mr. Walsh was the sole author of those 2002 and 2007 Reports on which the Government's damages claim is based. Indeed, the Government has refused to produce any documents relevant to its preservation of

[5] The Government's citation to *Tingley*, is inapposite to its argument pursuant to Rule 30(a)(2)(B) because the *Tingley* decision does not mention Rule 30(a)(2)(B). (Mot. For Prot. Order, at 4). The court granted plaintiff motion to reopen a deposition on the basis of changed testimony in errata. *Id*. The *Tingley* case thus supports this Court's reopening Mr. Walsh's deposition.

documents in this case despite ACMI's repeated requests. (*See* 05/08/07 Letter from S. Rosenthal to D. Kirchner (Exh. 13); 06/21/07 RFP).

Second, ACMI has not had ample opportunity to obtain information it seeks to discover in reopening Mr. Walsh's deposition because Mr. Walsh's errata directly contradict his deposition testimony. Thus, ACMI could only question Mr. Walsh at his deposition regarding his recanted testimony. ACMI's request to reopen the deposition is therefore based on entirely new information.

Third, the benefits of reopening Mr. Walsh's deposition outweigh any burden or expense to the Government. Mr. Walsh's destruction of documents relevant to the Government's damages claims, and the Government's efforts – or lack thereof – to preserve documents in accordance with its discovery obligations is critical to the Court's summary judgment determination on damages. The Government cannot rely on its own destruction of documents to support its theory that only one theory of damages is appropriate in this case. Any burden resulting from reopening Mr. Walsh's deposition is the result of the Government's own misconduct.

**2. <u>Continuing Mr. Walsh's Deposition Is Justified by the Government's Reliance on His Contradictory Errata.</u>**

Continuing Mr. Walsh's deposition also is warranted because the Government seeks to rely on his corrected testimony. *See Clay v. Board of Trustees of Neosho County Community College*, No. Civ. A. 94-2282-EEO, 1995 WL 646817, at * 3 (D. Kan. Sept. 26, 1995) (granting motion to reopen deposition at deponent's expense). The Government has already relied on Mr. Walsh's recanted testimony in the sealed proceeding in another court.[6] The Government also

[6] *See* Sealed Papers filed June 26, 2007 in this court by ACMI.

relied on Mr. Walsh's recanted testimony in its Reply in Support of its Summary Judgment Motion on Damages. *See* Reply to Mot. for Summary Judgment on Damages, at 2-3, 17-18. Permitting the Government to rely in multiple jurisdictions on Mr. Walsh's statement in direct contradiction to his deposition testimony regarding an issue critical to summary judgment on damages would be tantamount to an abuse of discretion.

### 3. **<u>Rule 56(f) is Inapplicable.</u>**

The Government should not be permitted to convert Mr. Walsh's recanted testimony into a Rule 56(f) motion. Under the applicable caselaw pertaining to reopening depositions where a witness recants testimony, ACMI would be just as entitled to reopen Mr. Walsh's deposition if a summary judgment motion was not pending as it is entitled to do so now. *See* discussion of case law *supra*, at 13-14. Moreover, Mr. Walsh is a fact witness regarding the alleged fraud, and the Government requested and the Court has ruled that it is preserving the Government's Ninth Counterclaim based on the Contract Disputes Act. *See* 06/29/07 Memorandum Opinion and Order at 4 (Exh. 10); 06/22/07 Status Hearing Tr. at 6:19-7:9 (Exh. 11). Thus, Mr. Walsh's credibility and document retention is relevant to ongoing issues in the case.

Further, Rule 56(f) is not applicable because discovery is still open in this case, particularly with respect to discovery relating to Mr. Walsh. *See* 02/08/07 Status Hearing at 40:25-41:16. ACMI therefore does not need to submit a motion or affidavit under Rule 56(f) in order to continue Mr. Walsh's deposition based on his recanting of testimony.

## C. **<u>The Government's Four Documents Relating to Preservation Instructions in this Case are not Protected by the Attorney-Client Privilege or Work Product Doctrine and should be Produced.</u>**

While conceding for the first time that yet another key Government employee with knowledge of the facts in this case has destroyed relevant documents, the Government has refused to produce any documents relating to this case that pertain to instructions to preserve,

retain and not destroy relevant documents. (Resp. to Req. for Prod. At 2-4, 5-6). ACMI made two requests for production that related specifically to preservation instructions – if any – issued for documents relating to this case:

- Any and all documents relating to notification and instructions to preserve, retain, or cease destruction of documents relating to this litigation, including but not limited to document retention notices, freeze notices, and hold orders. (Req. for Prod. No. 1)

- Any and all communications with John Walsh relating to notification and instructions to preserve, retain, or cease destruction of documents relating to this litigation. (Req. for Prod. No. 3)

In response to Request No. 1, the Government refers to a privilege log and for the first time in the six years since the destruction occurred concedes that another key witness has destroyed documents. (Resp. to Req. for Prd. At 2-4). The Government states that Karen Poole, the former GSA Contracting Officer "kept such e-mails in a subfolder in her computer archives that was entitled 'Litigation.' However, those e-mails themselves, and the entire subfolder in which they had been placed were deleted from her computer archives in error." *Id*. at 3. The Government further states that Ms. Poole purposefully deleted another subfolder with the same name, and "[t]he program then in use by the GSA automatically, and without Ms. Poole's knowledge, deleted her archive subfolder that contained the e-mails responsive to this request." *Id*. The Government does not provide enough detail to ascertain how one folder could have been automatically deleted after the purposeful deletion of another folder simply because both folders were entitled "Litigation." The Government reveals that "[a]s best we can determine, the deletion of Ms. Poole's e-mails regarding instructions to preserve, maintain, and not destroy documents occurred sometime prior to April 2001." *Id*. at 3-4.

Certainly the Government, including Ms. Poole, should have been operating under a litigation hold or document preservation instructions prior to April 2001 when those documents were destroyed. ACMI filed its first actions regarding the Phase I contract in the GSBCA

against the Government in 1995, sued again in 1997 regarding the Phase I contract and 1998 regarding the Phase II contract, and litigation continued when the Government filed its action against ACMI in St. Louis in June 1999 regarding the Phase II contract. Yet, the privilege log submitted by the Government is unclear. The only certain evidence of document preservation instruction being sent to Ms. Poole is an e-mail sent to her from Ms. Kirchner on January 30, 2007.[7] This apparent 12-year delay in sending instructions to preserve documents is a serious violation of the Federal Rules. The apparently rampant document destruction occurring at the GSA is quite shocking and should not be tolerated by this Court.

The Government's objection on the basis of attorney-client privilege to production in response to both requests for instructions for preservation and retention of documents relating to this case is unsubstantiated. Numerous courts have held that document retention policies are not privileged. *See, e.g. United States Fire Ins. Co. v. Bunge North America, Inc.*, No. 05-2192-JWL, 2007 WL 2103353, at *7 (D. Kan. July 23, 2007) (ordering production of document retention policies in accordance with magistrate judge's order); *In re Asousa P'ship*, No. 1-12295DWS, 2005 Bankr. LEXIS 2373, at *11-12 (E.D. Pa. Nov. 17, 2005) (holding that corporate counsel's memo to employee outlining firm's document retention policy for pending litigation was routine and was not subject to the attorney-client privilege or the work product doctrine); *Doe v. District of Columbia*, 230 F.R.D. 47, 55-56 (D.D.C. 2005) (granting plaintiff's request for depositions regarding the District's document retention policies and procedures in the

[7] The privilege log also refers to a July 10, 2000 e-mail from Jeff Stacy to Ms. Poole and others "re GSA Documents." Exh. 9. The truncated description of the e-mail content does not make clear whether this e-mail also contains preservation instructions. Yet even if it did this e-mail establishes that the Government failed to issue preservation instructions for at least four years after commencement of litigation in the GSBCA and at least one year after the Government commenced its own litigation against Morse Diesel.

case and did not violate the deliberative process and attorney-client privileges); *Nike, Inc. v. Brandmania.com, Inc.*, No. 00-5148, 2002 U.S. Dist. LEXIS 20355, at *32 (E.D. Pa. Oct. 3, 2002) (stating that "[d]ocument retention policies have been held discoverable in other cases."); *Muhl v. Tiber Holding Corp.*, No. 95-5284, 1997 U.S. Dist. LEXIS 217, at *7-8 (E.D. Pa. Jan. 9. 1997) (ordering defendant to produce written description of document retention policy, if one existed); *In re "Agent Orange" Product Liab. Litig.*, 98 F.R.D. 558, 559 (E.D.N.Y. 1983) (approving order directing additional depositions regarding company's document retention policies surrounding "what at best can be described as an ill-timed destruction of documents" and noting that the order is consistent with liberal discovery rules)

The Government's privilege log lists four documents appearing to be communications regarding the preservation of documents to individuals involved in this case. (*See* Privilege Log). One of those documents is a July 10, 2000 e-mail that was sent to Mr. Walsh and is therefore particularly relevant to the issues before this Court. *Id*. All of the communications on the Government's privilege log should be produced to ACMI because they are not privileged materials.

## III. CONCLUSION

For all of the foregoing reasons, ACMI respectfully requests that the Court compel the reopening of Mr. Walsh's deposition, or, in the alternative, grant ACMI leave to reopen his deposition. ACMI also requests the Court compel the Government to produce the four documents on its privilege log and any other responsive documents in response to ACMI's Request for Production of Documents Numbers 1 and 3. ACMI further requests that this Court grant ACMI an award of the attorneys' fees and costs required to bring this motion pursuant to RCFC 37 and the attorneys' fees and costs required to continue Mr. Walsh's deposition.

Respectfully submitted,

s/ James D. Wareham

JAMES D. WAREHAM
Paul, Hastings, Janofsky & Walker LLP
875 Fifteenth Street, N.W.
Washington, D.C. 20005
Tel: 202-551-1728
Fax: 202-551-0128
Attorney of Record for Plaintiff

Of Counsel:
Kirby D. Behre
Danielle W. Pierce
Paul, Hastings, Janofsky & Walker LLP
875 Fifteenth Street, N.W.
Washington, D.C. 20005

August 6, 2007

LEGAL_US_E # 75837162.5