# EXHIBIT 10

# In the United States Court of Federal Claims

No. 99-279C
(With Which Nos. 99-529C, 99-530C, 00-531C, 03-1537C, 05-804C, 06-173C, 06-174C, 06-175C, 06-176C, 06-177C, 06-178C, 06-179C, 06-180C, and 06-181C Are Consolidated)
Filed June 29, 2007
**NOT FOR PUBLICATION**

*******************************************

MORSE DIESEL INTERNATIONAL, INC.,
d/b/a AMEC CONSTRUCTION
MANAGEMENT, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

*******************************************

**MEMORANDUM OPINION AND ORDER**

**BRADEN, *Judge*.**

## I. RELEVANT FACTS AND PROCEDURAL HISTORY.[1]

[1] The facts of this case previously were discussed in *Morse Diesel* v. *United States*, 66 Fed. Cl. 788, 789-93 (2005) ("*Morse Diesel I*"); *Morse Diesel Int'l, Inc.* v. *United States*, 74 Fed. Cl. 601, 604-19 (2007) ("*Morse Diesel II*"). Additional facts cited herein were derived from: Defendant ("the Government")'s May 8, 2003 Appendix - Volumes 1-3 ("A1-1047"); Plaintiff's August 29, 2003 Appendix - Volumes 4-6 ("A1048-1950"); the Government's February 7, 2007, Motion for Reconsideration ("Gov't Mot. I"); the Government's February 8, 2007 Motion for Clarification/Reconsideration ("Gov't Mot. II"); the Government's February 8, 2007 Motion for Additional Relief ("Gov't Mot. III"); Plaintiff's April 6, 2007 Request for Clarification and Response to the Government's Three Motions ("Pl. Resp."); the Government's April 30, 2007 Motion for Additional Relief, Response to Plaintiff's Request for Clarification, and Reply to the three motions filed on February 7 and 8, 2007 (Gov't Mot. IV") and Supplemental Appendix thereto ("Supp. App."); Plaintiff's May 14, 2007 Response in Support of its April 6, 2007 Motion for Clarification ("Pl. Resp. II"); and the Government's May 24, 2007 Reply in Support of the April 30, 2007 Motion for Additional Relief ("Gov't Reply").

On January 26, 2007, the court issued a Memorandum Opinion And Order Regarding Counterclaims ("January 2007 Opinion") holding that the Government is entitled to summary judgment, as a matter of law, on counterclaims asserted under: the Anti-Kickback Act of 1986, 41 U.S.C. §§ 51-58, and the False Claims Act, 31 U.S.C. § 3729(a)(1), (a)(2). *See Morse Diesel II*, 74 Fed. Cl. at 622-25. The court also held that Plaintiff violated the Forfeiture of Fraudulent Claims Act, 28 U.S.C. § 2514, and thereby forfeited claims asserted in this case, as consolidated, in the amount of $53,534,679.16. *Id.* at 625-36.

On February 7, 2007, the Government filed a Motion for Reconsideration of the January 2007 Opinion. On February 8, 2007, the Government filed: a Motion for Clarification/Reconsideration of the January 2007 Opinion; and a Motion for Additional Relief. On February 8, 2007, the court convened a teleconference and set a briefing schedule for resolution of the Government's motions.

On April 6, 2007, Plaintiff filed a Request for Clarification and a Response to the Government's motions filed on February 7 and 8, 2007. On April 30, 2007, the Government filed a Motion for Additional Relief and a Response to Plaintiff's Request for Clarification and a Reply in support of the three motions filed on February 7 and 8, 2007. On May 14, 2007, Plaintiff filed a Response to the Government's Fourth Motion for Additional Relief and a Reply in support of the April 6, 2007 Motion for Clarification. On May 24, 2007, the Government filed a Reply in support of its April 30, 2007 Motion for Additional Relief.

## II. DISCUSSION.

### A. Standard For Reconsideration.

United States Court of Federal Claims Rule ("RCFC") 59 provides that "reconsideration may be granted . . . for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." RCFC 59(a)(1). The decision to grant a motion for reconsideration is within the court's discretion. *See Yuba Natural Res., Inc.* v. *United States,* 904 F.2d 1577, 1583 (Fed. Cir. 1990) (holding that "the decision whether to grant reconsideration lies largely within the discretion of the [trial] court"). To prevail, however, the moving party must identify a manifest error of law or mistake of fact. *See Coconut Grove Entm't, Inc.* v. *United States,* 46 Fed. Cl. 249, 255 (2000) (holding that a movant must "point to a manifest error of law or mistake of fact" (citation omitted)).

### B. The Court's Resolution Of Outstanding Motions.

#### 1. The Government's February 7, 2007 Motion For Reconsideration.

The Government has requested reconsideration of the ruling in the January 2007 Opinion that the court did not have jurisdiction to adjudicate the Fifth and Ninth Counterclaims, because they were never submitted to the contracting officer ("CO") for a final decision. *See* Gov't Mot. I; *see*

*also Morse Diesel II*, 74 Fed. Cl. at 635-36. With respect to the Fifth Counterclaim for breach of contract, the court instructed the Government to "advise the court . . . whether it wishes voluntarily to dismiss the Fifth . . . Counterclaim[] or stay proceedings thereunder to afford the Government to obtain an initial decision from the relevant contracting officer." *Id.*

The Government has requested that the court reconsider this ruling, because the counterclaim for breach of contract is based on Plaintiff's fraudulent actions. *See* Gov't Mot. IV at 24 (stating that the basis for this breach of contract counterclaim is "the same frauds that supported the alleged violations of the False Claims Act, the Anti-Kickback Act, and the . . . forfeiture of fraudulent claims pursuant to 28 U.S.C. § 2514"). Because the breach of contract counterclaim is based on fraud, the Government contends that "the Fifth Counterclaim is not subject to the dispute resolution process of [41 U.S.C. §] 605 and is not a proper subject of a contracting officer's decision." *Id.* at 25. Plaintiff responds that the court's decision to dismiss the Fifth Counterclaim for lack of jurisdiction "was correct, and should not be modified or reversed." Pl. Resp. at 4.

The court ruled that it did not have jurisdiction to adjudicate the Fifth Counterclaim, because that claim arose from a breach of a contractual duty, thus requiring the Government to submit any claim to the CO before seeking relief in this court. *See Morse Diesel II*, 74 Fed. Cl. at 635-36 (citing 41 U.S.C. § 605(a); *see also Joseph Morton Co.* v. *United States*, 757 F. 2d 1273, 1280-81 (Fed. Cir. 1985) (holding that the Government's counterclaims must first be raised before a contracting officer)). Assuming, *arguendo*, that the Government's argument is correct and the court has jurisdiction, because the counterclaim is based on Plaintiff's fraudulent behavior, to allow the Government to proceed with another claim based upon the exact same fraudulent conduct that constituted the basis the court's holding regarding the First, Second, Sixth and Seventh Counterclaims is duplicative and a waste of judicial resources. Because the Government failed to identify a manifest error of law, the court denies the Government's request to reconsider the jurisdictional ruling with respect to the Fifth Counterclaim. *See* RCFC 59(a); *see also Coconut Grove Entm't*, 46 Fed. Cl. at 255 (holding that in order to prevail on a motion for reconsideration, a movant must "point to a manifest error of law or mistake of fact").

The court's reference to the Ninth Counterclaim in the January 2007 Opinion was a typographical error; and the Ninth Counterclaim remains for adjudication . See RCFC 60(a)[2]; *see also Morse Diesel II*, 74 Fed. Cl. at 636.

**2. The Government's February 8, 2007 Motion For Clarification And/Or Reconsideration.**

The Government's February 8, 2007 Motion for Clarification And/Or Reconsideration requests that the court reconsider or clarify five factual statements in the January 2007 Opinion. *See* Gov't Mot. II at 1-10. Plaintiff does not object to these proposed clarifications. *See* Pl. Resp. at 4-5.

**a. The AMEC Holdings, Inc. Indemnity.**

The January 2007 Opinion contains two sentences for which the Government seeks clarification, pursuant to RCFC 60(a). First, in describing the relationship between AMEC Holdings, Inc. ("AMEC") and Plaintiff, as well as the indemnity provided by AMEC, the court stated that "AMEC, p.l.c.'s indemnification, however, was provided at a cost[.]" *Morse Diesel II*, 74 Fed. Cl. at 607. In fact, AMEC's indemnity did not cost Plaintiff anything. *Id.* at 609 ("Plaintiff also billed [GSA] for alleged surety cost to AMEC [AMEC indemnity]. No payments to AMEC were made[.]"). Accordingly, this sentence should be worded to read: "AMEC, p.l.c.'s indemnification appeared to be provided at a cost."

The second sentence concerns the Phase I contract for the St. Louis Federal Courthouse. *See* Gov't Mot. II at 2. With respect to the AMEC indemnity charged on that bond, the court stated: "In fact, Plaintiff paid AMEC Holdings, Inc. for this bond." *Morse Diesel II*, 74 Fed. Cl. at 611. This statement, however, is inconsistent with the rest of the court's assessment of the evidence with respect to the AMEC Indemnity on the bond for the St. Louis Courthouse Phase II contract. *Id.* at 609-12. Therefore, this sentence should be corrected, as follows: "In fact, Plaintiff did not pay AMEC Holdings, Inc. for this bond."

---

[2] RCFC 60(a) provides:

> Clerical Mistakes. Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

RCFC 60(a).

**b. Sacramento Contract.**

With respect to the Sacramento Courthouse contract, the court stated:

> On July 20, 1995, Willis Carroon marked an invoice regarding the Sacramento Courthouse as paid and forwarded the invoice to Plaintiff's Director of Risk Management.

*Morse Diesel II*, 74 Fed. Cl. at 615. This sentence is incorrect and should be omitted from the opinion. *See* A1007 (O'Brien Dep. at 85) (O'Brien testifying that he did not believe that he was asked to stamp the bond invoice for the Sacramento Courthouse project as "Paid" ).

**c. Government Services Administration Investigation.**

With respect to an investigation conducted by the United States Government Services Administration ("GSA")'s Office of Inspector General ("OIG"), the January 2007 Opinion stated that: "On March 17, 1995, a GSA auditor filed a report concluding that Plaintiff falsified bond costs." *Id.* at 619 n.15. In fact, the March 17, 1995 report was not authored by a GSA auditor, but by Special Agent Steven Anderson, a GSA OIG investigator. *See* A142, A1890. Accordingly, this sentence should be corrected as follows: "On March 17, 1995, a GSA OIG investigator filed a report concluding that Plaintiff falsified bond costs."

**d. Payment Applications.**

The Government also requests that the court correct certain dates regarding Plaintiff's GSA payment applications. *See* Gov't Mot. II. at 9. The January 2007 Opinion stated that "On August 16, 1994, May 21, 1995, September 21, 1995, and November 28, 1995, Plaintiff presented GSA with Progress Payment Applications seeking reimbursement for Performance and Payment Bonds." *Morse Diesel II*, 74 Fed. Cl. at 625. This should be corrected, as follows:

> On the following dates, Plaintiff presented GSA with Progress Payment Applications seeking reimbursement for Performance and Payment Bonds:
>
> 1. St. Louis Phase I, Initial Payment Application No. 1: dated August 16, 1994, received August 17, 1994. *See* A271, A298.
>
> 2. St. Louis Phase I, Revised Payment Application No. 1: dated August 23, 1994. *See* A272, A294-374.
>
> 3. St. Louis Phase I, Payment Application No. 2: dated September 12,1995, received September 14, 1995. *See* A273, A323-41.

4. San Francisco, Payment Application No. 1: dated April 25,1995, received May 1, 1995. *See* A126, A537-40.

5. Sacramento, Payment Application No. 1: dated September 21,1995, received September 22, 1995. *See* A148-56, A242-49.

6. St. Louis Phase II, Payment Application No. 1: dated November 28,1995, received November 29, 1995. *See* A110, A374-80.

**e. Letter From Norman Critchlow.**

In the January 2007 Opinion, the court addressed a September 5, 1995 letter written by Mr. Norman Critchlow, a senior executive atAMEC, in the section discussing the St. Louis Phase II contract, Part I.C.2.a.ii.:

> On September 5, 1995, Mr. Critchlow, a senior executive at AMEX [sic] Holdings, sent a letter to Plaintiff's Vice President and Territory Manager requesting that remittance be made to AMEC for the "indemnity amount of $569,771." *See* A871 (Cooney Dep. at 124); *see also* A1456-57 (Ford. Dep.). That letter also requested a payment be made to "Seaboard Surety/Saint Paul American Home $517,491." A871 (Cooney Dep. at 124).

*Morse Diesel II*, 74 Fed. Cl. at 612.

Mr. Critchlow's September 5, 1995 letter, however, concerned the Sacramento Courthouse and Federal Building, not the St. Louis Phase II contract. *See* A871 (Cooney Dep. at 124). Accordingly, this text should be deleted from the section of the January 2007 Opinion about the St. Louis Phase II contract and inserted into the discussion of the Sacramento contract in Part I.C.2.c. of the January 2007 Opinion. *See Morse Diesel II*, 74 Fed. Cl at 615-18 (discussing the Sacramento Courthouse and Federal Building contract).

**3. The Government's February 8, 2007 And April 30, 2007 Motions For Additional Relief.**

On February 8, 2007, the Government filed a Motion for Additional Relief requesting that the court enter a judgment of forfeiture with respect to a claim concerning the San Francisco Customs House contract, certified by Plaintiff, but not ruled on by the relevant CO. *See* Gov't Mot. III at 1; *see also* Gov't Mot. IV at 19. In the January 2007 Opinion, the court held that Plaintiff's claims with respect to the St. Louis Phase I, St. Louis Phase II, and the Sacramento contracts were forfeited, because the Government established by clear and convincing evidence that Plaintiff engaged in fraudulent behavior with respect to those contracts. *See Morse Diesel II*, 74 Fed. Cl. at 626-35; *see also* Gov't Mot. IV at 19. The Government argues that Plaintiff's claim concerning the San Francisco Customs House contract also should be forfeited for the same reasons. *Id.*

Plaintiff responds that the court does not have jurisdiction over the $1,396,150.00 claim concerning the San Francisco Customs House contract, because that claim is still pending before the CO. *See* Pl. Resp. at 5. In addition, Plaintiff states that it has a claim arising under the St. Louis Phase II contract, in the amount of $22,279,529.00, that is also pending before the relevant CO. Since both claims are currently pending before the COs, Plaintiff argues they should be treated in the same manner. *Id.* The Government agrees and asks the court to enter a judgment declaring that both claims are forfeited. Gov't Mot. IV at 19-20.

Plaintiff's pending claims relating to the San Francisco and the St. Louis Phase II contracts are not currently before the court.

**4. Plaintiff's April 6, 2007 Motion For Clarification.**

**a. The Court Has Ruled Against Plaintiff That The Government Waived Its Right To Forfeiture.**

In the January 2007 Opinion, the court ruled in favor of the Government on the Sixth Counterclaim and held that Plaintiff forfeited claims, pursuant to the Forfeiture of Fraudulent Claims Act, 28 U.S.C. § 2514, in case numbers 99-279C, 99-529C, 99-530C, 00-531C, 03-1537C, 05-804C, 06-173C, 06-174C, 06-175C, 06-176C, 06-177C, 06-178C, 06-179C, 06-180C, and 06-181C. *See Morse Diesel II*, 74 Fed. Cl. at 626-35. One of the arguments raised by Plaintiff with respect to this issue was that the Government waived its right to forfeiture of these claims by having Plaintiff continue performance of the contracts after the Government became aware of fraudulent behavior. *Id.* at 626. In an April 6, 2007 Motion for Clarification, Plaintiff requests clarification of Plaintiff's understanding that in not expressly addressing Plaintiff's waiver argument in the January 2007 Opinion, the court intends to wait for a later stage of the litigation to address this issue. Pl. Resp. at 2.

In ruling in favor of the Government on the Sixth Counterclaim, the court considered Plaintiff's waiver argument and rejected it. As the court stated:

> The use of the word "shall" [in 28 U.S.C. § 2514] makes the judgment of forfeiture obligatory on the court; the court has no discretion to turn a blind eye to an attempt, whether successful or not, to commit fraud in the statement of a claim against the United States. Therefore, once the court has found fraud sufficient to satisfy § 2514, the court must enter a judgment of forfeiture.

*Morse Diesel II*, 74 Fed. Cl. at 635 (quoting *America Heritage Bancorp.* v. *United States*, 61 Fed. Cl. 376, 385 (2004)). Once the court determined that Plaintiff had committed fraud with respect to each contract at issue, the unambiguous language of 28 U.S.C. § 2514 required the court to declare that Plaintiff's claims were forfeited. Furthermore, the court's decision not to expressly address Plaintiff's waiver argument in no way implies that the court failed to fully consider the merits of that argument. *See Hartman* v. *Nicholson*, 483 F.3d 1311, 1315 (Fed. Cir. 2007) ("'That the court did

not specifically mention [an argument] in its opinion forms no basis for an assumption that it did not consider [it]. . . . That a court 'do[es] not discuss certain propositions do[es] not make the decision inadequate or suggest the . . . court failed to understand them.'" (quoting *Perkin-Elmer Corp.* v. *Computervision Corp.*, 732 F.2d 888, 901 (Fed. Cir.1984)); *see also* *Schilling* v. *Schwitzer-Cummins Co.* 142 F.2d 82, 84 (D.C. Cir.1944) ("The Bar - other than counsel who participate in each particular case - complains, only too frequently, of the length of decisions in appellate courts, which results from judicial efforts to reflect consideration of contentions made by both parties. Certainly, we should not require or encourage trial judges, in preparing findings, to assert the negative of each rejected contention as well as the affirmative of those which they find to be correct."). Accordingly, Plaintiff's understanding is incorrect; Plaintiff's waiver argument is no longer pending before the court.

**b. Amount Of Forfeitures.**

Plaintiff also seeks to correct certain claim amounts held to have been forfeited by Plaintiff in case numbers 06-178C and 06-179C. *See* Pl. Resp. at 6; Pl. Resp. II at 4. The Government also seeks corrections. *See* Gov't Mot. IV at 8-19.

The court has reviewed the relevant documentation and determined that Plaintiff has forfeited claims in the following amounts, totaling $54,314,299.16:

| Claim | Amount | Note |
| --- | --- | --- |
| 99-279 | $467,659.00 | May 5, 1999 Compl. (99-279C) ¶ 20-21 ("On April 9, 1998, MDI submitted a properly certified claim for $467,659."). The court notes that it is unclear from the Complaint whether Plaintiff is seeking $467,659 or double this amount in damages. Because Plaintiff submitted a certified claim to the CO for $467,659, the court considers this the amount to be forfeited under this claim. |
| 99-530 | $189,527.00 | Amount of claim uncontested. |
| 00-531 | $1,257,279.00 | Compl. (00-531C) ¶ 10 ("On May 4, 1999 MDI submitted a properly certified claim for $1,257,279."); Prayer. |
| 05-804 | $28,000,000.00 | Amount of claim uncontested. |
| 06-173 | $91,700.00 | Amount of claim uncontested, but the Government contests inclusion on grounds of overlap. |
| 06-174 | $417,676.00 | Amount of claim uncontested, but the Government contests inclusion on grounds of overlap. |
| 06-175 | $112,244.00 | Amount of claim uncontested, but the Government contests inclusion on grounds of overlap. |
| 06-176 | $13,329,355.16 | Amount of claim uncontested, but the Government contests inclusion on grounds of overlap. |
| 06-177 | $50,000.00 | Amount of claim uncontested. |
| 06-178 | $81,611.00 | Typo in January 2007 Opinion ($86,611.00); Uncontested. |
| 06-179 | $10,288,889.00 | Typo in January 2007 Opinion ($10,289,889.00); Amount of claim uncontested, but the Government contests inclusion on grounds of overlap. |
| 06-181 | $28,359.00 | Amount of claim uncontested. |
| **Total** | **$54,314,299.16** | |

Pursuant to RCFC 60(a), the January 2007 Opinion is revised to reflect these amounts.

With respect to the Government's contention that the court should not consider the claims asserted in case numbers 06-173C, 06-174C, 06-175C, and 06-179C to be forfeited, because they are duplicative of Plaintiff's claims in case number 06-176C, the court has decided that attempting to further parse Plaintiff's claims to determine the exact amount of any overlap among these claims is unnecessary. Such specificity would be necessary if the court were entering a monetary judgment

for each claim. The January 2007 Opinion, however, held that Plaintiff committed fraud with respect to the contracts underlying these claims and, as a matter of law, Plaintiff is required to forfeit each of these claims. *See Morse Diesel II*, 74 Fed. Cl. at 626-35; *see also* 28 U.S.C. § 2514. The court's ruling prohibits Plaintiff from pursuing those claims. Because the Government has not identified a manifest error of law or mistake of fact, the court considers that the entire amount of the claims asserted in case numbers 06-173C, 06-174C, 06-175C, and 06-179C to be forfeited. *See Coconut Grove Entm't*, 46 Fed. Cl. at 255.

Finally, the court has determined that the claims at issue in case numbers 06-173C, 06-174C, 06-175C, and 06-176C all arise under the St. Louis Courthouse Phase I contract, *i.e.* Contract No. GS06P-94-GYC0037, instead of the Phase II Contract. *See* Supp. App. at 36, 39, 43, 46-47. Pursuant to RCFC 60(a), the first and the fourth sentences in Parts IV.D.3.c.vii-x of the January 2007 Opinion will revised to clarify that the relevant contract at issue is the St. Louis Courthouse Phase I contract, *i.e.* Contract No. GS06P-94-GYC0037. *See Morse Diesel II*, 74 Fed. Cl. at 630-32.

**c. Plaintiff's Due Process Challenge.**

Finally, Plaintiff also requests clarification of the court's holding that Plaintiff's constitutional challenge under the Due Process Clause to the Government's Forfeiture Counterclaim is not ripe, because the court has not determined the damages due the Government for violations of the Anti-Kickback Act and the Fraudulent Claims Act. *See* Pl. Resp. at 3. Plaintiff's understanding is correct.

## III. CONCLUSION.

For the reasons discussed herein, the court hereby orders that:

the Government's February 7, 2007, Motion for Reconsideration is hereby granted in part and denied in part;

the Government's February 8, 2007 Motion for Clarification/Reconsideration is granted;

the Government's February 8, 2007 Motion for Additional Relief is denied;

Plaintiff's April 6, 2007 Request for Clarification is granted in part and denied in part; and

the Government's April 30, 2007 Motion for Additional Relief is denied.

The court will submit a corrected copy of the January 26, 2007 Memorandum Opinion and Order for publication.

**IT IS SO ORDERED.**

/s/ Susan Braden
**SUSAN G. BRADEN**
**Judge**