# In the United States Court of Federal Claims

No. 99-279C
(With Which Nos. 99-529C, 99-530C, 00-531C, 03-1537C, 05-804C, 06-173C, 06-174C, 06-175C, 06-176C, 06-177C, 06-178C, 06-179C, 06-180C, and 06-181C Are Consolidated)
Filed: October 31, 2007
**TO BE PUBLISHED**

| | |
|---|---|
| MORSE DIESEL INTERNATIONAL, INC., d/b/a AMEC CONSTRUCTION MANAGEMENT, INC., Plaintiff, | Anti-Kickback Act of 1986, 41 U.S.C. §§ 51-58; Contract Disputes Act, 41 U.S.C § 609(a); Debt Collection Improvement Act, Pub. Law 104-134 (1999); Due Process Clause, U.S. CONST. amend. V.; Excessive Fines Clause, U.S. CONST. amend. VIII.; False Claims Act, 31 U.S.C. § 3729(a)(1), (a)(2); Partial Summary Judgment, RCFC 56(b), (c); Tucker Act, 28 U.S.C. § 1491. |
| v. | |
| THE UNITED STATES, Defendant. | |

**James D. Wareham**, Paul, Hastings, Janofsky & Walker LLP, Washington, D.C., counsel for Plaintiff.[*]

**Domenique Grace Kirchner**, United States Department of Justice, Washington, D.C., counsel for Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT FOR CIVIL PENALTIES UNDER THE ANTI-KICKBACK ACT AND CIVIL PENALTIES AND TREBLE DAMAGES UNDER THE FALSE CLAIMS ACT.**

---

[*] On November 7, 2005, Paul, Hastings, Janofsky & Walker, LLP, was substituted as counsel for Plaintiff. The record in this case primarily was made by prior counsel: Pecar & Abramson, PC; McManus, Schor, Asmar & Darden, LLP; Arent Fox, PLLC; and Greensfelder, Hemker & Gale.

The court has determined that the circumstances of this case warrant maximum civil penalties and damages under the Anti-Kickback Act of 1986, 41 U.S.C. §§ 51-58 ("Anti-Kickback Act") and maximum civil penalties and treble damages under the False Claims Act, 31 U.S.C. § 3729(a)(1), (a)(2) ("False Claims Act") in the total amount of $7,292,213.

## I. RELEVANT BACKGROUND AND PROCEDURAL HISTORY.[1]

Between 1994 and 1995, Morse Diesel International, Inc., d/b/a AMEC Construction Management, Inc. ("Plaintiff"),[2] was awarded four federal construction contracts by the General Services Administration ("GSA"): Phase I of the Thomas F. Eagleton Federal Courthouse in St. Louis ("St. Louis Phase I Contract"), on July 5, 1994; Phase II of the Eagleton Courthouse in St. Louis, on September 28, 1995 ("St. Louis Phase II Contract"); the U.S. Customs House in San Francisco, on February 15, 1995 ("San Francisco Contract"); and the Federal Courthouse in Sacramento, on July 19, 1995 ("Sacramento Contract"). *See Morse Diesel I,* 66 Fed. Cl. at 792; *Morse Diesel II*, 69 Fed. Cl. at 559-60; *Morse Diesel III*, 74 Fed. Cl. at 605-7. On April 9, 1998, Plaintiff submitted a certified claim to GSA in the amount of $467,659 arising from the St. Louis Phase II Contract. *See Morse Diesel I*, 66 Fed. Cl. at 791. On May 12, 1998, GSA issued a Final Decision denying Plaintiff's claim. *Id*. On May 5, 1999, Plaintiff filed a Complaint in the United States Court of Federal Claims, the genesis of a consolidated case, now consisting of 15 actions initiated by Plaintiff under the Tucker Act, 28 U.S.C. § 1491 ("Tucker Act") and the Contracts Disputes Act, 41 U.S.C. § 609(a) ("Contract Disputes Act"), and 9 counterclaims asserted by the Government under the Anti-Kickback Act, the False Claims Act, the Contract Disputes Act, 41 U.S.C.§§ 601-613, and Forfeiture of Fraud Claims Act, 28 U.S.C. § 2514 ("Forfeiture of Fraud Claims Act"), as well as common law claims. *See Morse Diesel II*, 69 Fed. Cl. at 560-62; *Morse Diesel III*, 74 Fed. Cl. at 602-04.

---

[1] The court incorporates herein the July 15, 2005 Memorandum Opinion in *Morse Diesel Int'l, Inc.* v. *United States*, 66 Fed. Cl. 788 (2005) ("*Morse Diesel I*"), the February 1, 2006 Memorandum Opinion in *Morse Diesel Int'l, Inc*. v. *United States*, 69 Fed. Cl. 558 (2006) (*Morse Diesel II*), and the January 26, 2007 Memorandum Opinion in *Morse Diesel Int'l, Inc.* v. *United States*, 74 Fed. Cl. 601 (2007) ("*Morse Diesel III*"), as revised. *See Morse Diesel Int'l, Inc.* v. *United States*, No. 99-279C, slip. op. (Fed. Cl. June 29, 2007) ("*Morse Diesel IV*").

[2] Morse Diesel International, Inc., d/b/a AMEC Construction Management, Inc. has been incorporated and/or conducted business and/or invoked the jurisdiction of several federal forums under the following names: Morse Diesel, Inc.; Morse Diesel International, Inc., a New York general partnership; Morse Diesel International, Inc., associated with CMR Construction, Inc. (A 298, 769, 1520-21); AMEC Construction Management, Inc. (A122, 842); and Huber, T.D.S., P&D, Morse Diesel Joint Venture (A737-60). Hereinafter, the court will refer to the aforementioned entities as "Plaintiff."

A detailed discussion of Plaintiff's complex and changing corporate structure is found in *Morse Diesel III*, 74 Fed. Cl. at 604-05.

Central to the Government's pending Motion For Summary Judgment on civil penalties under the Anti-Kickback Act and civil penalties and treble damages under the False Claims Act, is the court's July 15, 2005 Memorandum Opinion granting the Government's December 7, 2001 Motion for Partial Summary Judgment, determining that Plaintiff's progress payment application for performance and payment of bond premiums and certificates for all four federal contracts at issue violated the Anti-Kickback Act. *See Morse Diesel I*, 66 Fed. Cl. at 798-801. On January 26, 2007, the court re-affirmed and incorporated *Morse Diesel I* and entered an Order holding that the Government established, by clear and convincing evidence,[3] that from at latest August 19, 1994 until at earliest December 12, 2000, Plaintiff engaged in conduct concerning the St. Louis Phase I Contract, St. Louis Phase II Contract, Sacramento Contract, and San Francisco Contract that violated the Anti-Kickback Act. *See Morse Diesel III*, 74 Fed. Cl. at 622; *see also Morse Diesel I*, 66 Fed. Cl. at 798-801. In addition, the court determined that Plaintiff violated the False Claims Act on six occasions. *See Morse Diesel IV*, slip op. at 32-33.

On February 7, 2007, the Government filed a Motion for Reconsideration of *Morse Diesel III*. The next day, the court convened a telephone status conference and on February 8, 2007 the Government filed a Motion for Additional Relief and a Motion for Clarification and/or a Motion for Reconsideration. On February 9, 2007, the court filed an Order to clarify that there was no stay on discovery. On April 6, 2007, Plaintiff also filed a Motion for Clarification of *Morse Diesel III* and a Response to the Government's February 7, 2007 Motion for Reconsideration and the Government's February 8, 2007 Motions. On April 10, 2007, the court convened a telephone conference and entered a Scheduling Order. On April 30, 2007, the Government filed a Motion for Additional Relief, Response to Plaintiff's April 6, 2006 Motion, and a Reply to the Plaintiff's Response to the Government's February 8, 2007 Motions. On May 14, 2007, Plaintiff filed a Response to the Government's February 8, 2007 Motion for Additional Relief and a Reply in Support of Plaintiff's April 6, 2007 Request for Clarification.

On May 18, 2007, the Government filed a Motion for Summary Judgment for damages, pursuant to the court's January 26, 2007 Memorandum Decision and Order, together with Proposed Findings of Uncontroverted Fact. *See* RCFC 56(b). On May 24, 2007, the Government filed a Reply to Plaintiff's April 6, 2006 Response to the Government's February 8, 2007 Motion for Additional Relief. On June 15, 2007, Plaintiff filed an Opposition to the Government's Motion for Summary Judgment and a Response to the Government's Proposed Findings of Uncontroverted Fact. On June 20, 2007, Plaintiff filed a Motion for Leave to File a Document Under Seal. On June 22, 2007, the court held a telephone status conference and issued an Order granting Plaintiff's June 20, 2007 Motion for Leave to File Sealed Documents and a revised Scheduling Order. On June 29, 2007, the court issued a Memorandum Opinion and Order: granting-in-part and denying-in-part the Government's February 7, 2007 Motion for Reconsideration; granting the Government's February 8, 2007 Motion for Clarification and/or Motion for Reconsideration; denying the Government's

---

[3] As discussed further herein, since the Anti-Kickback Act is both remedial and punitive, the court's determination was made under a clear and convincing standard rather than the preponderance of evidence standard typically utilized in civil cases.

February 8, 2007 Motion for Additional Relief; granting-in-part and denying-in-part Plaintiff's April 6, 2007 Request for Clarification; and denying the Government's April 30, 2007 Motion for Additional Relief. *See Morse Diesel Int'l* v. *United States*, No. 99-279C (Fed. Cl. June 29, 2007) (order) and *Morse Diesel IV*, revised to incorporate the court's corrections, clarifications, and additional rulings in the June 29, 2007 Order.

On July 9, 2007, the court convened another telephone status conference. On July 20, 2007 the Government filed a Reply to the May 18, 2007 Motion for Summary Judgment, together with a Separate Appendix For A Protective Order Regarding Plaintiff's Notice of Deposition of a GSA auditor, Mr. John Walsh. On August 6, 2007, Plaintiff filed: a Motion to Compel; Continuation of Deposition of Mr. John Walsh; Production of Documents; and a Memorandum in Support.

On August 10, 2007, the court issued an Order Denying Government's July 20, 2007 Motion for Protective Order and granting-in-part Plaintiff's August 6, 2007 Motion to Compel, but deferring ruling on Plaintiff's Motion to Compel, which the court now denies as moot. *See Morse Diesel Int'l* v. *United States*, No. 99-279C (Fed. Cl. Aug. 10, 2007) (order). On August 10, 2007, the Government also provided the court with certain privileged documents for *in camera* review. On August 13, 2007, the court convened a telephone conference and determined that the Government properly asserted that these documents were privileged. *See* 8/13/07 TR at 9-10.[4]

## II. DISCUSSION.

### A. Jurisdiction.

The court has determined that Plaintiff properly alleged jurisdiction under the Tucker Act and the Contract Disputes Act. *See Morse Diesel I*, 66 Fed. Cl. at 797; *Morse Diesel II*, 69 Fed. Cl. at 562-63; *Morse Diesel III*, 74 Fed. Cl. at 620-21. In addition, the court has determined that the Government's May 10, 2001 First Amended Counterclaim and all subsequent Amended Counterclaims also properly invoked the court's jurisdiction to adjudicate counterclaims under: the False Claims Act; the Forfeiture of Fraud Claims Act; the Anti-Kickback Act; and the Contract Disputes Act. *See Morse Diesel III*, 74 Fed. Cl. at 620-21; *see also* Fourth Am. Counterclaims ¶ 3 at 2.

### B. Standing.

As parties to the aforementioned St. Louis Phase I Contract, the St. Louis Phase II Contract, San Francisco Contract, and Sacramento Contract, Plaintiff and the Government have standing to bring an action or counterclaim arising thereunder, pursuant to the Tucker Act or the Contract

---

[4] The court has not relied on any of the 12 documents indexed in the August 9, 2007 Privilege Log in issuing this Memorandum Opinion and Order. Not only are these documents privileged, they are irrelevant.

Disputes Act. *See Morse Diesel I*, 66 Fed. Cl. at 797; *Morse Diesel II*, 69 Fed. Cl. at 563; *Morse Diesel III*, 74 Fed. Cl. at 621-22.

**C. Civil Penalties Due Under the Anti-Kickback Act And Civil Penalties And Treble Damages Due Under The False Claims Act In This Case Are Ripe For Adjudication On Partial Summary Judgment.**

On a motion for summary judgment, if there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law. *See Moden* v. *United States*, 404 F.3d 1335, 1342 (Fed. Cir. 2005) ("Summary judgment is only appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."); *see also* RCFC 56(c).

Only genuine disputes of material facts that might affect the outcome of the suit will preclude entry of summary judgment. *See Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. . . . That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."). The existence of "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Id.* Therefore, to avoid summary judgment, the nonmoving party must put forth evidence sufficient for a reasonable factfinder to return a verdict for that party. *Id.* at 248-50 (citations omitted).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp.* v. *Catrett*, 477 U.S. 317, 325 (1986) (holding the moving party must meet its burden "by 'showing' – that is pointing out to the [trial court] that there is an absence of evidence to support the nonmoving party's case"); *see also Riley & Ephriam Constr. Co., Inc.* v. *United States*, 408 F.3d 1369, 1371 (Fed. Cir. 2005) ("The moving party bears the burden of demonstrating the absence of a genuine issue of material fact."). Once the moving party demonstrates the absence of a genuine issue of material fact, however, the burden shifts to the nonmoving party to show the existence of a genuine issue for trial. *See Novartis Corp.* v. *Ben Venue Labs.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) (explaining that, once the movant has demonstrated the absence of a genuine issue of material fact, "the burden shifts to the nonmovant to designate specific facts showing that there is a genuine issue for trial.").

A trial court is required to resolve all doubt over factual issues in favor of the nonmoving party. *See Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 587 (1987). Additionally, all reasonable inferences and presumptions must be resolved in favor of the nonmoving party. *See Anderson*, 477 U.S. at 255; *see also Moden*, 404 F.3d at 1342 ("[A]ll justifiable inferences [are drawn] in favor of the party opposing summary judgment.").

Based on the court's determination of liability in *Morse Diesel I* and *Morse Diesel III*, the Government argues that there is no genuine issue of material fact in this case as to the civil penalties and treble damages due and that partial summary judgment is appropriate. *See* Gov't SJD at 3, 7-8.

Plaintiff contends that "genuine issues of material fact remain unresolved." Pl. SJD Op. at 1. Plaintiff, however, has presented no evidence that there is a factual dispute that would preclude a summary judgment award of civil penalties under the Anti-Kickback Act and civil penalties and treble damages under the False Claims Act. *See* Pl. SJD PF ¶¶ 3-24. Significantly, Plaintiff neither has challenged the authenticity of any documents in the record nor the amounts claimed for the fraudulent progress payment applications for performance and payment of bond premiums, certificates, or indemnity payments at issue, nor has Plaintiff pointed to any conflicting evidence that needs to be resolved by the trier of fact. *See* Pl. SJD PF; *see also* Pl. SJD Op. In addition, Plaintiff does not contest the factual accuracy of the Government's Proposed Findings of Uncontroverted Fact. *See* Pl. SJD Op. ¶¶ 3-24. Instead, Plaintiff disputes non-material "factual" errors or argues issues of law. *See, e.g.*, Pl. SJD PF ¶ 1 (disputing the Government's discussion of Plaintiff's corporate history as incomplete); Pl. SJD PF ¶ 3 ("[Plaintiff] respectfully disagrees with some of the findings that this Court has made."); (Pl. SJD PF ¶ 6 ("[*Morse Diesel III*] speaks for itself and should not be restated as a new finding."); Pl. SJD PF ¶ 7 (arguing that civil penalties under each statute should be limited to the time-value of money).

Accordingly, the court has determined that none of these "issues" raise a genuine issue of material fact under RCFC 56(c). *See Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. at 247-48 ("Factual disputes that are irrelevant or unnecessary will not be counted [as material facts precluding entry of a summary judgment.]"); *see also id.* at 249-50 (The existence of "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]").

**D. Anti-Kickback Act Civil Penalties Due In This Case.**

In 1986, the Anti-Kickback Act was amended:

> to enhance the government's ability to prevent and prosecute kickback practices. These practices have become a pervasive problem in Federal procurement. This form of commercial bribery has tremendous impact. Kickbacks directly inflate contract costs paid by the taxpayer. Kickbacks destroy competition and they foster corruption.

H.R. REP. NO. 99-964, at 4 (1986).

Congress authorized criminal sanctions as well as substantially increased civil penalties that would impose "no-fault vicarious liability" on violating contractors, be punitive, and serve as a deterrent:

> The United States may, in *a civil action*, recover a civil penalty from any person who knowingly engages in conduct prohibited by section 53 of this title. The amount of such civil penalty shall be –
>
> (A) twice the amount of each kickback involved in the violation; *and*
>
> (B) not more than $10,000 for each occurrence of prohibited conduct.
>
> (2) The United States may, in a civil action, recover a civil penalty from any person whose employee, subcontractor or subcontractor employee violates section 53 of this title by providing, accepting, or charging a kickback. The amount of such civil penalty shall be the amount of that kickback.

41 U.S.C. § 55(a)(1) (emphasis added); *see also* H.R. REP. NO. 99-964, at 15 (1986).

**1. The Government's Argument.**

The court has determined that the Government is entitled to civil penalties for prohibited activities on four federal contracts under the Anti-Kickback Act. *See Morse Diesel I*, 66 Fed. Cl. at 799-801*; see also Morse Diesel III*, 74 Fed. Cl. at 622. The total amount of kickbacks at issue for these four contracts is $109,728.52. *See* Gov't SJD at 8-9. Therefore, as a matter of law, the Government is entitled to twice the amount of each violation, or $219,457.04, plus $40,000 for each kickback "occurrence." *See* Gov't SJD at 8-9 (citing 41 U.S.C. § 55).

Since these amounts, in part, are also the basis for the False Claims Act civil penalties and treble damages claimed, the court has been advised that the Government does not "seek" the $259,497.04 in civil penalties to which the Government is entitled under the Anti-Kickback Act, if the Government is awarded the full amount of civil penalties and treble damages to which it is entitled under the False Claims Act. *See* Gov't SJD at 9; *see also* A416; A407; A379; A380.

**2. Plaintiff's Response.**

Plaintiff responds that awarding civil penalties under the Anti-Kickback Act and civil penalties and treble damages under the False Claims Act would be "improperly duplicative." *See* Pl. SJD Op. at 13. Plaintiff, however, also does not contest the Government's calculation of civil penalties arguably due under the Anti-Kickback Act. *See* Pl. SJD Op. at 10-11; *see also* Pl. SJD PF ¶¶ 47-62. Instead, Plaintiff challenges the court's substantive rulings in *Morse Diesel I* and *Morse Diesel III* and argues that the Government should only receive the time-value of money, not the full amount of any civil penalties and treble damages. *See* Pl. SJD Op. at 10-11.

### 3. The Court's Resolution.

The court disagrees with the view that imposing civil penalties under the Anti-Kickback Act, and separate civil penalties and treble damages under the False Claims Act for the same acts, is either duplicative or prohibited. First, Congress authorized significantly increased monetary penalties under both acts by amending the Anti-Kickback Act and the False Claims Act in 1986. *See* H.R. REP. No. 99-964, at 14 (1986) (Anti-Kickback Enforcement Act); S. REP. No. 99-435, at 17 (1986) (Anti-Kickback Enforcement Act); H. REP. No 99-660, at 20 (1986) (False Claims Amendment Act); S. REP. No. 99-345, at 4 (False Claims Reform Act of 1985).

The history of the Anti-Kickback Act evidences that Congress intended to use both statutes to compensate the Government fully and deter the same type of conduct at issue in this case:

> In providing for recovery by the government of double the kickback amount and up to $10,000 in civil cases involving a knowing violation of section 3, the bill fixes an amount which reasonably relates to the actual costs the government suffers when kickbacks occur. As has been indicated, kickbacks often end up costing the government more than the amount of the kickback that is passed along through the contract. In addition to increased prices the government may suffer increased costs from the delivery of substandard goods or by poor performance under the contract. Further, the government incurs expenses in investigating and prosecuting kickback cases.
>
> Doubling the kickback payment compensates for these greater costs but keeps the award tied to the size of the kickback itself. In allowing for an *additional award of up to $10,000, the court is given discretion to provide greater recovery when it is due. The additional award can also provide a sufficient deterrent amount when the kickback amount itself is small*. The Committee believes that these amounts are reasonable in light of the serious harm caused the government by kickbacks and the need to prevent such misbehavior.

H.R. REP. NO. 99-964, at 15 (1986) (emphasis added).

To support the proposition that awarding civil penalties under both the Anti-Kickback Act and the False Claims Act is impermissible, including treble damages under the latter, Plaintiff cites *United States* v. *Lippert*, 148 F.3d 974, 976, 978 (8th Cir. 1998) ("*Lippert*") (restating the view of a trial court that "recovery under the Anti-Kickback Act [of double the kickback amount as civil penalties and the $10,000 per occurrence civil penalty] and the False Claims Act would be duplicative"). *See* Pl. SJD Op. at 13. Significantly, in that case, the United States Court of Appeals for the Eight Circuit rejected the defendant's constitutional arguments and only affirmed the imposition of a civil penalty, without further comment. *Id*. at 975 ("[Defendant] appeals, arguing violations of his rights under the Double Jeopardy Clause and the Excessive Fines Clause. Concluding the Double Jeopardy Clause *does not apply to this civil penalty*, and the penalty was not

constitutionally excessive, we affirm.") (emphasis added). Therefore, contrary to Plaintiff's representations, the United States Court of Appeals for the Eighth Circuit did not hold that the imposition of monetary relief under both statutes is duplicative and neither has any other appellate court.

Congress has determined that doubling the amount of kickbacks was intended to compensate the Government for actual costs incurred, including the expense of investigation and prosecution. *See* H.R. REP. No. 99-964, at 15 (1986). In this case, the Government has been engaged in that effort for 13 years and certainly has expended far more than $219,497.04 to date.[5] Therefore, the Government is entitled to recoup that amount as civil penalties. In addition, the purpose of the separate $10,000 per occurrence civil penalty was intended to serve as a deterrent. In light of the fact that Plaintiff engaged in kickback activity on four occasions, on multiple federal contracts, the court has determined the imposition of an additional $40,000 in civil penalties is warranted in this case.

Accordingly, the court has determined that Plaintiff, in this case, is liable to the Government for the maximum statutory civil penalties of $259,457.04 under the Anti-Kickback Act.

---

[5] The threat of apparent criminal sanctions against the company and key executives influenced Plaintiff to enter two criminal *nolo contendre* plea agreements and agree to pay $1,196,422 in criminal fines. *See Morse Diesel III*, 74 Fed. Cl. at 614, 618-19 (citing *United States* v. *Morse Diesel Int'l, Inc.* (4:No.00CR00552) (E.D. Mo. Dec. 12, 2000) (Plea Agreement and Stipulation of Facts stating: "[i]n each exchange for a plea of guilty [to Major Fraud Against the United States, Aiding and Abetting (18 U.S.C. §§ 1031(a) and 2)], the United States Attorney for the Eastern District of Missouri agrees that it will not criminally prosecute within the Eastern District of Missouri this Defendant . . . as a result of the investigation into the Defendant's conduct during the period August 19, 1994 to date [December 12, 2000] related to the Defendant's contracts with the GSA designated [St. Louis Phase I and St. Louis Phase II Contracts]" and to pay a $500,200 fine); *see also Morse Diesel III*, 74 Fed. Cl. at 614-15, 619-20 (citing *United States* v. *AMEC Construction Mgmt., Inc. f/k/a Morse Diesel Int'l Inc.*, CR 501-0502 (LKK) (E.D. Cal. Nov. 20, 2001) (wherein "defendant agreed to plead guilty to one count of Major Fraud Against the United States, 18 U.S.C. §§ 2,1031(a) and to pay a $694,422.40 fine."). Neither plea agreement waived or released Plaintiff from any civil penalties due under the Anti-Kickback Act or civil penalties and treble damages under the False Claims Act with respect to the St. Louis Phase I Contract, St. Louis Phase II Contract, or San Francisco Contract. *See Morse Diesel III*, 74 Fed. Cl. at 619-20. Plaintiff's activities under the Sacramento Contract were not addressed by either of these plea agreements.

**E. False Claims Act Civil Penalties and Treble Damages.**

The False Claims Act provides, in relevant part, that any person who:

> knowingly[[6]] presents . . . a false or fraudulent claim for payment or approval [to the United States Government] . . . is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person[.]

31 U.S.C. § 3729(a)(1).

In addition, the False Claims Act also provides that any person who:

> knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government [also] . . . is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person[.]

31 U.S.C. § 3729(a)(2).[7]

The Government argues that the full amount of civil penalties and treble damages under the False Claims Act is required under governing precedent. *See Young-Montenay, Inc.* v. *United States*, 15 F.3d 1040, 1043 (Fed. Cir. 1994) ("*Young*") (affirming that a $5,000 statutory civil penalty and treble damage award under the False Claims Act was "reasonable"). Therefore, the Government should be awarded $50,000 based on five false claims submitted by Plaintiff. *See* Gov't SJD at 9; *see also Morse Diesel III*, 74 Fed. Cl. at 625.

Plaintiff responds that if the Government is entitled to any monetary relief, it is limited only to the time-value of money and not the full value of the false invoices or any multiple thereof. *See* Pl. SJD Op. at 7. First, Plaintiff reasons that, since the Government ultimately received value from the bonds and eventually would have had to reimburse Plaintiff for the premiums, the time-value of money is the appropriate methodology for making the Government whole. *See* Pl. SJD Op. at 4.

---

[6] "Knowingly" is defined to mean that "a person, with respect to information . . . has actual knowledge of the information[.];" *see also BMY Combat Sys. Div. of Harsco Corp.* v. *United States*, 38 Fed. Cl. 109, 126 (1997) (citing 31 U.S.C. § 3729(b)) (Where plaintiff "knew" of a false claim, specific intent to defraud is not required.).

[7] As of September 29, 1999, the Debt Collection Improvement Act, Pub. L. 104-134, sets penalties for false claims that may be imposed in a range from $5,500 to $11,000. *See* 64 FED. REG. 47099, 47103 (1999). The Government's claims in this action occurred before the effective date of this regulation and therefore may be imposed in a range from $5,000 to $10,000.

Second, Plaintiff argues that, because internal GSA documents show that at one point agency staff considered the time-value of money to estimate damages due, the Government should be bound by that internal work product. *See* Pl. SJD Op. at 4 (citing Pl. SJD Op. Ex. 4 (2002 Damages Report); Pl. SJD Op. Ex. 5 (1999 Anderson Report)). Third, Plaintiff contends that, since there is no set formula for measuring damages under the False Claims Act, the court is not bound by *Young*, because the United States Court of Appeals for the Federal Circuit only affirmed a trial court's calculations as "a reasonable measure of [False Claims Act] damages" based on the specific facts of that case. *See* Pl. SJD Op. at 8. Instead, Plaintiff urges that the court follow a subsequent United States Court of Federal Claims decision that awarded the Government interest on premature contract payments as "a more appropriate measure of damages." *BMY-Combat Sys. Div. of Harsco Corp*. v. *United States*, 44 Fed. Cl. 141, 150 (1998) ("*BMY-Combat*") ("While [*Young*] awarded the overstatement of the invoice as [False Claims Act] damages, the court finds that in this case the interest on the premature contract payments is a more appropriate measure of damages."). Plaintiff argues that this case is analogous to *BMY-Combat,* because the alleged fraud was committed only by a few employees, and was not a "company-wide, systemic breakdown." Pl. SJD Op. at 9.

In the alternative, Plaintiff again argues that the court should only award the minimum $5,000 per violation, because the "alleged" fraud was limited to isolated portions of the contract and was committed by a few mid-level employees. *See* Pl. SJD Op. at 11-12. In addition, awarding the maximum penalty is inappropriate, because Plaintiff has a legitimate legal right to contest the asserted counterclaims. *See* Pl. SJD Op. at 12 (citing *Greenberg* v. *de Tessieres*, 902 F.2d 1002, 1004-05 (D.C. Cir. 1990) ("Sanctions for bringing a case or an argument to court ought to be reserved for unusual circumstances.")). Finally, Plaintiff asserts that the Government has prejudiced Plaintiff by causing delays and destroying documents during discovery. *See* Pl. SJD Op. at 12.

The court's analysis begins with the text of the False Claims Act, authorizing per violation "a civil penalty of not less than $5,000 and not more than $10,000 *plus* 3 times the amount of damages which the Government sustains[.]" *See* 31 U.S.C. § 3729(a) (emphasis added). The False Claims Act, however, does not set any specific formula for imposing civil penalties, but authorizes federal trial courts to award monetary relief that will afford the Government a base civil penalty amount that can be adjusted, in the court's discretion, up to the statutory ceiling. *See* 31 U.S.C. § 3729(a)(1), (b)(1) (setting civil penalties prior to September 29, 1999 at a range from $5,000-$10,000).

Congress, however, afforded the federal trial courts considerable discretion in calculating damages and ascertaining the amount of the civil penalty component, within the statutory range. *See* 31 U.S.C. § 3729. Accordingly, a variety of different factors have been utilized in exercising this discretion. *See*, *e.g., Young,* 15 F.3d at 1043 (the trial court must award "a reasonable measure of damages"); *United States* v. *Woodbury*, 359 F.2d 370, 379 (9th Cir. 1966) ("Ordinarily the measure of the government's damages would be the amount it paid out by reason of the false [claims] over and above what it would have paid if the claims had been truthful."); *see also United States* v. *Efren T. Irizarry-Colon*, 2006 U.S. Dist. LEXIS 38851 at *24 (D.P.R. June 9, 2006) ("Damages have been measured in a variety of ways and the measure applied by the courts in specific cases has been

greatly influenced by the nature of the fraud and the type of Government transaction affected by it."); *United States* v. *Peters*, 927 F. Supp. 363, 369 (D. Neb. 1996) (declining to award maximum statutory penalty because the Government was made whole by treble damages); *United States* v. *Boutte*, 709 F. Supp. 239, 241-43 (E.D. Tex. 1995) (determining that it could not award more than the minimum penalty without supporting evidence); *United States* v. *Macomb Contracting Corp*., 763 F. Supp. 272, 274 (D. Tenn. 1990) (imposing the maximum penalty after awarding $13 million in treble damages, which compensated the Government for all ancillary costs, because the contractor failed to cooperate with the Government's investigation); *United States* v. *Fliegler*, 756 F. Supp. 688, 694 (S.D.N.Y. 1990) (awarding the minimum penalty, because the Government failed to show why a higher level would be appropriate)*; United States* v. *Hill*, 676 F. Supp. 1158, 1182 (D. Fla. 1987) (awarding the maximum statutory civil penalty after determining that "[t]he Government need not show causation to be entitled to a forfeiture"); *BMY,* 44 Fed Cl. at 147 (recognizing that courts may "utilize several methods of damage calculations").

The trial court, however, does not have discretion to decline to award treble damages, because the False Claims Act, as amended, provides for "*a* civil penalty . . . *plus* 3 times the amount of damages." 31 U.S.C. § 3729(a)(2) (emphasis added). The legislative history is clear that Congress intended the imposition of significant civil penalties that would "substantially strengthen the Government's ability to deter fraud *and* regain financial losses resulting from fraud." H.R. REP. 99-660, at 19 (1986) (emphasis added); *see also* S. REP. NO. 99-345, at 2 (1985) ("[T]he problem is severe. This growing pervasiveness of fraud necessitates modernization of the Government's primary litigative tool for combating fraud; the False Claims Act[.]"). Accordingly, the United States Supreme Court has recognized that the civil penalty component and separate damage component of the False Claims Act were meant to "provide for restitution to the government of money taken from it by fraud, and that the device of double damages [prior to trebling required by the 1946 amendments] plus a specific sum was chosen to make sure that the government would be made completely whole." *United States ex rel. Marcus* v. *Hess*, 317 U.S. 537, 551 (1943). Therefore, Plaintiff's time-value of money argument is contrary to the text and purpose of the False Claims Act and is rejected by the court, irrespective of whether any agency staff considered the time-value of money as a surrogate method for determining civil penalties and treble damages.[8]

---

[8] The court also rejects Plaintiff's protestations of prejudice, because a GSA auditor corrected his initial deposition testimony by admitting that unknowingly he may have destroyed draft reports and e-mails concerning assessments of damages that he provided to Government counsel. *See* Pl. SJD Op. at 6-7, 13; *see also* SA 15 (Dep. 103-4). Aside from the fact that these documents may have been subject to deliberative process and/or attorney-client privileges, Mr. Walch's views about damages were not considered by the court, as they are irrelevant. Likewise, the court rejects Plaintiff's complaints about the Government delay. Since this case was transferred to the undersigned judge on August 15, 2003, the docket evidences no delay by the Government, nor have any such allegations been raised until recently. In any event, Plaintiff has failed to establish any prejudicial delay.

Likewise, Plaintiff's argument that the court should only award the statutory minimum, under the False Claims Act, because "the alleged fraud on these contracts was not pervasive . . . [and] was limited to only a few mid-level employees," also is rejected. *See* Pl. SJD Op. at 11. In fact, key executives knowingly defrauded the Government on six separate occasions involving four significant federal contracts. *See Morse Diesel IV*, slip op. at 12-13, 32-33.[9] Plaintiff unlawfully claimed $1,635,544 for false reimbursement on bond premiums and obtained $688,678 for false indemnity payments to the parent company. *Id.*; *see also* Gov't SJD at 8 (citing Def. PFUF No. 3-43). In addition, the Government has spent 13 years investigating and prosecuting this case to date. In light of the constitutional defenses raised, however, it appears two or three more years may well transpire before this case reaches finality. To be sure, Plaintiff has the absolute right to file four separate related actions in this court, nine other related cases in the General Services Board of Contracting Appeals that subsequently were identified by the Government as transferred to and consolidated by the United States Court of Federal Claims, and to pursue questionable constitutional defenses. *See* 132 CONG. REC. S9806 (1986) (Congress considered and rejected arguments that the 1986 amendments to the False Claims Acts were unconstitutional.). A consequence of Plaintiff's strategy, however, is to increase the expenses and costs that the Government must incur to discharge its law enforcement duties. Although restitution is important, it is the totality of *all* the circumstances of this case that has persuaded the court that the maximum civil penalties and treble damages are warranted in this case *and* are reasonable. *See Young*, 15 F.3d at 1043.

For these reasons, the court awards the Government a civil penalty of $50,000 under the False Claims Act and treble damages of $6,972,666, for a total of $7,022,666. *See Hess*, 317 U.S. at 551.

**F. Plaintiff's Constitutional Defenses.**

**1. The Due Process Clause Of The Fifth Amendment To The United States Constitution Is Not Violated In This Case.**

Plaintiff argues that, if the court awards the full amount of False Claims Act penalties and treble damages in this case instead of the time-value of money, the Due Process Clause of the Fifth

---

[9] The record evidences that, at various times, Plaintiff's Board of Directors, Chief Executive Officer, the Chief Financial Officer, the Accounting Manager, the Risk Manager, and two Regional Managers had knowledge and/or were active participants in the unlawful conduct at issue. *See Morse Diesel I*, 66 Fed. Cl. at 792-93, 799-801; *Morse Diesel III*, 74 Fed. Cl. at 624-25; *Morse Diesel IV*, slip op. at 12-23; *see also* Gov't PFUF No. 12, 16 and Ex. 6 and 10, A 720-23, A 1029-30.

Amendment to the United States Constitution[10] will be violated, because the court will run afoul of *State Farm Mutual Automobile Ins. Co.* v. *Campbell*, 538 U.S. 408 (2003) ("*State Farm*"), requiring the court to balance:

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the Plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*Id.* at 409; *see also* Pl. SJD Op. at 9-10. In particular, Plaintiff relies on the second element of this test, requiring that a punitive damage award not exceed the *actual harm suffered* by the Government. *See* P. SJD Op. at 9 (emphasis in original). Here, Plaintiff contends the only actual harm incurred was the time-value of money, since the Government would have paid the bond costs at a later date. *Id.* at 9-10.

The Government responds that the *State Farm* balancing test is inapplicable, because it was established to avoid the "imprecise manner in which punitive damages systems are administered [by juries.]" *See* Gov't SJD at 12 (citing *State Farm*, 538 U.S. at 417). Moreover, the parameters of lawful monetary relief are prescribed by Congress and the amount in each case is determined by the court; therefore, there is little risk of the type of arbitrary or imprecise award of concern in *State Farm*. *Id*. at 12. In addition, since the combination of civil penalties and treble damages "have a compensatory side, serving remedial purposes in addition to punitive objectives . . . some liability beyond the amount of the fraud is usually 'necessary to compensate the Government completely for the costs, delays, and inconveniences occasioned by fraudulent claims.'" *See* Gov't SJD Reply at 12-13 (quoting *Cook County, Ill*. v. *United States ex rel. Chandler*, 538 U.S. 119, 130-31 (2003) ("*Cook County*") (quoting *United States* v. *Bornstein*, 423 U.S. 303, 315 (1976))). For this reason, the United States Supreme Court has held, as a matter of law, that "[t]reble damages certainly do not equate with classic punitive damages, which leave the jury with open-ended discretion over the amount[.]" *Cook County*, 538 U.S. at 131-32. Accordingly, the court has determined that *State Farm* is not applicable to the False Claims Act, because potentially subjective punitive damages are not at issue. Congress, not a jury, has prescribed a civil penalty range and mandated the imposition of treble damages.

The court's analysis next turns to the fact that Congress considered and was satisfied that the 1986 amendments to the False Claims Act did not violate any constitutional rights. *See* 132 CONG. REC. S9806 (1986) ("A hearing was held in the Senate Judiciary Committee to examine this legislation and to outline the due process and other constitutional concerns raised by opponents of this legislation."). Nevertheless, to the extent Plaintiff is attempting to make a substantive due process challenge, the court is mindful that the United States Supreme Court has "been reluctant to expand the concept of substantive due process because guideposts for responsible decision making

[10] The Due Process Clause of the Fifth Amendment, in relevant part, states: "No person shall be . . . deprived of . . . property, without due process of law[.]" U.S. CONST. amend. V.

in this unchartered area are scarce and open-ended . . . . This approach tends to rein in the subjective elements that are necessarily present in due process judicial review. In addition, by establishing a threshold requirement – that a challenged state action implicate a fundamental right-before requiring more than a *reasonable relationship to a legitimate state interest to justify the action*, it avoids the need for a complex balancing of competing interests in any case." *Wash.* v. *Glucksberg*, 521 U.S. 720-22 (1997) (quoting *Collins* v. *Harker Heights*, 503 U.S. 115, 125 (1992) (Rehnquist, C. J.) (emphasis added). The legislative history of the False Claims Act evidences that there is a direct, rational, and reasonable relationship between congressional concerns in 1986 about pervasive fraud in federal contracting and the remedies that Congress enacted. *See* 131 CONG. REC. S10853-54 (1986) ("Contractors have us over a barrel. Our choice is inexorably clear. If we like being over a barrel, I would suggest we leave the law the way it is and instead grin and bear continued rapes and pillage of the treasury."). Therefore, the False Claims Act was amended in 1986 to send a "clear and strong message that there must be an end to . . . procurement fraud." 132 CONG. REC. S1784-85 (1986). Congress intended these monetary sanctions both to punish and deter fraud, in light of the billions of dollars spent on "contracts with private corporations in areas such as defense, aerospace, and construction." 131 CONG. REC. S10853 (1986). Six decades later, this rationale is even stronger, since private sector contractors have an increasing role in providing services to the federal government. *See* Is DHS Too Dependant on Contractors to Do the Government's Work?, *Hearing Before the S. Comm. on Homeland Security and Governmental Affairs*, 110th Cong. App. (Oct. 17, 2007) (Testimony of Professor Steven L. Schooner, Co-Director of the Government Procurement Law Program, George Washington University Law School) (chart showing an increase in federal outsourcing from $219.3 billion in fiscal year 2000 to $415.4 billion in fiscal year 2006); Continuation of Executive Nomination of the Honorable Michael Mukasey to be Attorney General of the United States, *Hearing Before the S. Comm. on the Judiciary*, 110th Cong. 123 (Oct. 18, 2007) (Senator Charles E. Grassley: "The goals of [the False Claims Act] remain just as important today or just as important as they were 150 years ago. We've recovered $20 billion of money, taxpayers' money, that would have otherwise been lost and gone forever. In fact, I think maybe the -- you know, just the deterrent effect probably has saved a lot more money than that, but you can't measure that. The bottom line is that there's tremendous benefits to the act and to its aggressive enforcement."); *see also* S. 2041, The False Claims Corrections Act of 2007; 153 CONG. REC. S11506-10.[11]

The United States Supreme Court observed in *Vt. Agency of Natural Res.* v. *United States ex rel. Stevens*, 529 U.S. 765 (2000) ("*Stevens*"), that "the [False Claims Act] imposes [treble] damages that are essentially punitive in nature." *Id.* at 784. The Court's subsequent decision in *Cook County*, however, clarified that treble damages were not solely punitive in nature, recognizing that: "[T]reble damages [authorized under the False Claims Act] have a compensatory side, serving

---

[11] On September 12, 2007, S.2041 was introduced by Senator Charles Grassley (R-Iowa), and was referred to the Senate Committee on the Judiciary where it has received the co-sponsorship of: the Chairman of the Senate Judiciary Committee, Senator Patrick Leahy (D-Vt.); Ranking Member Senator Arlen Specter (R-Pa.); Senator Richard J. Durbin (D-Ill.); and Senator Sheldon Whitehouse II (D-R.I.). This bill seeks to further strengthen the False Claims Act.

remedial purposes in addition to punitive objectives." These remedial purposes include compensating the Government for costs and delays caused by fraud, as well as providing an incentive for voluntary disclosure of any fraudulent activities. *See, e.g.*, 31 U.S.C. § 3730 (allowing a *qui tam* plaintiff to receive at "least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the [false] claim"); *cf.* 131 CONG. REC. S10853 (Aug. 1, 1985) ("This False Claims Reform Act restores the incentive for individuals to come forward[.]"). In addition, Congress established a treble multiplier, because "Fraud is . . . so pervasive and, therefore costly to the Government due to a lack of deterrence." S. REP. No. 99-345, at 3 (1985). Therefore, Congress' intent to eliminate fraudulent activity in government contracting, by enacting the 1986 amendments to the False Claims Act, bears a direct, rational, and reasonable relationship to the civil penalties and treble damage awards that federal trial courts were authorized to impose to accomplish that objective.[12]

Accordingly, the court has determined that an award of maximum civil penalties and treble damages under the False Claims Act, in this case, does not violate the Due Process Clause. *See Young* 15 F.3d at 1043 ("no authority has been cited to us that the trial court cannot award more [damages than requested] so long as the trial court complies with the provisions of [the False Claims Act.]").

### 2. The Excessive Fines Clause Of The Eighth Amendment To The United States Constitution Is Not Violated In This Case.

Plaintiff also argues that a $10,000 per claim penalty violates the Excessive Fines Clause of the Eight Amendment to the United States Constitution.[13] *See* Pl. SJD Op. at 11 (citing *United States* v. *Kruse*, 101 F. Supp. 2d 410, 414 (E.D. Va. 2000)). In *Kruse*, a United States District Court held that the defendant violated the Anti-Kickback Act on 59 occasions and awarded the Government double the amount of kickbacks, or $1,569,120. *Id*. That federal trial judge, however, determined that imposing a $10,000 penalty for each of 59 kickbacks, or an additional $590,000, violated the Excessive Fines Clause, reasoning that since Anti-Kickback Act civil penalties have a punitive element, the imposition of civil penalties under this statute is subject to the Excessive Fines Clause, *i.e.*, "whether the recovery sought is *grossly disproportionate* to the gravity of the offense." *See Kruse*, 101 F. Supp. 2d at 413 (emphasis added) (citing *United States* v. *Bajakajian*, 524 U.S. 321, 336-37 (1998)). The *Kruse* court held that awarding civil penalties of $2,159,120 did not violate the Excessive Fines Clause "with respect to either the gravity of the offense or the damages

---

[12] To the extent that Plaintiff is implicitly asserting a procedural violation of the Due Process Clause, such an argument is belied by the docket, evidencing that Plaintiff has fully utilized the federal judiciary in advancing its views about the appropriateness of the False Claims Act civil penalties and treble damages in this case.

[13] The Excessive Fines Clause of the Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII.

suffered by the government," but exercised its discretion in not adding the $10,000 per occurrence penalty, because it "would impose an impermissible punishment *in this instance*." *Kruse*, 101 F.Supp. at 414 (emphasis added).

Since Anti-Kickback Act civil penalties have a punitive component, the court has decided to ascertain whether this award is "grossly disproportionate to the gravity of the offense," although this is the same test that the United States Supreme Court has adopted in Cruel and Unusual Punishment Clause cases. *See Bajakajian*, 524 U.S. at 334.[14] In making this determination, the court is guided by the instruction of the United States Supreme Court that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature." *Id*. at 336. In that regard, it is significant that, in raising the statutory maximum civil penalty under the False Claims Act in 1986 from $2,000 to $10,000 and creating a $10,000 "per occurrence" penalty under the Anti-Kickback Act, Congress was focused on eradicating fraud in federal government contracting. *See* S. REP. 99-345, at 1-3 (1986) (False Claims Act); H.R. REP 99-694, at 3-5 (1985) (Anti-Kickback Act).

In this case, the total amount of the unlawful kickbacks was $109,728.52. *See Morse Diesel III*, 74 Fed. Cl. at 622. Double that amount is $219,547.04. *See* 41 U.S.C. § 55(a)(1)(B). The court found that at least four occurrences of this "prohibited conduct" took place, warranting a civil penalty of an additional $40,000. *See* 41 U.S.C. § 55(a)(1)(B). Therefore, the total amount of civil penalties due under the Anti-Kickback Act is $259,547.04, *i.e.*, 2.37 times the amount of the kickbacks. *Id*. Likewise, the imposition of maximum civil penalties and treble damages under the False Claims Act in this case does not violate the Excessive Fines Clause, since the total $7,032,666 awarded under that Act is 3.3 times the amount of false claims at issue. The United States Court of Appeals for the Federal Circuit has affirmed that a civil penalty of approximately three times the value of a claim was "well within constitutional limits." *See San Huan New Materials High Tech, Inc.* v. *Int'l Trade Comm.*, 161 F.3d 1347, 1364 (Fed. Cir. 1998) (citing *BMW of N. Am., Inc.* v. *Gore*, 517 U.S. 559, 581 (1996) (holding punitive damages should not exceed a 10 to 1 ratio)).[15]

---

[14] The court clarifies that it has not determined whether a civil penalty award, under the Anti-Kickback Act, and civil penalty and treble damage award, under the False Claims Act, is required to meet the same standard as a criminal fine, but has assumed this premise for the purposes of resolving this issue.

[15] A different perspective of the total $7,292,213 award is that this maximum penalty is only 2.5% of the $290,276,166 value of the four federal contracts awarded to Plaintiff. *See Morse Diesel I*, 66 Fed. Cl. at 791-92. *See* S. REP. 99-345, at 3 (1986) (quoting GAO Report To Congress, "Fraud in Government Programs: How Extensive is it? How can it be controlled?" (1981 at cover) ("For those who are caught committing fraud, the chances of being prosecuted and eventually going to jail are slim . . . The sad truth is that crime against the Government often *does* pay.") (emphasis in original)).

Accordingly, the court has determined that imposing the full statutory penalty under the Anti-Kickback Act and the False Claims Act in this case does not violate the Excessive Fines Clause.

## III. CONCLUSION.

For the reasons discussed herein, the Government's May 18, 2007 Motion For Partial Summary Judgment is granted. The Government is awarded $259,547.04 under the Anti-Kickback Act and $7,032,666 under the False Claims Act for a total of $7,292,213. Plaintiff's June 15, 2007 Opposition is denied.

The court will convene a telephone conference on November 14, 2007 at 3:00 p.m. E.S.T. to discuss what further proceedings, if any, require the court's adjudication before this Memorandum Opinion and Order may be entered as a final judgment.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**