# EXHIBIT 4

THE SEDONA CONFERENCE® WORKING GROUP SERIES

wgs℠

# The Sedona Conference® Commentary on Legal Holds

## *The Trigger & The Process*

A Project of The Sedona Conference®
Working Group on Electronic
Document Retention & Production (WG1)

AUGUST 2007 PUBLIC COMMENT VERSION

Copyright © 2007, The Sedona Conference®

The Sedona Conference®

# *Reasonable Anticipation of Litigation & Legal Holds*

Information is the lifeblood of the modern world, a fact that is at the core of our litigation discovery system. The law has developed rules regarding the manner in which information is to be treated in connection with litigation. One of the principal rules is that whenever litigation[1] is reasonably anticipated, threatened or pending against an organization,[2] that organization has a duty to preserve relevant information. This duty arises at the point in time when litigation is reasonably anticipated whether the organization is the initiator or the target of litigation.

The duty to preserve information includes an obligation to identify, locate, and maintain, information that is relevant to specific, predictable, and identifiable litigation. When preservation of electronically stored information[3] ("ESI") is required, the duty to preserve supersedes records management policies that would otherwise result in the destruction of ESI. A "legal hold" program defines the processes by which information is identified, preserved, and maintained when it has been determined that a duty to preserve has arisen.[4]

The duty to preserve typically arises from the common law duty to avoid spoliation of relevant evidence for use at trial; the inherent power of courts; and court rules governing the imposition of sanctions. *See, e.g., Silvestri v. General Motors*, 271 F.3d 583 (4th Cir. 2001) (applying the "federal common law of spoliation"); *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). Under Rule 37 of the Federal Rules of Civil Procedure, a party that violates a preservation order or an order to compel production, or otherwise fails to produce information, would be exposed to a range of sanctions.[5] However, Rule 37 also provides that "[a]bsent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide ESI lost as a result of the routine, good-faith operation of an electronic information system." The scope of this "safe harbor" and its impact on the duty to preserve relevant information remain to be seen as the rule only became effective on December 1, 2006.[6]

In addition to the common law duty to preserve relevant information in anticipation of litigation, preservation obligations may also be imposed by statutes or regulations. *See Byrnie v. Town of Cromwell Bd. of Education*, 243 F.3d 93, 108-09 (2d Cir. 2001) ("Several courts have held that the destruction of evidence in violation of a regulation that requires its retention can give rise to an inference of spoliation."). *See also, e.g.,* 29 C.F.R. § 1602.14 ("Preservation of Records Made or Kept"); 18 C.F.R. § 125.2(l) ("[I]f a public utility or licensee is involved in pending litigation, complaint procedures, proceedings remanded by the court, or governmental proceedings, it must retain all relevant records."); 18 U.S.C. § 1519 (Sarbanes-Oxley Act § 802) ("Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than twenty years, or both.").[7]

---

[1] Throughout this Commentary, the term "litigation" is used to refer primarily to civil litigation. However, the principles apply with equal force to regulatory investigations and proceedings.

[2] Where appropriate, the term "organization" should be understood to include natural persons.

[3] The proposed 2006 package of amendments to the Federal Rules of Civil Procedure were promulgated to address the discovery and production of "electronically stored information." While neither the amendments nor the accompanying Committee Notes explicitly define that phrase, it is understood to mean information created, manipulated, communicated, stored, and best utilized in digital form, requiring the use of computer hardware and software. Electronically stored information is distinguished from information derived from "conventional" media, such as writing or images on paper, photographic images, analog recordings, and microfilm. The distinctions between electronically stored information and conventional information are not based on the sophistication of the technology needed to create, present, or understand the information. After all, the creation and presentation of analog sound recordings or big-screen movies requires technology arguably as sophisticated as computers. The distinctions are in the unique ways digital information is created, modified, communicated, stored, and disposed of by computer systems. The distinctions are also in the ways that computer systems themselves have evolved and are continuing to evolve.

[4] Businesses and other entities must comply with a large number and wide variety of statutes and regulations that require the maintenance of various records in the ordinary course of business. For clarity, managing information where litigation is not involved will be referred to as "records management," while preserving information due to its relevance to litigation or governmental proceedings will be described as "preservation." In many instances the obligation to preserve relevant information will require the suspension of document destruction procedures set forth in records management policies.

[5] *See, e.g., William T. Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984); *Danis v. USN Communications, Inc.*, No. 98 C 7482, 53 Fed. R. Serv. 3d (West) 828, 2000 WL 1694325, *1 (N.D. Ill. Oct. 23, 2000) ("fundamental to the duty of production of information is the threshold duty to preserve documents and other information that may be relevant in a case"). A few states also recognize the tort of spoliation. *See Fletcher v. Dorchester Mutual Ins. Co.*, No. 98497B,1999 WL 33579246 (Mass. Super. Dec. 10, 1999), affirmed, 773 N.E. 2d 420 (Mass. 2002) (reviewing state spoliation tort laws).

[6] The Committee Note acknowledges that a preservation obligation "may arise from many sources, including common law, statutes, regulations or a court order" and that when a party is under a duty to preserve, actions taken are aspects of "what is often called a 'litigation hold'."

[7] However, such record retention regulations do not necessarily create preservation obligations that are enforceable by private parties. Compare 17 C.F.R. § 240.17a-4 (SEC rule mandating retention of communications by members, brokers or dealers) with *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 322 n.70 (S.D.NY 2003) (plaintiff Zubulake held not to be an intended beneficiary of the records retention regulation at issue).

The basic principle that an organization has a duty to preserve relevant information in anticipation of litigation is easy to articulate. However, the precise application of that duty can be elusive. Every day, organizations apply the basic principle to real-world circumstances, confronting the issue of when the obligation is triggered and, once triggered, what is the scope of the obligation. This Article, intended to provide guidance on those issues, is divided into two parts: The "trigger" and the "legal hold."

Part I addresses the "trigger" issue and provides practical guidelines for making a determination as to when the duty to preserve relevant information arises. What should be preserved and how the preservation process should be undertaken including the implementation of "legal holds" is addressed in Part II. The keys to addressing these issues are reasonableness and good faith. The guidelines are intended to facilitate reasonable and good faith compliance with preservation obligations.[8] The guidelines are meant to provide the framework an organization can use to create its own preservation procedures. ***The guidelines are not intended and should not be used as a "checklist" or set of rules that are followed mechanically. Instead, they should guide entities in articulating a policy for implementing legal holds that is tailored to their individual needs.*** In addition to the guidelines, suggestions as to best practices are provided along with several illustrations as to how the guidelines and best practices might be applied under hypothetical factual situations. These illustrations are not to be taken as "right answers" for the circumstances posed. Indeed, there may be other circumstances or the existence of other facts that could well result in a different analysis and result. As such the illustrations are intended to impart understanding of the analytical framework to be applied and not as reasons for reaching a particular result.

---

[8] This article is in furtherance of and expands upon Principle 5 of The Sedona Principles: Best Practices, Recommendations & Principles for Addressing Electronic Document Production ("the Sedona Principles"), which emphasizes that preservation obligations require "reasonable and good faith efforts," but that it is "unreasonable to expect parties to take every conceivable step to preserve potentially relevant data."