# EXHIBIT 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MORSE DIESEL, )
Plaintiff, )
) Case No.: 99-279C
v. )
UNITED STATES, )
Defendant. )

Thursday,
April 5, 2007

Live Tape

(The following transcript was transcribed from a digital recording provided by United States Court of Federal Claims to Heritage Reporting Corporation on April 5, 2007.)

APPEARANCES:

For the Plaintiff:
JAMES WAREHAM, Esquire
KIRBY BEHRE, Esquire
Paul Hastings Jenosky and Walker

For the Defedant:
DOMENIQUE KIRCHNER, Esquire
TRACY HILMER
U.S. Department of Justice

Also Present:
KATHERINE CROWE
General Services Administration

there is no injury.

MS. KIRCHNER: Well, no, Your Honor, they didn't contend that in the affidavit.

THE COURT: Oh, okay.

MS. KIRCHNER: But there is a declaration of Ronny Brenner.

THE COURT: Yes.

MS. KIRCHNER: It begins in the appendix. It's in the Plaintiff's Volume 4, and it begins at page 1049. So I'm assuming that their position on damages is similar to that declaration.

And what I would propose to the Court is that both parties address the damages issues by filing briefs, and if the Court wants to have a hearing after the briefs are filed --

THE COURT: Is this something I can do on summary judgment?

MS. KIRCHNER: We believe so, Your Honor. The big issue on damages is whether the Federal Circuit's decision in Young Mott Naye applies here, construing False Claims Act damages, and so it involves the parties' interpretation, our interpretation of that decision, the Plaintiff's interpretation of that decision, and of course the Court will decide what the appropriate damages are in

view of the law.

So we think that the damages issue and (inaudible) can be addressed through briefs, and so we would ask the Court --

THE COURT: So you want to put together a scheduling proposal for me?

MS. KIRCHNER: Your Honor, what we would propose for the government's brief is that we would file our brief on March 30th. If we could file it sooner, we will file it sooner, but we do want to have conversations with Plaintiff's counsel also on damages before we file that brief. So we would propose March 30th for the government's brief.

MR. BEHRE: I think we're getting a little ahead of ourselves, and we do intend to sit down with the government. We do want to at least attempt to narrow the issues, perhaps even resolve some of them, which would truncate or obviate the need for a hearing.

We need guidance from the Court as to what it meant in its opinion with regard to damages. I think there is a couple of ways you could read that, and I think the government has one view and we have another view.

THE COURT: Well, tell me what the issues

are and maybe I can help you right now.

MR. BEHRE: Okay, the damages were those that were compensatory actual damages that would be needed for a constitutional analysis under the due process clause, and I think the government has a different view as to what the Court meant.

THE COURT: Well, until I've actually issued an opinion, then we don't know what the due process issues will be. If I say there are no damages, or there are very few, you're not going to have much of a due process argument.

MR. BEHRE: Correct, and that's absolutely right, but I was focusing in on the Court saying there would be an evidentiary hearing.

THE COURT: Well, I thought we would need one.

MR. BEHRE: And under some interpretations of damages, our side would agree with you, but it's just unclear, I think, to the government. Let's put it this way, there is a disagreement between AMEC and the government as to what Your Honor covered in the evidentiary hearing. We understood it to be those damages that would be utilized in coming up with a due process calculation, if you will. The government saw it as something that would cover the kickback act and

the False Claims Act, and what have you.

THE COURT: Let me see if we can work at this backwards just a little bit, and this is really the issue for the government's counsel.

We've got all these counter-claims out there, the third, the fourth, the eighth, we're going to have the ninth back on that list. What's the one with all the subcontractors in it?

MS. KIRCHNER: Your Honor, when you look at the numbers, I think that the Court is focusing on the numbers. The numbers are set out in terms of the statutory basis or the common law basis for bringing a counter-claim.

THE COURT: Right.

MS. KIRCHNER: For example, Counts 1 and 2 are under the False Claims Act.

THE COURT: Right.

MS. KIRCHNER: Now, the Court has already ruled on some of the factual allegations.

THE COURT: The liability.

MS. KIRCHNER: Counts 1 and 2.

THE COURT: Right.

MS. KIRCHNER: The subcontractors actual factual allegations that feed into Counts 1 and 2 certainly.

look at Judge Garases' decision last week.

MS. KIRCHNER: Yes, Your Honor, we certainly --

THE COURT: No, but they ought to. I mean, they don't have much stomach for, or not going to have much stomach, I think, for the factual situation that I've dealt with so far.

MS. KIRCHNER: We agree, Your Honor.

THE COURT: And so what I'm saying is it seems to me that that's a much cleaner situation for the government, and just leave these other -- drop these other counter-claims. They don't do anything really for the legal point you want to make, I don't think, other than do you leave them on the books. You've got a residual bunch of stuff there to kind of mess with. Two and a half years from now this case is so old there is not going to be a human being left that's going to know anything about damages on those.

MS. KIRCHNER: Well, some of those issues, Your Honor, I think can be resolved quickly. I think that the ninth counter-claim -- excuse me. The CDA, which is the ninth counterclaim --

THE COURT: Right, right, right.

MS. KIRCHNER: -- can be resolved quickly, and there could also be a decision on that which would

entitle the government to additional damages.
The government is not prepared at this point to drop any of its counter-claims.
THE COURT: Yes, I know you're not. That's why I'm trying to give you some incentive to do that. I think you'll have a stronger case, cleaner case, but that's just my judgment.
All right. So you're not going to do anything with any of these?
MS. KIRCHNER: Well, we'll discuss them with Plaintiff's counsel --
THE COURT: Right.
MS. KIRCHNER: -- which we anticipate having, but we don't see any reason to drop other parts of the government's counter-claims.
MR. BEHRE: Your Honor, if I could just interject on the Long Island Savings case?
THE COURT: Yes.
MR. BEHRE: Our reading of that, both the Court of Appeals and the two decisions issued by the lower court suggests that the constitutional issues weren't even raised in that case. I can't tell you why, but it certainly appears to be the case, so I'm not sure how --
THE COURT: I understand, and I wish you

luck, but I'm not real optimistic about your chances or on your constitutional claims, certainly not in the situation you have here with plea agreements.

All right. Well, we'll all learn the answers to those questions down the road.

Here is what I'd like you to do.

MS. KIRCHNER: Your Honor, can I bring something else to the Court's attention?

THE COURT: Okay.

MS. KIRCHNER: Today, the government did file additional papers. I don't know whether the Court has yet.

THE COURT: I don't have anything.

MS. KIRCHNER: I'm sure Your Honor does not. I just wanted to alert the Court to it. We are filing, we think that there are some misstatements in the Court's opinion that ought to be corrected, and so we have filed a --

THE COURT: Is it another motion for reconsideration?

MS. KIRCHNER: Clarification and reconsideration, Your Honor.

THE COURT: Okay.

MS. KIRCHNER: So that's being filed today, and then we've also asked the Court for additional