Nos. 99-279C and consolidated cases
(Judge Braden)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MORSE DIESEL INTERNATIONAL, INC.
d/b/a AMEC CONSTRUCTION
MANAGEMENT, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# UNITED STATES' RESPONSE TO PLAINTIFF'S MOTION FOR CLARIFICATION OF THE COURT'S OCTOBER 31, 2007 OPINION

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
JOYCE R. BRANDA
Directors

PATRICIA R. DAVIS
Assistant Director

DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Fax: (202) 514-8624

Attorneys for Defendant

Of Counsel:

TRACY L. HILMER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice

ERIC L. MILLER
Office of the Inspector General
General Services Administration

DALTON PHILLIPS
CATHERINE CROW
General Services Administration

December 14, 2007

## TABLE OF CONTENTS

I. There Is No Merit In Plaintiff's Tardy Due Process Arguments .......................... 2

II. The Government Has Not Waived Any Of Its Remaining Counterclaims ........... 8

III. Plaintiff Has Not Demonstrate Any Error In The Court's Decision On Damages ........................................................................................... 11

CONCLUSION ........................................................................................................ 20

## TABLE OF AUTHORITIES

### CASES

Alexander v. Gardner-Denver,
415 U.S. 35 (1974) .......... 12

American Heritage Bancroft v. United States,
61 Fed. Cl. 376 (2004) .......... 6, 7

Anderson v. United States,
47 Fed. Cl. 438 (2000) .......... 6

Artis v. Norfolk & Western Railway Co.,
204 F.3d 141 (4th Cir. 2000) .......... 18

BMW of N. Am., Inc. v. Gore,
517 U.S. 559 (1996) .......... passim

Baldridge v. Hadley,
491 F.2d 859 (10th Cir. 1974) .......... 17, 18

Banner Mfg. Co. V. United States,
125 Ct. Cl. 384,
112 F. Supp. 365 (1953) .......... 12

Brown Const. v. United States,
23 Cl. Ct. 214 (1991) .......... 7

Caldera v. Northrop Worldwide Aircraft Servs., Inc.,
192 F.3d 962 (Fed. Cir. 1999) .......... 10

Citizens Financial Services v. United States,
59 Fed. Cl. 27 (2003) .......... 10

Coconut Grove Entm't, Inc. v. United States,
46 Fed. Cl. 249 (2000) .......... 20

Cook Co., Illinois v. United States,
538 U.S. 119 (2003) .......... 4

Cooper Industries, Inc. v. Leatherman Tool Group,
532 U.S. 424 (2001) .......... 3

Cooper Industries, Inc. v. Leatherman Tool Group, Inc.,
532 U.S. 424 (2001) .......... 4

First Annapolis Bancorp, Inc. v. United States,
75 Fed. Cl. 280 (2007) .......... 10

Frenze v. United States,
1986 WL 6856 (E.D. Pa. 1986) .......... 10

Gens v. Resolution Trust Corp.,
112 F.3d 569 (1st Cir. 1997) .......... 12

Hickson Corp. v. Norfolk S. Ry. Co.,
260 F.3d 559 (6th Cir. 2001) .......... 12

Little v. United States,
138 Ct. Cl. 773,
152 F. Supp. 84 (1957) .......... 6

Massie v. United States,
166 F.3d 1184 (Fed. Cir. 1999) .......... 10

Medcom Holding Co. v. Baxter Travenol Labs., Inc.,
984 F.2d 223 (7th Cir. 1993) .......... 12

Morse Diesel Int'l Inc. v. United States,
66 Fed. Cl. 788 (2005) .......... 14

Morse Diesel Int'l Inc. v. United States,
74 Fed. Cl. 601 (2007) .......... 2

Northwest Louisiana Fish & Game Preserve Comm.,
___ Fed. Cl. ___,
2007 WL 3277280 (Oct. 31, 2007) .......... 10

Parker v. United States,
110 F.3d 678 (9th Cir. 1997) .......... 10

Pennsylvania Nat. Mutual Casualty Ins. Co. v. City of Pine Bluff,
354 F.3d 945 (8th Cir. 2003) .......... 12

Rhone-Poulenc Agro v. DeKalb Genetics Corp.,
345 F.3d 1366 (Fed. Cir. 2003), reinstating as modified,
272 F.3d 1335 (Fed. Cir. 2001) .......... 7

Sanderson-Cruz v. United States,
88 F. Supp.2d 388 (E.D. Pa. 2000) .............................................................................. 10

State Farm Mutual Automobile Ins. Co. v. Campbell,
538 U.S. 408 (2003) .............................................................................. 2, 3, 4, 5, 6, 7

Supermex v. United States,
35 Fed. Cl. 29 (1996) .............................................................................. 7

Tronzo v. Biomet, Inc.,
236 F.3d 1342 (Fed. Cir. 2001) .............................................................................. 7

UMC Electronics v. United States,
43 Fed. Cl. 776 (1991) .............................................................................. 6

United States ex rel. Augustine v. Century Health Services,
289 F.3d 409 (6th Cir. 2002) .............................................................................. 12, 13, 14, 16

United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.,
505 F. Supp.2d 20 (D.D.C. 1007) .............................................................................. 19

United States v. Lippert,
148 F.3d 974 (8th Cir. 1998) .............................................................................. 16

United States v. Temple,
299 F.2d 30 (7th Cir. 1962) .............................................................................. 18

United States v. Thomas,
709 F.2d 968 (5th Cir. 1983) .............................................................................. 12, 13

Young-Montenay, Inc. v. United States,
15 F.3d 1040 (Fed. Cir. 1994) .............................................................................. 19

Zimmerman v. Harding,
227 U.S. 489 (1913) .............................................................................. 12

## STATUTES and REGULATIONS

28 U.S.C. § 2514 .............................................................................. passim

41 U.S.C. §§ 51-58 .............................................................................. 1

Fed. R. Civ.P. 8(c) .............................................................................. 10

60 Fed. Reg. 17457 (April 6, 1995) .............................................................................. 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MORSE DIESEL INTERNATIONAL, INC. d/b/a AMEC CONSTRUCTION MANAGEMENT, INC., Plaintiff, | ) | |
| v. | ) | Nos. 99-279C and consolidated cases |
| | ) | (Judge Braden) |
| THE UNITED STATES, Defendant. | ) | |

**UNITED STATES' RESPONSE TO PLAINTIFF'S MOTION FOR CLARIFICATION OF THE COURT'S OCTOBER 31, 2007 OPINION**

Defendant, the United States, respectfully submits this response to the November 27, 2007 motion of Morse Diesel International, Inc., now known as AMEC Construction Management, Inc. (ACMI), requesting three separate forms of relief. First, ACMI requests that the Court reverse its January 26, 2007 opinion, as modified, granting the Government's summary judgment motion and declaring the forfeiture of ACMI's claims pursuant to 28 U.S.C. § 2514. ACMI claims the Court's declaration of forfeiture should be reversed because of ACMI's due process argument. Alternatively, ACMI requests that the Court allow yet another round of briefing addressing its due process argument.

Second, ACMI requests that the Court rule that the Government has waived or failed to prosecute all of its remaining counterclaims, except for the Ninth Counterclaim. ACMI requests the Court to dismiss all remaining counterclaims, except for the Ninth Counterclaim.

Third, ACMI requests that the Court reconsider its October 31, 2007 opinion on damages and reverse its decision to award the Government $259,457.04 pursuant to the Anti-Kickback Act, 41 U.S.C. §§ 51-58.

I. There Is No Merit In Plaintiff's Tardy Due Process Arguments

At the November 14, 2007 telephone status conference, ACMI asserted that the Court had failed to address its due process argument in the context of forfeiture. Tr. 15-17. In its motion, ACMI also notes the Court's statement in its January 2007 opinion that, "since the court has not determined the damages due the Government for violations of the Anti-Kickback Act and the Fraudulent Claims Act, Plaintiff's constitutional challenge under the Due Process clause is not ripe." Morse Diesel Int'l, Inc. v. United States, 74 Fed. Cl. 601, 635 (2007)(Morse Diesel III).

Even if, as ACMI contends, its due process defense to the Government's counterclaim requesting forfeiture of ACMI's claims was not ripe at the time of the Court's decision in January 2007, any due process argument in the context of forfeiture was surely ripe at the time that ACMI filed its response to the Government's motion for summary judgment on damages on June 15, 2007. At that time, ACMI's entire statement in support of its due process argument was as follows:

> Even if the Court were to award damages to the Government in the full amount of the falsely stamped invoices, the time-value of money is the proper number to be used in determining actual harm to the Government for Constitutional Due Process balancing purposes. In conducting its Constitutional Due Process analysis, the Court is required to follow the three-part test established by the Supreme Court in BMW of N. Am., Inc. v. Gore, 517 U.S. 559 (1996), and applied in State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408 (2003):
>
> > (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the

> punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

> State Farm, 538 U.S. at 409. See also, Gore, 517 U.S. at 575; Cooper Industries, Inc. v. Leatherman Tool Group, 532 U.S. 424, 435 (2001).

> The second prong of this test focuses on actual harm suffered, not the value of damages allowed under the law. In this case, the actual harm to the Government was clearly the interest that the Government would have earned on the funds it paid to ACMI before that payment was due. The surety bond invoices submitted to the Government, that were falsely stamped "paid," were, in fact, paid by ACMI at a later date, and the Government would have been required to pay ACMI the same amount of money at that later date. Therefore, the only actual harm to the Government as a result of the false stamping is the time-value of money, which is the loss of interest on the delay in payment.

June 15, 2007 Pl. Response at 9. Completely absent from ACMI's argument was any contention that this Court should revisit its conclusion issued in January 2007, that ACMI's claims are forfeited pursuant to 28 U.S.C. § 2514, and that the Court should reverse that conclusion because of ACMI's due process argument. The Court's January 2007 ruling of forfeiture of ACMI's claims is not even mentioned in ACMI's discussion of its due process argument.

At the November 14, 2007 status conference, the Court indicated that ACMI had not raised its due process contention in the context of forfeiture. Tr. 15-16.[1] The Court stated that ACMI's argument "[redacted]." Tr. 16. The Court further commented that it had addressed the argument ACMI raised in its brief regarding State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408 (2003), which case

[1] The transcript of the November 14, 2007 status conference is under seal. A copy is being filed under seal.

involved a jury verdict award of punitive damages, and the "[redacted]." Tr. 16. In its October 31, 2007 opinion, the Court had ruled that "State Farm is not applicable." Slip op. 14. At the status conference, the Court commented that it "[redacted]." Tr. 17. As noted above, in ACMI's brief, there was no argument – separate or otherwise – regarding forfeiture or requesting that the Court revisit and reverse its January 2007 declaration of forfeiture of ACMI's claims because of ACMI's due process argument.

Further, in its October 31, 2007 opinion, the Court disposed of ACMI's due process argument. In a detailed opinion, the Court explained why ACMI's argument lacked any merit. Slip op. 14. The Court emphasized the Supreme Court's decision which held, "as a matter of law, that 'treble damages certainly do not equate with classic punitive damages, which leave the jury with open-ended discretion over the amount.'" Slip op. 14, citing Cook Co., Illinois v. United States, 538 U.S. 119, 131-32 (2003). This Court concluded that the cases in which juries had issued a determination of the amount of punitive damages due a plaintiff and which cases were relied upon by ACMI for its due process argument were "not applicable," i.e., State Farm Mut. Automobile Ins. Co. v. Campbell, 538 U.S. 408 (2003); Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424 (2001); BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996). Slip op. 14.

ACMI did not enunciate any argument that there was a violation of substantive due process. However, the Court explained that "to the extent Plaintiff is attempting to make a substantive due process challenge," the imposition of "maximum civil penalties and treble damages . . . in this case" did not result in a violation of substantive due process. Slip. op. 14-16.

The Court also explained "that to the extent Plaintiff is implicitly asserting a procedural violation of the Due Process clause, such an argument is belied by the docket" in this case. Slip op. 16 n.12.

ACMI now seeks to resurrect its due process argument as a defense to the forfeiture of ACMI's claims that the Court declared in its January 2007 opinion. The time for such arguments is long past, and the Court properly decided the Government's motion for summary judgment upon the complete record that the parties presented. RCFC 56.

Moreover, ACMI's attempt to reverse the Court's declaration that ACMI's claims are forfeited pursuant to 28 U.S.C. § 2514 is without any merit and requires no reconsideration of the Court's opinions. Indeed, the Court's rationale in its October 2007 opinion applies with equal force to ACMI's due process argument in the context of 28 U.S.C. § 2514. That is, State Farm and related cases are simply not applicable. No jury is ever involved in the finding of facts or the application of law pursuant to 28 U.S.C. § 2514. The forfeiture statute is not even a damages statute.

Jury verdict awards of punitive damages, as the Supreme Court explained, implicate constitutional due process because of three factors: (1) the risk of arbitrary decisions by juries, (2) the uncertainty as to the amount of any punitive damages award that might be imposed, and (3) the lack of notice to individual defendants of the punitive damages awards that they might face. Gore, 517 U.S. at 574-75. In contrast, as we laid out in our summary judgment motion, 28 U.S.C. § 2514 operates as a condition upon the Government's waiver of sovereign immunity. As such, section 2514 is not a damages statute, and ACMI's attempts to analogize to damages caselaw is totally inapt.

Further, Congress has decisively addressed the consequences of fraud upon Government contracts. Where a demand for a "judgment of forfeiture" under section 2514 is raised, and a determination of contractor fraud rendered, Congress made the "judgment of forfeiture obligatory on the court." American Heritage Bancroft v. United States, 61 Fed. Cl. 376, 385 (2004); Anderson v. United States, 47 Fed. Cl. 438, 444 (2000); UMC Electronics v. United States, 43 Fed. Cl. 776, 791 (1991) ("§ 2514 requires the forfeiture of all claims arising under a contract tainted by fraud against the government."); Little v. United States, 138 Ct. Cl. 773, 778, 152 F. Supp. 84 (1957). There is also no necessity to determine the amount of any contractor claim, whether documented or not, in the context of determining whether to apply 28 U.S.C. § 2514, because the consequences of a contractor's fraud are patently clear. Id.

Fraud "places a stigma upon the contract at issue," and "public policy, congressional intent and case precedent all dictate against condoning any fraud or attempts to practice fraud during the course of performance." Supermex v. United States, 35 Fed. Cl. 29, 42 (1996) ("'the mandate of the words employed in 28 U.S.C. § 2514 [is] quite clear and unequivocal. The words of the statute make it apparent that a claim against the United States is to be forfeited if fraud is practiced during contract performance.'"). The effects of fraud extend far beyond any specific fraudulent act, engendering "a suspicion about the integrity of the entire course of dealing," Brown Const. v. United States, 23 Cl. Ct. 214, 215-16 (1991), and "making it virtually impossible to distinguish between tainted and untainted claims." American Heritage, 61 Fed. Cl. at 386.

In any event, contrary to ACMI's argument (Pl. Mot. 4), Supreme Court precedent does not establish a mathematical ratio of 9-to-1 (single-digit) as the benchmark for awards of punitive damages that meet the constitutional requirements of due process. In Gore, 517 U.S. at 574, the

Supreme Court noted, "this is the first case in decades in which we have found that a punitive damages award exceeds the constitutional limit." The Supreme Court ruled that the award of $2 million in punitive damages accompanying a jury verdict of only $4,000 in compensatory damages had a "breathtaking 500 to 1 ratio." Id. at 583. But the Supreme Court emphasized that, although a "comparison" between the jury's compensatory award and its "punitive award is significant," there was no "mathematical formula" for determining which punitive damages awards exceed the constitutional limit of due process. Id. at 581-82.

In Campbell, 538 U.S. at 412, a jury awarded $145 million in punitive damages where full compensatory damages were $1 million. The trial judge reduced the punitive damages award to $25 million, but the State Supreme Court reinstated the jury award. The Supreme Court reversed the State Supreme Court decision upholding the punitive damages award as punishing out-of-state conduct, and held that "[a] State cannot punish a defendant for conduct that may have been lawful where it occurred." Id. at 421. The court remanded for further proceedings to determine a proper amount of punitive damages. Id. at 429. The Supreme Court refused "again to impose a bright-line ratio, which a punitive damages award cannot exceed." Id. at 425. Accord Tronzo v. Biomet, Inc., 236 F.3d 1342, 1349 (Fed. Cir. 2001) ("The unconstitutionality of a large punitive damages award is not predicated on any specific ratio of punitive to compensatory damages"); Rhone-Poulenc Agro v. DeKalb Genetics Corp., 345 F.3d 1366 (Fed. Cir. 2003), reinstating as modified, 272 F.3d 1335 (Fed. Cir. 2001). The Supreme Court has refused to draw any line in the sand as the benchmark for determining whether a jury's award of punitive damages meets the constitutional requirements of due process.

Contrary to ACMI's argument (Pl. Mot. 5), this Court did not impose a forfeiture of claims totaling "$78,467,637.16." In its June 2007 opinion, the Court totaled ACMI's claims as

$54,314,2999.16, but specifically noted our contention that ACMI's claims overlap and are duplicative. Slip op. 9. The $54 million figure included $24,239,864.16 for ACMI's St. Louis Courthouse Phase I claims.[2] However, James Brogan, ACMI's former Executive Vice President, stated in two declarations, dated August 28, 2003, and February 19, 2004, that ACMI filed with this Court, and recently reaffirmed in deposition, the total amount of ACMI's claims for the St. Louis Courthouse Phase I contract is $14,787,096.88. See Oct. 4, 2007 Brogan Dep. at 143-49; A14 (Brogan Dep. Ex. 19); A18 (Brogan Dep. Ex. 21). Mr. Brogan testified that he had compared ACMI's claims and identified those elements that were included in more than one claim. Id. at 147-48. Mr. Brogan also testified that, in his February 19, 2004 declaration, he had recomputed the total amount of ACMI's reinstatement claim relating to the St. Louis Courthouse Phase II contract, which is the claim in Fed. Cl. No. 00-531, and the correct amount was $1,166,628.33, instead of the $1,257,270.00 amount. Oct. 4, 2007 Brogan Dep. at 164-65; A12 (Brogan Dep. Ex. 14); A20 (Brogan Dep. Ex. 21) .

## II. The Government Has Not Waived Any Of Its Remaining Counterclaims

ACMI contends that, in telephone status conferences on April 9, 2007, June 22, 2007, and August 10, 2007, the Court directed Government counsel to identify all portions of its remaining counterclaims that the Government intended to continue to pursue, and that Government counsel failed to do so, except for its Ninth Counterclaim. Pl. Mot. 6-8. ACMI's argument is not supported by the transcripts of these telephone status conferences, and no such question was

---

[2] In its June 2007 opinion, the Court stated the following amounts for ACMI's St. Louis Courthouse Phase I claims: (1) Fed. Cl. No. 06-173, $91,700.00; (2) Fed. Cl. No. 06-174, $417,676.00; (3) Fed. Cl. No. 06-175, $112,244.00; (4) Fed. Cl. No. 06-176, $13,329,355.16; (5) Fed. Cl. No. 06-179, $10,288,889.00. Slip op. 9. These amounts total $24,239,864.16. As noted above, Mr. Brogan testified that ACMI's total claims on the St. Louis Courthouse Phase I contract amount to $14,787,096.88.

asked by the Court. In the status conferences on April 9, 2007, June 22, 2007, and August 10, 2007, the Court did not ask Government counsel to iterate those portions of the Government's counterclaim that the Government wished to continue to pursue. Further, although Government counsel specifically addressed the Ninth Counterclaim in the status conference on June 22, 2007, she never told the Court that the Government was restricting its claims to only the Ninth Counterclaim.

The Court was never "left with the distinct impression that the Government only intended to pursue the Ninth Counterclaim," as ACMI alleges. Pl. Mot. 7. The Court certainly knew that the Government had not decided to pursue only the Ninth Counterclaim and had not relinquished or waived any of its remaining counterclaims, including (1) its FCA counterclaim involving ACMI's false certifications that it had timely paid its subcontractors and its failures to timely pay its subcontractors, (2) its FCA counterclaim that ACMI provided false certifications that the doorframes it provided met the terms and conditions of the St. Louis Courthouse Phase II contract, and (3) its FCA counterclaim relating to ACMI's false charges on change orders, all of which are detailed in the Government's pleadings. ACMI's argument directly contradicts the Court's statements in November 14, 2007 telephone status conference that the issue of whether the Government continues to pursue its remaining counterclaims ought to be reviewed by a high level Department of Justice official, and her request for such consideration. Tr. 10-13. The Court identified Peter Keisler, the former Assistant Attorney General for the Civil Division.[3] Id. Government counsel having made it clear to the Court that the Government had not decided to

---

[3] Mr. Keisler's last day with the Department of Justice was November 21, 2007. However, the Court's suggestion is being raised before other senior officials within the Civil Division.

pursue only the Ninth Counterclaim, ACMI's argument as to its own alleged impressions is irrelevant. Indeed, if ACMI's counsel had any questions concerning the Government's intentions or Government counsel's statements, he could have raised them, but he did not do so.

ACMI also has not demonstrated any waiver based upon Government's counsel's responses in the telephone status conferences held on April 9, 2007, June 22, 2007, and August 10, 2007, because ACMI has not demonstrated any intent on the part of the Government to waive its counterclaims. A waiver is "an intentional relinquishment or abandonment of a known right," Massie v. United States, 166 F.3d 1184, 1190 note (Fed. Cir. 1999). See Citizens Financial Services v. United States, 59 Fed. Cl. 27, 28 (2003) (granting plaintiff's motion to clarify opinion in response to plaintiff's assertion that its counsel's statements were not intended to waive plaintiff's claim). Government counsel does not have authority to waive the Government's counterclaims in this matter. Decisions to bring or relinquish such counterclaims must be made at higher levels in the Department of Justice. See 60 Fed. Reg. 17457 (April 6, 1995).

In any event, ACMI cannot establish a waiver through Government's counsel's responses in the telephone status conferences held on April 9, 2007, June 22, 2007, and August 10, 2007, because ACMI has not demonstrated any possible prejudice resulting from Government counsel's responses. See Northwest Louisiana Fish & Game Preserve Comm., __ Fed. Cl. __, 2007 WL 3277280 (Oct. 31, 2007); First Annapolis Bancorp, Inc. v. United States, 75 Fed. Cl. 280, 288 (2007) (rejecting argument of waiver of affirmative defense that was not pled in answer); Caldera v. Northrop Worldwide Aircraft Servs., Inc., 192 F.3d 962, 970 (Fed. Cir. 1999) (discussing Fed. R. Civ.P. 8(c)); Sanderson-Cruz v. United States, 88 F. Supp.2d 388, 392-93 (E.D. Pa. 2000) (discussing Fed. R. Civ. P. 8(c), rejecting waiver argument in absence of demonstration of prejudice); Parker v. United States, 110 F.3d 678, 682 (9th Cir. 1997)

(Government counsel's failure to assert a defense in its motion was not a waiver); Frenze v. United States, 1986 WL 6856 (E.D. Pa. 1986) (Government counsel's failure to renew an assertion at the trial was not a waiver).

There also is no merit in ACMI's contention (Pl. Mot. 8) that the Government's remaining counterclaims, except for the Ninth Counterclaim, should be dismissed because of the Government's alleged failure to diligently prosecute. ACMI has not demonstrated a lack of diligence on the part of the Government or any prejudice to ACMI. In its October 31, 2007 opinion, the Court detailed the lengthy procedural history of this case and the numerous motions and briefs presented by both parties. Slip op. 1-4. The Court noted its issuance of a Scheduling Order on April 10, 2007 and a revised Scheduling Order on June 22, 2007. Slip op. 3. The Court concluded:

> Likewise, the court rejects Plaintiff's complaints about the Government delay. Since this case was transferred to the undersigned judge on August 15, 2003, the docket evidences no delay by the Government, nor have any such allegations been raised until recently. In any event, Plaintiff has failed to establish any prejudicial delay.

Slip op. 12 n.8.

III. Plaintiff Has Not Demonstrated Any Error In The Court's Decision On Damages

ACMI contends that the Court erred in awarding the Government $259,457.04 pursuant to the Anti-Kickback Act. Pl. Mot. 9-10. ACMI contends that this award was erroneous because (1) the Government was required to make an election of remedies, and (2) the Government elected a remedy under the False Claims Act (FCA) in lieu of a remedy under the Anti-Kickback Act "for the same conduct." Id.

ACMI's argument fails for several reasons. "Preventing 'double . . . recoveries for the same wrong' is the primary purpose of the election of remedies doctrine." United States ex rel. Augustine v. Century Health Services, 289 F.3d 409, 416 (6th Cir. 2002); accord Pennsylvania Nat. Mutual Casualty Ins. Co. v. City of Pine Bluff, 354 F.3d 945, 950 (8th Cir. 2003); Hickson Corp. v. Norfolk S. Ry. Co., 260 F.3d 559, 566-67 (6th Cir. 2001) (election-of-remedies doctrine "is remedial in nature and does no more than prevent double recovery"); Gens v. Resolution Trust Corp., 112 F.3d 569, 573 (1st Cir. 1997).

The election of remedies doctrine applies only in limited circumstances where (1) there are two or more remedies for the same violative conduct; (2) those remedies are inconsistent; and (3) the proponent has made a choice of one of such remedies. United States v. Thomas, 709 F.2d 968, 971 (5th Cir. 1983); 1B Moore's Federal Practice, ¶ 0.405[7], p. 762; see Alexander v. Gardner-Denver, 415 U.S. 35, 49 (1974) (election of remedies doctrine "refers to situations where an individual pursues remedies that are legally or factually inconsistent") (election of remedies did not apply to suits under Title VII); Zimmerman v. Harding, 227 U.S. 489, 493 (1913) ("the essential element of that [election or remedies] rule is that there must have been a right of choice between two remedies which are inconsistent with each other"); Banner Mfg. Co. v. United States, 125 Ct. Cl. 384, 112 F. Supp. 365 (1953) (declining to apply the doctrine); Medcom Holding Co. v. Baxter Travenol Labs., Inc., 984 F.2d 223, 228 (7th Cir. 1993). The rule does not apply when a party has multiple causes of action, nor does it preclude pursuit of consistent remedies, even to final adjudication. Pennsylvania Nat. Mutual, 354 F.3d at 951.

For example, in Thomas, 709 F.2d at 971, the election-of-remedies doctrine was not applicable because even though the United States had sought recovery of its damages through two avenues – an administrative proceeding and a civil action – the remedies it sought were not

inconsistent. The defendants had submitted false or fraudulent statements concerning their eligibility to participate in the 1973 Upland Cotton program. In the administrative proceeding, the Government sought recovery of the subsidy payments it made to defendants pursuant to the program; but Thomas sought and obtained a stay of the administrative proceeding at the State level; thus, the Government never recovered the monies through the administrative proceeding. In its FCA action, the Government asserted the same wrong and sought a consistent remedy, i.e., recovery of the subsidy payments. The Fifth Circuit held that the election-of-remedies defense did not apply, because the Government was not pursuing inconsistent remedies. Id. at 971.

Not only must ACMI demonstrate that the remedies are inconsistent, the election-of-remedies doctrine requires that a party have a choice of two or more remedies for the same violative conduct. ACMI has failed to demonstrate the existence of this requirement here.

For example, in Century Health Services, 289 F.3d at 416-17, the Sixth Circuit rejected the home health care agency's argument that the Government was pursuing inconsistent remedies and was compelled to make an election of remedies between an action under the FCA and an action under the Employee Retirement Income Security Act (ERISA). The Sixth Circuit ruled that, although the Government's ERISA and FCA actions were related, they did "not stem from the same wrong." Id. at 416. The FCA action stemmed from the false claims that defendants had submitted to the Government and the Government sought to recover the monies that it had disbursed in response to defendants' false claims. Id. at 416-17. The ERISA action stemmed from the defendants' failure to compensate the Employee Stock Ownership Plan (ESOP) for the monies that they had withdrawn from the plan. Id. The two actions were "based on different wrongs" and the Government would have had grounds for a FCA action even if defendants had reimbursed the ESOP for the funds that were withdrawn from it. Id. The FCA action was based

on the false certifications that defendants submitted to the Government and the resulting payments made by the Government in response. Id. The Government also would have had grounds for an ERISA lawsuit even if defendants had not submitted false certifications to the Government. Id. Thus, although the causes of action were "interrelated, they arose independently." Id. at 417. The election-of-remedies doctrine was not properly invoked to prevent a double recovery in that case.

Similarly, ACMI has not properly invoked the election-of-remedies doctrine in the context of this case. The election-of-remedies doctrine is not applicable in this case because ACMI engaged in three separate schemes which involved different misconduct. The election of remedies doctrine has no application where separate claims arise from different sets of facts. Century Health Services, 289 F.3d at 416-17.

In its July 2005 opinion, this Court granted the Government's motion for partial summary judgment and held that ACMI had violated the Anti-Kickback Act on four construction contracts that it had with the General Services Administration. Morse Diesel Int'l Inc. v. United States, 66 Fed. Cl. 788, 800-01 (2005). The kickbacks arose from agreements that ACMI and its United Kingdom parent company, Amec, p.l.c., had with ACMI's successive bond brokers (first Willis Corroon, and then AON) whereby the bond brokers split their commissions with Amec, p.l.c. on all AMCI contracts (including the four GSA contracts) in exchange for the right to serve as ACMI's exclusive bond broker. These agreements covered all of ACMI's contracts, not only its Government or GSA contracts. This Court agreed with our argument that this arrangement resulted in illegal kickbacks under the Anti-Kickback Act. In its October 31, 2007 opinion, this Court further found that the amounts of the violative kickbacks on the four GSA contracts were as follows: (1) $14,155.78 on the St. Louis Courthouse Phase I contract; (2) $8,952.00 on the

San Francisco contract; (3) $37,426.74 on the Sacramento Courthouse contract; and (4) $49,194.00 on the St. Louis Courthouse Phase II contract. In each instance, the commission amounts were transferred from ACMI's bond brokers through their United Kingdom parent companies to AMEC, plc.

As the Court found in its January 2007 opinion, ACMI engaged in violations of the FCA separate and apart from its kickbacks. On the St. Louis Phase I contract, ACMI submitted a false certification that it had already paid its bond costs, when it had not done so, and submitted a falsely stamped paid invoice as supporting documentation. Morse Diesel III, 74 Fed. Cl. at 609-12, 24-25, 636. On the San Francisco contract, ACMI submitted a false certification that it had already paid its bond costs, when it had not done so, and submitted a falsely stamped paid invoice as supporting documentation. Id. at 614-15, 619-20, 625-26. On the Sacramento contract, ACMI submitted a false certification that it had already paid its bond costs, when it had not done so, and submitted supporting documentation including a false letter dated September 5, 1995, stating that $517,461 was for payment of the bond amount to the surety broker and that $569,771 was for payment to AMEC plc for the indemnity rendered to the sureties by AMEC, plc. Id. at 615-17, 625, 636. On the St. Louis Phase II contract, ACMI submitted a false certification that it had already paid its bond costs, when it had not done so, and submitted a falsely stamped paid invoice as supporting documentation. Id. at 612-14, 618-19, 625, 627, 636.

In ACMI's other fraud perpetrated to extract additional monies from GSA, ACMI submitted a false certification in support of its second payment application on the St. Louis Courthouse Phase I contract and submitted two false letters dated July 21, 1994 and August 24, 1994, both signed by Norman Critchlow, a senior executive of AMEC Holdings, Inc., one of ACMI's intermediate parent companies, in support of its alleged payment of $118,907 to AMEC

plc for the indemnity AMEC plc rendered to ACMI's sureties. Morse Diesel III, 74 Fed. Cl. at 609-12, 619 n.15, 625, 636. ACMI never made any payment to AMEC plc for the indemnity rendered to the sureties by AMEC, plc. Id. Similarly, on the Sacramento Courthouse contract, ACMI submitted a false certification in support of its first payment application and submitted a false letter dated September 5, 1995, ostensibly signed by Norman Critchlow,[4] in support of its payment of $569,771 to AMEC plc for the indemnity rendered to the sureties by AMEC plc. Id. at 612-13, 615-17, 625, 636. No payment to AMEC plc for the indemnity rendered to the sureties by AMEC, plc was ever made by ACMI. Id.

Thus, as this Court found, ACMI engaged in three different kinds of wrongs, violations of the Anti-Kickback Act on all four GSA contracts, and two other fraudulent schemes in violation of the FCA. The election-of-remedies doctrine is not applicable where a party has demonstrated three separate types of wrongs. Century Health Services, 289 F.3d at 416-17.

The cases cited by ACMI do not demonstrate any error in the Court's October 2007 opinion on damages. Pl. Mot. 9. As this Court recognized, in United States v. Lippert, 148 F.3d 974 (8th Cir. 1998), the Eighth Circuit did not address the circumstances under which damages may be awarded under the FCA and the Anti-Kickback Act. Oct. 31, 2007 Slip op. 8-9. Lippert and his company engaged in a kickback scheme in which their shipping subcontractors paid kickbacks to Lippert and his company and the Government paid the company's shipping invoices which were inflated. The Eighth Circuit summarized the proceedings and noted the district court's statement that the Government's recovery under both the Anti-Kickback Act and the FCA would have been duplicative in that case, and that the Government elected to take an immediate

[4] Kirwin Ford, ACMI's Risk Manager, testified that he actually signed Mr. Critchlow's name to this letter.

judgment under the Anti-Kickback Act for double the amount of the kickbacks and relinquished its right to a trial on its damages pursuant to the FCA. The Eighth Circuit did not discuss the district court's reasoning for finding damages under both acts to be duplicative on the facts of that case. The district court's opinion is unpublished.

Other cases cited by ACMI do not require any different result. In Baldridge v. Hadley, 491 F.2d 859, 863 (10th Cir. 1974), the Secretary of Agriculture affirmed a committee decision that Baldridge had engaged in a fraudulent scheme to evade the limitations placed upon producers who participated in the Conservation Reserve Program under the Soil Bank Act, and that the resulting reserve contracts were void in that they were part of the fraudulent scheme and as a consequence Baldridge was liable for all the monies which had been paid by the Government, or $232,211.10. In a subsequent district court proceeding brought by Baldridge to review the agency decision, the United States added assertions that Baldridge also had violated the FCA and requested FCA damages and penalties. The Tenth Circuit affirmed the district court's ruling that the Government's potential recovery on the FCA action "would be no greater than the recovery already allowed by sustaining the [agency] action." Id. at 865. The district court also noted that had the agency procedure been inadequate to sustain the full recovery of $232,211.10 against Baldridge, the Government would have been entitled to a judgment in that amount on common law fraud. The Government having elected to proceed through the administrative process and obtained a full recovery of all amounts paid in the fraud, the district court ruled that it would be unjust to allow the Government to now pursue the inconsistent remedy of double damages under the FCA. Id. at 865-66. The Tenth Circuit affirmed, holding that both Government claims arose from the identical set of facts and it was unfair to allow the Government to pursue an inconsistent remedy in the district court.

As we demonstrated above, Baldridge is not pertinent, because in this case the Government has challenged three separate schemes of violative conduct. The Anti-Kickback Act violations for which the Court awarded damages and penalties do not involve the identical set of facts that comprise ACMI's fraudulent schemes for which the Court awarded FCA damages and penalties. Rather, the Anti-Kickback Act violation is a separate harm for which Congress has allowed a separate remedy.

In United States v. Temple, 299 F.2d 30 (7th Cir. 1962), the Government first obtained a $381,430.65 judgment upon promissory notes issued for Government loans, which was based upon the borrower's default in payment of the notes. The Government then sought to obtain damages under the FCA based upon the borrower's fraudulent statements in obtaining the loans. These same loans were included in the notes upon which the prior judgment had been entered. The Seventh Circuit held that the Government's FCA action was merged in and barred by the judgment in the prior action on the notes. The court held that the Government had "only a single cause of action" because the "notes represent the loans which were granted by reason of the false and fraudulent statements made by" the borrower. Id. at 32. Thus, the Government having obtained a judgment on its only cause of action was precluded from proceeding with a second action under the FCA. In sum, Temple was a case where the Government had only one cause of action with multiple theories of recovery. Having obtained a judgment based upon one theory of recovery, the Government could not pursue a second action based upon a different theory of recovery for the same cause of action. See also Artis v. Norfolk & Western Railway Co., 204 F.3d 141, 144-46 (4th Cir. 2000) (employee having obtained a settlement under the Federal Employers' Liability Act (FELA) for his injury, was precluded from bringing a second action

under the Longshoremen and Harbor Workers' Compensation Act (LHWCA) for the same injury).

Similarly, where the Government has obtained a full recovery upon its FCA cause of action, common law claims for that same cause of action have been found to be duplicative. United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc., 505 F. Supp.2d 20, 24 (D.D.C. 1007) (declining to enter a finding of liability upon Government claims of unjust enrichment and payment under mistake of fact, because such claims would result in a double recovery, where Government acknowledged that, once its FCA judgment is satisfied, the Government's common law claims would be deemed extinguished). In Bill Harbert Int'l, the district court found that proceeding with a determination of liability upon the common law claims would be an "academic exercise" as "any recovery under them would be duplicative." Id. at 24. That is not the case here, where we demonstrated violative conduct under the Anti-Kickback Act and separate violative conduct under the FCA. See discussion above pp. 14-15.

In Young-Montenay, Inc. v. United States, 15 F.3d 1040, 1043 (Fed. Cir. 1994), the trial court declared a forfeiture of the company's claim under 28 U.S.C. § 2514, and awarded FCA treble damages totaling $147,000 and a statutory penalty of $5,000 for the contractor's fraud in its sixth progress payment request. In footnote 4, the Federal Circuit stated in dicta that the Government "is precluded from further recovery under the Contract Disputes Act," but also stated the issue is "moot" because the Government "has not raised this issue on appeal." Id. at 1043 n.4. The trial court had declined to find a Contract Disputes Act violation based on the alleged unsupported portion of the company's claim, but the Government did not raise the Contract Disputes Act matter on appeal. Id.; 1993 WL 721993. The Federal Circuit decision thus is not precedent on the election of remedies.

In sum, ACMI has failed to demonstrate the required elements of the election of remedies doctrine. Because ACMI has not demonstrated a manifest error of law or mistake of fact, its request for reconsideration should be rejected. Coconut Grove Entm't, Inc. v. United States, 46 Fed. Cl. 249, 255 (2000) (holding a movant must "point to a manifest error of law or mistake of fact").

CONCLUSION

For these reasons, the Court should denied the three requests posed in ACMI's motion for clarification of the Court's October 31, 2007 opinion.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

s/Jeanne E. Davidson
JEANNE E. DAVIDSON
JOYCE R. BRANDA
Directors

PATRICIA R. DAVIS
Assistant Director

s/Domenique Kirchner
DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Fax: (202) 514-8624
Attorneys for Defendant

Of Counsel:
TRACY L. HILMER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice

ERIC L. MILLER
Office of the Inspector General
General Services Administration

DALTON PHILLIPS
CATHERINE CROW
General Services Administration
December 14, 2007