**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AMEC CONSTRUCTION MANAGEMENT, INC.,<br>f/k/a Morse Diesel International, Inc.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | Case No. 99-279 and<br>consolidated cases<br>(Judge Braden) |

**REPLY IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........................................ 1

II. ARGUMENT ........................................ 3

A. The Government's Admitted Failure to Preserve Documents and Resulting Document Destruction Requires Sanctions ........................................ 3

1. The Government's Attempt to Retroactively Limit its Obligation to Preserve Documents Misstates the Law and Highlights its Sanctionable Conduct ........................................ 4

2. The Government's Reckless or Grossly Negligent Culpable State of Mind is Sufficient to Impose Sanctions........................................ 8

3. The Government's Efforts to Re-create Records Demonstrate the Inadequacy of Its Preservation of Relevant Documents for the Last 12 Years ........................................ 10

B. The Government's Sanctionable Conduct Likely Extends to Its Reprocurement Case and Remaining Counterclaims ........................................ 14

III. CONCLUSION........................................ 16

## TABLE OF AUTHORITIES

### CASES

*CP Kelco U.S. Inc. v. Pharmacia Corp.*,
213 F.R.D. 176 (D. Del. 2003) ....................5

*DaimlerChrysler Motors v. Bill Davis Racing, Inc.*,
No. Civ. A. 03-72265, 2005 WL 3502172 (E.D. Mich. Dec. 22, 2005) ....................3

Doe *v. Norwalk Community College*,
No.3:04-CV-1976-JCH, 2007 WL. 2066497 (D. Conn. July 16, 2007)....................8

*First Heights Bank , FSB v. United States*,
46 Fed. Cl. 827 (2000) ....................9

*In re Agent Orange product Liability Litigation*,
506 F. Supp. 750 (E.D.N.Y. 1980) ....................4

*In re Echostar Communications Corp.*,
448 F.3d 1294 (Fed. Cir. 2006)....................9

*In re NTL, Inc. Sec. Litig.*,
244 F.R.D. 179 (S.D.N.Y. 2007) ....................4

*In re Rhone-Poulenc Rorer, Inc.*,
1998 WL. 968489 (Fed. Cir. Dec. 23, 1998) ....................9

*Herman v. Marine Midland Bank*,
207 F.R.D. 26 (W.D.N.Y. 2002)) (Emphasis added....................7

*Jandreau v. Nicholson*,
492 F.3d 1372 (Fed. Cir. 2007)....................3, 8

*Kelley v. United Airlines, Inc.*,
176 F.R.D. 422 (D. Mass. 1997)....................8

*Pueblo of Laguna v. United States*,
60 Fed. Cl. 133 (2004) ....................1

*Reg'l Airport Authority of Louisville v. LFG, LLC*,
460 F.3d 697 (6th Cir. 2006) ....................7

*Residential Funding Corp. v. DeGeorge Finance Corp.*,
306 F.3d 99 (2d Cir. 2002)....................8

*Rogers v. T.J. Samson Community Hospital*,
276 F.3d 228 (6th Cir.2002) ........................................................................................8

*United Medical Supply Co., Inc. v. United States*,
77 Fed. Cl. 257 (2007)........................................................................................1, 4, 8

*United States v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1991)........................................................................................9

*United States v. City of Torrance*,
163 F.R.D. 590 (C.D. Cal. 1995).....................................................................................7

*Wm. T. Thompson Co. v. General Nutrition Corp.*,
593 F. Supp. 1443 (C.D. Cal. 1984) ...............................................................................4

**STATUTES AND OTHER AUTHORITIES**

48 C.F.R. § 4.8 ..........................................................................................................11

Rules of the Court of Federal Claims,
26..........................................................................................................................4
26(a)(2)(B) ............................................................................................................6, 10

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AMEC CONSTRUCTION MANAGEMENT, INC., f/k/a Morse Diesel International, Inc. | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 99-279 and consolidated cases (Judge Braden) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**REPLY IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS**

## I. INTRODUCTION

Plaintiff, AMEC Construction Management, Inc. ("ACMI"), f/k/a Morse Diesel International, Inc., respectfully submits this reply in support of its Motion for Spoliation Sanctions. ACMI renews its request that the Court impose adverse inference and monetary sanctions upon the Government for its failure to preserve documents and the destruction of relevant documents.

The Government's opposition repeats the familiar refrain of a spoliator – that any document destruction is irrelevant. Yet, document destruction is always relevant because it directly impacts the legitimacy of the outcome of every case.[1] The Government's fact witness and expert witness, John Walsh, testified that he routinely destroyed documents related to this

[1] *See, e.g., United Med. Supply Co., Inc. v. United States*, 77 Fed. Cl. 257, 258-59 (2007) ("[a]side perhaps from perjury, no act serves to threaten the integrity of the judicial process more than the spoliation of evidence. . . . To guard against this, each party in litigation is solemnly bound to preserve potentially relevant evidence."); *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135-36 (2004) (issuing preservation order and recognizing that document destruction hinders the administration of justice).

case and that he did not receive any preservation or legal hold notices during the 12-year duration of this case.[2] Additionally, even if the affidavit from DOJ attorney Eric Miller and various unsworn statements in the Government's Opposition are fully credited, those statements only establish that a partial retention of documents was undertaken in a piecemeal and *ad hoc* manner. The Government also makes the rather audacious assertion that it is not bound by the expert disclosure and production obligations of the rules of this Court.[3] The Government's failure to retain all documents and e-mails that Mr. Walsh sent or received since becoming the Government's expert and the Government's five-year withholding of documents, including draft reports and e-mails, generated by Mr. Walsh as an expert witness, are sanctionable.

To cure the prejudice ACMI suffers as a result of the Government's document destruction, this Court should apply an adverse inference and vacate and reconsider the July 2005 and January 2007 summary judgment rulings on liability and its October 2007 summary judgment ruling on the damages amount. In the alternative, the adverse inference warrants a ruling on damages that an interest-only calculation should be used to calculate damages. This Court should also award a monetary penalty, attorneys' fees and costs to ACMI for litigating the spoliation issues.

---

[2] As a GSA auditor on this case since 1995, Mr. Walsh is a fact witness in addition to, at various times, being identified by the Government as an expert witness. As discussed in ACMI's opening Memorandum of Law, in both roles, the Government had an obligation to preserve all potentially relevant and discoverable documents. In this reply, ACMI focuses on Mr. Walsh's role as an expert witness because the law is exceptionally clear that all documents generated by, sent to, or received from experts must be retained and produced.

[3] It strains credulity for the Government to suggest that the Court should announce a rule that a Government auditor can discard any documents that do not directly support audit conclusions. ACMI sincerely doubts that the Government would condone an opposing party's witness discarding documents relating to the case simply because the documents do not support the opposing party's litigation posture.

## II. ARGUMENT

### A. The Government's Admitted Failure to Preserve Documents and Resulting Document Destruction Requires Sanctions.

ACMI has satisfied all three elements of the standard for awarding adverse inference sanctions for the destruction of documents. *Jandreau v. Nicholson*, 492 F.3d 1372, 1375 (Fed. Cir. 2007). First, the Government had an obligation to preserve the documents at the time they were destroyed over the course of the last 12 years of this litigation. Second, the Government permitted the documents to be destroyed with a sufficiently culpable state of mind to warrant an adverse inference because it acted either with bad faith, with recklessness, or with gross negligence. Third, the destroyed documents were relevant to the claims and defenses in this case.

In similar cases, courts have drawn adverse inferences based on even the negligent failure to preserve documents. For example, in *DaimlerChrysler Motors v. Bill Davis Racing, Inc*., No. Civ. A. 03-72265, 2005 WL 3502172, at *2 (E.D. Mich. Dec. 22, 2005), the court drew an adverse inference requiring an instruction to the jury that it may presume that the evidence destroyed would have been favorable to the plaintiff and awarded attorneys' fees and costs where the defendant was negligent in failing to issue preservation instructions. The court noted that a clear showing of prejudice from the document destruction was unnecessary because "[i]t is impossible for plaintiff to identify communications which have been lost, and it would be unfair to insist upon a clear and definite showing of prejudice in light of the fact that [defendant] and its counsel have clearly failed in their obligation to take affirmative steps to prevent the loss of evidence." *Id*. *See also* ACMI's Memorandum of Law in Support of Motion for Sanctions ("Mem."), at 32-36. Courts have imposed adverse inferences even on parties who have issued document preservation instructions, but failed to ensure that employees were regularly reminded

of the preservation notice. *In re NTL, Inc. Sec. Litig*., 244 F.R.D. 179, 182-83, 198, 201 (S.D.N.Y. 2007).

The destroyed documents in this case are important because they may have created disputes of material fact had they been considered on summary judgment, and, in any event, have resulted in this Court and ACMI being prevented from considering this case with a full evidentiary record. The Government's statement that this dispute about document preservation is "largely academic" is belied by case law throughout the country stressing that the violation of the duty to preserve documents in litigation seriously affects the fair administration of justice. *See supra* at note 1. Indeed, this Court has emphasized that "as the enforcer of the laws, the United States should take this duty [to preserve documents for use in litigation] more seriously than any other litigant." *United Med. Supply Co., Inc.*, 77 Fed. Cl. at 274.

**1. <u>The Government's Attempt to Retroactively Limit its Obligation to Preserve Documents Misstates the Law and Highlights its Sanctionable Conduct.</u>**

The Government had a duty to preserve all documents that "it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request." *See, e.g., Wm. T. Thompson Co. v. General Nutrition Corp*., 593 F. Supp. 1443, 1455 (C.D. Cal. 1984); *In re Agent Orange product Liability Litig*., 506 F. Supp. 750, 751 (E.D.N.Y. 1980); RCFC 26. The standard is not preservation only of documents particular lay witnesses believe are "material" to the suit, as Mr. Walsh testified. Walsh Dep. 08/29/07, at 181:18-25 ("If by 'documents' you mean all documents that relate, then, no, I don't have to save all. I have to save anything that's material to the suit or the pending litigation."). Rather, a party must preserve all potentially relevant or discoverable documents.

RCFC 26. Indeed, at least 11 events in this litigation put the Government on notice that it was required to preserve documents, including (but not limited to) the Government's designation of Mr. Walsh to assist in the development of counterclaims in the litigation since at least March 1998.[4] *See* Mem., at 5-6, 22. Even at that early date, Mr. Walsh's involvement in the development of counterclaims was certainly relevant to the discovery that the Government repeatedly asserts was limited to the Government's counterclaims. Thus, all documents Mr. Walsh generated on his own or collected from others related to the counterclaims were potentially discoverable and should have been preserved, even if the Government later attempted to assert a privilege over them.[5]

Of course, as courts have held, once a party waives the privilege by designating a witness as an expert, the waiver cannot be undone or "unwaived" by later withdrawing the expert designation. *See, e.g., CP Kelco U.S. Inc. v. Pharmacia Corp*., 213 F.R.D. 176, 179 (D. Del. 2003) (holding defendant required to produce document that it provide to expert witness notwithstanding that after expert's deposition defendant decided to change designation of the

---

[4] The Government's lengthy discussion of Mr. Walsh's role in the auditing and investigation of the claims against ACMI demonstrates the correctness of ACMI's position. Mr. Walsh found the initial information in May 1995 and as early as December 1995 MDI had initiated law suits at the GSBCA concerning various aspects of the Phase I contract. Despite the Government's current contention that Mr. Walsh's audit activities in 1995 about MDI's actions are so serious that ACMI should forfeit its claims against the Government, no one in the Government found it necessary, in 1995 or for years afterwards, to take any steps to preserve Mr. Walsh's documents or to provide him with preservation instructions.

[5] The Government's reference in its Opposition to miscellaneous documents that it did manage to retain, such as documentation of Mr. Walsh's entrance and exit conferences with MDI and its subcontractors (12/21/07 United States Opposition to Plaintiff's Motion for Spoliation Sanctions ("Opp.") at 23) does not rebut Mr. Walsh's deposition testimony that he routinely destroyed documents, the Government's conceded slapdash efforts to reconstruct relevant documents that should have been produced years ago, or the fact that the Government has not produced a single document evidencing its document preservation efforts.

expert because defendant could not undo its waiver of the privilege that occurred when it provided the documents to the expert). Notably, the Government expressly waived any privilege it now seeks to assert since it previously produced documents such as the March 17, 1998 "Phase II-Action Items" list developed by Mr. Walsh. However, the Government lawyers' failures to issue any preservation instructions and Mr. Walsh's admission that he regularly destroyed documents related to the case establish that many other similarly relevant documents may have been destroyed.

The Government's excuse that it did not need to preserve documents like Mr. Walsh's draft expert reports because ACMI did not specifically request them in discovery is a blatant admission that the Government violated its discovery obligations to preserve all potentially relevant and discoverable documents, whether or not they have been requested in discovery as of the date the document is generated. *See* Opp. at 15. The Government had an obligation under the rules of this Court to produce to ACMI, *without waiting for a specific discovery request*, all documents and communications generated by and sent to and from Mr. Walsh because he was an expert witness for at least five years. RCFC 26(a)(2)(B). All documents considered by, generated by, sent to, or received from Mr. Walsh were unquestionably discoverable under RCFC 26(a)(2)(B). *See also* Mem. at 22-26.

The Government continues to argue, in contravention of the law, that "none of this legal discussion about expert disclosure requirements supports ACMI's claim for adverse inferences or sanctions" because Mr. Walsh did not have to preserve documents that he "considered [] unimportant or immaterial, [because] he did not rely upon it in formulating his reports." Opp. at 29 n. 8. The Government's position that it is somehow immune from the rules of expert disclosure is troubling, to say the least. The Government continues to ignore an

"overwhelming majority" of courts holding that "Rule 26 creates a bright-line rule mandating disclosure of all documents, including attorney opinion work product, given to testifying experts."[6] *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 717 (6th Cir. 2006) (citing *Herman v. Marine Midland Bank*, 207 F.R.D. 26, 29 (W.D.N.Y. 2002)) (Emphasis added); *United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal. 1995) (holding that correspondence between government's counsel and its experts must be disclosed because disclosure of all documents considered by an expert is necessary to assure the independence of an expert's opinion); RCFC 26(a)(2)(B). ACMI is thus undeniably entitled to all documents sent to, received by, or generated by Mr. Walsh, including documents reflecting the Government's theory of the case as communicated to and from Mr. Walsh. Yet, Mr. Walsh admitted that he routinely destroyed communications with Government counsel and others that he determined for himself were "unimportant." Walsh Dep. 08/29/07, at 108:15-183:10.

ACMI cannot comprehend why the Government belatedly asserts a privilege regarding documents and communications it had with Mr. Walsh. *See* Opp. at 28 (stating "such [administrative] emails [between Government counsel and Mr. Walsh] are, in any event, privileged and/or irrelevant"); 33 (stating "Notes taken by Mr. Walsh at the depositions of MDI witnesses in the course of this litigation . . . would be protected by the work product privilege and therefore not discoverable."). Evidently, the Government continues to this day to secretly withhold correspondence with Mr. Walsh based on this privilege assertion even though it never before made this assertion to ACMI in the course of producing documents related to Mr. Walsh's

---

[6] The Government's refrain that ACMI is "bound by its own definition of the relevant scope of discoverable emails" (Opp. at 31) is unavailing and inapposite precisely because the Government has a duty to disclose all documents considered by, generated by, sent to, and received from Mr. Walsh in his role as an expert.

expert reports and has never submitted a privilege log to ACMI containing such documents. Opp. at A403-408, 410-411, 533 (letters transmitting documents produced that do not contain any privilege assertion). The Government's apparent continued failure to produce relevant documents is another basis for ordering adverse inference sanctions and a monetary penalty.

### 2. <u>The Government's Reckless or Grossly Negligent Culpable State of Mind is Sufficient to Impose Sanctions.</u>

The Government's failure to preserve relevant documents is at a minimum grossly negligent or reckless if not in bad faith. Bad faith is not required to warrant sanctions where a party exhibits repeated acts of negligence and recklessness in failing to preserve documents, as is the case here. *See Jandreau*, 492 F.3d at 1375-76 & n.3 (noting circuit split); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002) ("The sanction of an adverse inference may be appropriate in some cases involving the negligent destruction of evidence because each party should bear the risk of its own negligence."); *Rogers v. T.J. Samson Cmty. Hosp.*, 276 F.3d 228, 232 (6th Cir.2002) (negligent conduct may warrant imposition of adverse inference); *United Med. Supply*, 77 Fed. Cl. at 270-71 (holding repeated acts of gross negligence may warrant the same sanction as a single act committed in bad faith); *Kelley v. United Airlines, Inc.*, 176 F.R.D. 422, 428 (D. Mass. 1997) (adverse inference based on negligent destruction of documents); *Doe v. Norwalk Cmty. Coll.,* No.3:04-CV-1976-JCH, 2007 WL 2066497, at *5, *8 (D. Conn. July 16, 2007) (unpublished opinion) (holding failure to institute litigation hold at least grossly negligent, if not reckless and warranted imposition of an adverse inference jury instruction). The repeated failure to issue preservation instructions establishes a level of recklessness that merits the imposition of an adverse inference from the resultant spoliation of evidence. Mr. Walsh conceded that he did not receive any preservation instructions for 12 years -- until two months after ACMI discovered his failure to retain relevant documents

in his May 4, 2007 deposition. Walsh Dep. 08/29/07, at 163:15-20; 165:12-25; 210:10-16; 230:2-12 (attached as Ex. 5 to Mem.). The Government has still put forth no evidence to contradict that admission.

Instead, the Government engages in further misfeasance by expressly relying on its assertion of privilege for purported document preservation instructions as both a sword and a shield. Opp. at 34. The law is well-established that the Government is not permitted to use the privilege as a sword to buttress its position that it retained all relevant documents and as a shield to prevent ACMI from evaluating the preservation instructions at issue. *See, e.g., In re Echostar Communications Corp.*, 448 F.3d 1294, 1301, 1303 (Fed. Cir. 2006); *In re Rhone-Poulenc Rorer, Inc.*, 1998 WL 968489, at *2 (Fed. Cir. Dec. 23, 1998) (unpublished) (citing *U.S. v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) and stating "a litigant implicitly waives the attorney client privilege when 'assert[ing] a claim that in fairness requires examination of protected communications.' In short, the attorney-client privilege 'cannot at once be used as a shield and a sword.'"); *First Heights Bank , FSB v. United States*, 46 Fed. Cl. 827, 830 (2000). The Government's repeated refusal to produce the documents relating to its asserted preservation instructions precludes it from now using those documents as a shield to avoid the sanctions justified by its wrongful conduct.

Moreover, the Government repeatedly failed to tell Mr. Walsh that his status as an expert was relevant to whether he was required to retain documents, despite the well-established rules of this Court and courts around the country that experts must retain and produce all documents and correspondence generated in their capacity as an expert, even correspondence between the expert and counsel. *See supra* at 5-7; Walsh Dep. 05/04/07, at 102:11-21. The law cannot be clearer that Mr. Walsh's expert status makes all of his documents and correspondence

relevant and discoverable. Even assuming that the Government properly executed its GSA OIG e-mail retention policy, the Government's failure at any time between at least 1999 and July 2007 to instruct Mr. Walsh to retain e-mails renders that policy merely empty verbiage. *See* Walsh Dep. 08/29/07, at 197:22-198:20; 209:22-210:26; 241:6-242:3.

Mr. Walsh's testimony that he regularly deleted e-mails that he believed "weren't of importance," even though they admittedly related to a case in which he is both a fact witness and designated expert, fatally undermines the legitimacy of any e-mail retention policy the GSA OIG office had for archiving whatever e-mails were contained in a user's inbox at the end of every 30-day period. *See* Walsh Dep. 05/04/07, at 102:11-21 (attached as Ex. 1 to Mem.). Mr. Walsh's admitted routine deletion of e-mails related to the case means that many, if not all, of those e-mails were already deleted and thus not present in his inbox to be archived at the end of the 30-day period. Mr. Walsh specifically testified that "I believe that any e-mail I deleted would not have been archived." Walsh Dep. 08/29/07, at 231:13-236:7. The Government's repeated failure to adequately preserve documents, despite at least 11 events putting the Government on notice of its preservation obligations over the past 12 years, not to mention its obligation under the rules of this Court, is worthy of the serious sanctions ACMI requests.

### 3. **The Government's Efforts to Re-create Records Demonstrate the Inadequacy of Its Preservation of Relevant Documents for the Last 12 Years.**

The Government's deliberate misapprehension of the relevance of documents and communications that its expert witness generated, received, and sent should cause this Court grave concern. The law is clear that all documents considered or generated by and communications received by and sent to expert witnesses are discoverable and thus relevant. RCFC 26(a)(2)(B); *see* discussion *supra* at 5-7. After all, the Government belatedly produced

draft expert reports and some correspondence with Mr. Walsh at ACMI's request without asserting any relevance or privilege objection. *See, e.g.*, Opp. at A403-23, A533-629. In fact, Government counsel concedes that the Government produced over 300 pages of additional documents relating to Mr. Walsh's expert reports in late May, July, and August 2007, after asserting in a May 3, 2007 letter to ACMI's counsel that "all of the documents that Mr. Walsh has reviewed have already been made available to plaintiff in the litigation." 05/03/07 Letter from D. Kirchner to K. Behre (attached to Opp. at A406); Opp. at 28. Clearly that blanket assertion was false. Notably, after stating in an April 24, 2007 letter to ACMI's counsel that "[w]e have not found any drafts of the May 2002 damages report," four months later on August 24, 2007 the Government produced a February 6, 2002 draft of the May 2002 expert report, which "Mr. Walsh [] found." *See* 08/24/07 Letter from D. Kirchner to K. Behre (attached to Opp. at A403); Opp. at A533.

The Government's belated, and in essence anecdotal, declaration of Eric Miller and unsupported statements regarding the supervision of the document production process and vague references that Government counsel "checked to ensure that GSA was continuing to preserve documents" do not cure the destruction of relevant documents that occurred. *See* Opp. at 17; A669-70. Indeed, Mr. Miller's statements and the unsworn assertions in the Government's Opposition serve to highlight the Government's catch-as-catch-can document retention efforts, or lack thereof, in this case. Indeed, the Federal Acquisition Regulation 4.8 cited by the Government relates only to "contract files," and does not cover other types of documents relating to litigation or expert witnesses. *See* 48 C.F.R. § 4.8 "Government Contract Files." Instead of instituting and following any "normal procedures" (Opp. at 34) regarding document preservation and sending appropriate document preservation instructions, the Government apparently just

waited 12 years and then, when confronted with its document destruction, cobbled together whatever documents it could find by searching various computers and CD-roms for documents that it failed to produce years ago. The Government states that Government counsel and Mr. Walsh conducted no less than four different "searches" for relevant e-mails from April through August 2007:

> 1. a "search for emails and related draft reports of Mr. Walsh" prior to his May 4, 2007 deposition, resulting in documents "located by Department of Justice attorneys" and one draft 2002 report "found by Mr. Walsh" on a CD-rom disk;
>
> 2. a search after the May 4, 2007 deposition, resulting in the Government's production on May 25, 2007 of additional e-mails and related draft reports that had been retained by GSA OIG attorney Eric Miller;
>
> 3. a further production on July 27, 2007 after unidentified "Department of Justice attorneys also located additional emails and related draft reports";
>
> 4. a further production on August 24, 2007 after "Mr. Walsh did another search of his Government computer, including his archives email folder, and also the CDRom disc" in which "Mr. Walsh located additional emails and related drafts of his expert reports . . . not found in his earlier search" but which included correspondence with Government counsel dated in 2002 and 2004.

Opp. at 18-20. Apparently, the Government is asserting that repeated searches (undertaken at least as many as five years after the documents were created) by various DOJ attorneys and witnesses – searches undertaken only after spoliation allegations are raised by an opposing party – for documents that may be contained on various computers and CD-roms, punctuated by obviously inadequate searches that did not turn up documents that were later discovered, is consistent with adequate document preservation procedures.[7] Such a process clearly would not

---

[7] The Government's assertion that ACMI's Motion for Spoliation Sanctions is untimely is completely without merit. ACMI raised its concerns over spoliation of documents with the Government immediately upon learning of John Walsh's conduct during his deposition on May

(continued...)

be sufficient to fulfill document preservation obligations under any case law or court rules of which ACMI is aware. Under these circumstances, the Government should not be not entitled to any presumption that it acted responsibly and in good faith.

The fact that Mr. Miller states that he preserved e-mails that he sent to or received from Mr. Walsh, Ms. Hilmer, and Ms. Kirchner is hardly an adequate document preservation protocol. *See* Opp. at A669-70. To ACMI's knowledge, Ms. Hilmer and Ms. Kirchner have not produced their e-mail files of correspondence with Mr. Walsh, if such files still exist. And Mr. Walsh admitted to deleting any e-mails relating to his work as an expert over at least a five-year period that he deemed "unimportant." Walsh Dep. 05/04/07, at 102:11-21. Obviously, those e-mails could have been sent to or received from persons other than Mr. Miller.

Mr. Walsh's new declaration further demonstrates the Government's failure to produce all relevant and discoverable documents to ACMI. *See* Opp. at A680-714. Four months after his most recent deposition, Mr. Walsh makes a second attempt to correct his deposition testimony by submitting a declaration asserting that he did retain some handwritten notes in storage in Kansas City in 1999, despite testifying that he did not know whether he had retained his handwritten notes. Walsh Dep. 08/29/07, at 171:20-172:5; 199:11-19; 199:24-200:14. Mr. Walsh's notes taken while attending "many depositions" of witnesses in the ACMI litigation evidently were definitely destroyed, as they are not attached to his new declaration. Walsh Dep.

---

(...continued)

4, 2007. ACMI also requested the Court's assistance in reopening Mr. Walsh's deposition after he submitted an errata sheet that changed his deposition testimony. ACMI's decision to clarify the facts relating to the spoliation before filing a motion for sanctions arising from that conduct makes ACMI's Motion for Spoliation sanctions accurate and complete, not untimely as the Government alleges.

08/29/07, at 239:14-240:5. As an expert witness, those notes are discoverable and should have been preserved and produced by the Government to ACMI. *See supra*, at 5-6. Additionally, Mr. Walsh's deposition notes are directly relevant to his expert reports because in his expert report Mr. Walsh expressly identified depositions of ACMI witnesses as information he relied on in forming his opinions. *See, e.g.*, Opp. at A568, 579, 588, 596, 605, 613, 621. Accordingly, the Government's failure to require Mr. Walsh to preserve those notes warrants sanctions.

**B. <u>The Government's Sanctionable Conduct Likely Extends to Its Reprocurement Case and Remaining Counterclaims.</u>**

As ACMI stated in its opening Memorandum of Law, sanctions are also appropriate because the Government's failure to preserve documents likely extends to documents relevant to the Government's asserted remaining counterclaims in this case (Ninth Counterclaim for violation of the Contract Disputes Act and counterclaims related to doorframes, Prompt Payment Act, and change orders)[8] and to the excess reprocurement cost case, Case No. 06-867. *See* Mem. at 37-38. Without additional discovery, including depositions, regarding the Government's document retention related to those counterclaims and the excess reprocurement case, it is impossible for ACMI to know the exact scope of spoliation that likely occurred for documents related to those claims.

Three known facts demonstrate that the Government's failure to preserve relevant documents likely pervades all of its claims against ACMI. First, it is known that the Government failed to instruct Mr. Walsh to preserve documents for a period of 12 years and, notably, failed to

---

[8] ACMI does not, by referring to these remaining counterclaims, waive its argument that the Government has waived the remaining counterclaims except the Ninth Counterclaim by failing to diligently litigate those claims. *See* 11/27/07 Motion for Clarification (Docket Entry 296).

instruct Mr. Walsh to preserve any e-mails. Second, it is known that Mr. Walsh routinely deleted documents and e-mails that he believed were "unimportant" without regard for the Government's discovery obligations under the rules of this Court. Third, it is known that Mr. Walsh is a key witness, and a likely expert witness, in all of the Government's asserted remaining counterclaims and in the excess reprocurement case because Mr. Walsh's name and documents have been referenced by the Government in all of its remaining claims.

Regarding the Prompt Payment Act counterclaim, on January 30, 2007, the Government provided the Court with documents regarding its counterclaim relating to MDI payment to subcontractors in response to the Court's inquiry. Docket Entry 249 (attached as Ex. 1). Those documents included Mr. Walsh's May 2002 "Report re MDI payments to subcontractors included in fraud counterclaim" and September 19, 2002 "Correction Sheet for Mr. Walsh's report." *See* Appendix to Docket Entry 249, at Volume 1, pages 1-43. Additionally, Mr. Walsh's draft expert reports include a section concerning "damages for failure to pay subcontractors." *See* Opp. at A416-19, 132-172, 538-41.

Regarding the Ninth Counterclaim, the Government identified Mr. Walsh as a witness with knowledge about the Ninth Counterclaims, and referred specifically to Mr. Walsh's audit workpapers, documents and e-mails in its December 21, 2007 Response to Plaintiff's Interrogatories in Connection with the Ninth Counterclaim and its January 7, 2008 Response to Plaintiff's Request for Production of Documents in Connection with the Ninth Counterclaim. *See* 12/21/07 Defendant's Responses to Plaintiff's Interrogatories in Connection with the Ninth Counterclaim, at 5, 8, 11 (attached as Ex. 2); 01/07/08 Defendant's Responses to Plaintiff's Request for Production of Documents in Connection with the Ninth counterclaim, at 3-9. *see also* Opp. at A674.

Regarding the still-ambiguous counterclaim relating to change orders, Mr. Walsh's draft expert reports include a section concerning "damages for overcharges on change order work." *See* Opp. at A420-21, 542-43, 563-67, 577-78, 587, 595, 603-4. Regarding the doorframes counterclaim, Mr. Walsh's draft expert reports include a section concerning "defective doorframe damages." *See* Opp. at A419-20, 541-52, 562-67.

Regarding the excess reprocurement cost case, the Government identified Mr. Walsh as a witness in its September 6, 2007 Preliminary List of Witnesses and Documents. 09/06/07 Defendant's Preliminary List of Witnesses and Documents, at 22. (attached as Ex. 3).

Mr. Walsh's draft reports and the Government's filings with this Court establish that the Government worked with Mr. Walsh as a fact witness and expert witness in developing, investigating, and reporting on the facts, analysis, and damages relating to its remaining counterclaims and the excess reprocurement cost claim. Mr. Walsh's investigation, analysis, and opinions relating to those claims are unquestionably directly relevant to the litigation of those claims. Once again, therefore, the Government's failure to preserve all of Mr. Walsh's documents and correspondence prejudices ACMI in each and every aspect of the remaining counterclaims and excess reprocurement cost case going forward. The Government's wide-ranging document destruction in these cases is more than sufficient for the serious sanctions that ACMI requests. *See* Mem. at 32-35 (citing similar cases awarding sanctions).

## III. CONCLUSION

For the foregoing reasons, the Court should draw an adverse inference against the Government that all documents destroyed would have been favorable for ACMI on the issues of liability and damages. Accordingly, the Court should vacate and reconsider its July 2005 and

January 2007 decisions on liability and the October 2007 decision on damages in light of the adverse inference. Alternatively, the Court should apply an adverse inference solely to the damages issues and adopt ACMI's damages calculation theory of time-value of money.

Additionally, ACMI requests that the Court impose a monetary penalty of an appropriate deterrent amount on the Government and award ACMI its attorney's fees and costs incurred in uncovering and litigating the spoliation issues.

Respectfully submitted,

s/ James D. Wareham

James D. Wareham
Attorney of Record for Plaintiff
Kirby D. Behre
Danielle W. Pierce
Paul, Hastings, Janofsky & Walker LLP
875 Fifteenth Street, N.W.
Washington, D.C. 20005
Tel: 202-551-1728
Fax: 202-551-0128

Date: January 11, 2008

LEGAL_US_E # 77847593.5

**CERTIFICATE OF SERVICE**

I hereby certify that this 11th day of January 2008 I caused a copy of the foregoing Motion to be served by electronic mail (via ECF) upon counsel for the Defendant as follows:

Dominique Kirchner
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530

Tracy L. Hilmer
Civil Division
U.S. Department of Justice
601 D Street, N.W.
P.O. Box 261 Ben Franklin Station
Washington, DC 20044

s/ Kirby D. Behre
Kirby Behre