# EXHIBIT 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MORSE DIESEL INTERNATIONAL, INC., d/b/a/ AMEC CONSTRUCTION MANAGEMENT, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 99-279C and consolidated cases (Judge Braden) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S FILING OF DOCUMENTS REGARDING ITS COUNTERCLAIM RELATING TO MDI PAYMENTS TO SUBCONTRACTORS

Pursuant to the Court's request on January 3, 2007, defendant, the United States, respectfully is filing the majority of documents regarding its counterclaim relating to payments made by Morse Diesel International, Inc. ("MDI") to subcontractors. The documents filed today include portions of the pay applications that were requested by the Court, including the certifications made by MDI on GSA Form 2419, Certification of Progress Payments Under Fixed-Price Construction Contracts. E.g., A134, 158, 183, 211, 232, 285, 310, 400, 455, 519, 552, 585, 679d, 689, 710, 747, 774,798, 820, 841, 877, 917, 946, 980, 1015, 1053, 1086, 1199, 1231, 1269, 1307, 1347, 1396, 1442, 1494, 1539, 1609, 1715, 1738.[1] In addition, the Government possesses other documents and deposition testimony that support its counterclaim. The Government respectfully requests that the

[1] "A_" refers to the Appendix of Documents filed herewith as requested by the Court.

Court also address this matter in the status conference scheduled for February 8, 2007. Also, with the Court's permission, the Government will proceed to file additional documents, excerpts from deposition testimony, and a motion for summary judgment addressing this portion of its counterclaim.

MDI's contracts with the General Services Administration ("GSA") included Federal Acquisition Regulation 52.232-27 (Apr. 1989), Prompt Payment for Construction Contracts, which required, inter alia, that a contractor include in all subcontracts for property or services under the Federal contract:

> A payment clause which obligates the Contractor to pay the subcontractor for satisfactory performance under its subcontract not later than seven days from receipt of payment out of such amounts as are paid to the Contractor under the contract.

A46, 51e (emphasis added).

GSA Form 2419, Certification of Progress Payments Under Fixed-Price Construction Contracts, which MDI submitted to GSA with each progress payment application under the contracts, required MDI to certify that:

> (1) The amounts requested are only for performance in accordance with the specifications, terms, and conditions of the contract;
>
> (2) Payments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with subcontract agreements and

> the requirements of Chapter 39 of Title 31, United States Code; and
>
> (3) This request for progress payments does not include any amounts which the prime contractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract.

A50, 51b. This certification was required by the Prompt Payment Act, 31 U.S.C. § 3903(b)(1), and its implementing Federal Acquisition Regulation ("FAR") 52.232-5, entitled "Payments under Fixed-Price Construction Contracts.. A50, 51b. As the FAR language above provides, in order for MDI to receive payment from GSA, it was required to certify that it had performed work required by the contract, and that its subcontractors and suppliers had been paid from past progress payments and would be timely paid from funds received from the current payment, in accordance with subcontractor agreements, FAR 52.232-27, and the Prompt Payment Act. As required by FAR 52.232-27, MDI's certifications also stated that MDI had not requested monies from GSA that it intended to withhold from subcontractors or suppliers. Id.

As this Court held in Lamb Engineering & Constr. Co. v. United States, 2002 WL 32933387 (Aug. 26, 2002)(Lamb I):

> FAR 52.232-27(c)(1), in turn, requires a contractor to pay a subcontractor for satisfactory performance within seven days of receiving payment from [the Government]. 48 C.F.R. § 52.232-27(c)(1). Consequently, by certifying these billings, Lamb was promising

> that it had paid its subcontractors from previous payments received from [the Government] under the contract and would pay subcontractors in a timely fashion (i.e., within seven days of receiving payment from [the Government]).

In that case, the Court also held that, for purposes of the False Claims Act, 31 U.S.C. § 3729(a)(2)[2], "a contractor is deemed to have known that a claim it submitted was false if it had (1) actual knowledge of the falsity of the claim; if it (2) acted in deliberate ignorance of the truth or falsity of the claim; or (3) acted in reckless disregard of the truth or falsity of the information." Lamb Engineering & Constr. Inc. v. United States, 58 Fed. Cl. 106, 110 (2003)(Lamb II)(citing 31 U.S.C. § 3729(b)). "No proof of specific intent to defraud is required." Id. The Court emphasized that a party:

> filing a claim before the contracting officer and this court has a duty to examine its records to determine what amounts the government already has paid or whether payments are actually owed to subcontractors or vendors...[A] failure to make a minimal examination of records constitutes deliberate ignorance or reckless disregard, and a contractor that deliberately ignored false information submitted as part of a claim is liable under the False Claims Act.

Lamb I, relying on UMC Elec. Co. v. United States, 43 Fed. Cl.

---

[2] Pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(2), "[a]ny person who knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government . . . is liable" to the Government for treble damages and civil penalties.

776, 794 (1999). In Lamb II, the Court further stated:

> Congress specifically rejected requiring a specific intent to defraud under the False Claims Act. See 31 U.S.C. § 3729(b). Instead, it adopted a knowing standard, defined as actual knowledge of the falsity, acting in deliberate ignorance of the truth or falsity, or acting in reckless disregard of the truth or falsity. Id. The standard was designed to address the problem of the ostrich-like refusal to learn of information which an individual, in the exercise of prudent judgement, had reason to know. See S.Rep. No. 99-345, at 21 (1986), [reprinted in] 1986 U.S.C.C.A.N. 5266, 5286. Thus, the statue covers not just those who set out to defraud the government, but also those who ignore obvious warning signs.

Lamb II, 58 Fed. Cl. at 110 (quoting UMC Elec. Co., 43 Fed. Cl. at 793).

In its counterclaim, the United States asserts that despite the regulatory and contractual requirements cited above, and despite certifying on each progress payment application that MDI had complied with those requirements, MDI on a regular basis withheld payments from subcontractors and suppliers, and made payments to subcontractors more than seven days after the Government had paid MDI for the work performed by the subcontractors. The Government also asserts that MDI used its false statements that it (1) had paid past subcontractor and supplier invoices, and (2) would pay current invoices from the proceeds of progress payments, to obtain payment from GSA. Indeed, as set forth above, FAR 52.232-5 clearly provided that

the Government would not pay a contractor unless it made such a representation on its invoices. The Government asserts that the statements were false because, MDI had not paid subcontractor and supplier invoices from the prior invoicing period, and did not pay some for the current period. According to FAR 52.232-27, entitled "Prompt Payment for Construction Contracts," which implements the Prompt Payment Act, 31 U.S.C. § 3905(b)(1), MDI was required to pay its subcontractors and material suppliers within seven days of receipt of payment from the Government for the invoice.

As noted above, with the Court's permission, the United States respectfully will proceed to file additional documents, deposition testimony, and a motion for summary judgment on this portion of its counterclaim. The United States also respectfully requests that the Court address this matter at the status conference scheduled for February 8, 2007.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
MICHAEL F. HERTZ
Directors

Bryant G. Snee by Dominique Kirchner

BRYANT G. SNEE
PATRICIA R. DAVIS
Assistant Directors

Domenique Kirchner
DOMENIQUE KIRCHNER
Senior Trial Counsel
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Fax: (202) 514-8624
Attorneys for Defendant

Of Counsel:
TRACY L. HILMER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice

ERIC L. MILLER
Office of the Inspector General
General Services Administration

DALTON PHILLIPS
General Services Administration

January 30, 2007

CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that on this 30th day of January, 2007, I caused to be served by hand copies of the foregoing "DEFENDANT'S FILING OF DOCUMENTS REGARDING ITS COUNTERCLAIM RELATING TO MDI PAYMENTS TO SUBCONTRACTORS" and the accompanying Appendix-Volumes I through VI, addressed as follows:

JAMES D. WAREHAM
Paul, Hastings, Janofsky & Walker LLP
875 Fifteenth Street, N.W.
Washington, D.C. 20005