# EXHIBIT 2

UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMEC CONSTRUCTION MANAGEMENT, INC., f/k/a Morse Diesel International, Inc., Plaintiff, | ) | |
| v. | ) | No. 99-279C et al. (Judge Braden) |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S INTERROGATORIES
IN CONNECTION WITH THE NINTH COUNTERCLAIM

In accordance with Rule 33 of the United States Court of Federal Claims, defendant provides the following responses to plaintiff's interrogatories in connection with the Ninth Counterclaim, dated October 22, 2007.

GENERAL OBJECTIONS:

1. Defendant objects to plaintiff's interrogatories to the extent that they seek to impose upon defendant any requirements beyond those established by the Rules of this Court.

2. Defendant objects to plaintiff's discovery of information or documents to the extent that it extends beyond the U.S. General Services Administration and its employees or agents.

3. Defendant objects to plaintiff's interrogatories to the extent that they seek discovery of information or documents that extend beyond the Ninth Counterclaim.

4. Defendant further objects to plaintiff's interrogatories to the extent that they seek legal conclusions and/or disclosure of any information protected by the attorney-client privilege, the investigatory privilege, the deliberative process or executive privilege, the attorney work-product doctrine, and Rule 26(b)(2). Each of the following specific responses and objections incorporates the general responses and objections set forth herein.

Defendant's Responses

1. Describe in detail all meetings or communications between the Government and Beck Steel relating to the St. Louis Phase II contract.

RESPONSE: Defendant incorporates the general objections stated above. We also object because the interrogatory is not reasonably calculated to lead to the discovery of relevant evidence. Without waiving our objections, GSA previously produced St. Louis Courthouse Phase II ("Phase II") contract documents which contain information relating to Beck Steel and its communications with GSA. See also documents produced with our response to plaintiff's request for production of documents relating to the Ninth Counterclaim. In addition, defendant's counsel Domenique Kirchner had conversations with Beck Steel's attorney, Terry Salazar, with regard to the Government's subpoena duces tecum to Beck Steel dated August 31, 2005, and Beck Steel's response. Those conversations focused upon whether Beck Steel would charge the Government for the cost of copying the documents that it produced and whether the Government would pay such copying costs. Beck Steel did not charge the Government costs for copying the documents that it produced.

2. Identify each and every person who has knowledge about the Government's review or investigation relating to the Ninth Counterclaim or the events forming the basis for the Ninth Counterclaim. For each named person state with specificity:

(a) The individual's role in the review or investigation of the Ninth Counterclaim or the events forming the basis for the Ninth Counterclaim.

(b) The amount of time the individual spent reviewing or investigating the Ninth Counterclaim or the events forming the basis for the Ninth Counterclaim.

(c) The time period during which that individual conducted his review or investigation of the Ninth Counterclaim or the events forming the basis for the Ninth Counterclaim.

(d) The wage or salary of that individual.

(e) The portion of costs the Government intends to claim for that individual's labor in reviewing or investigating the Ninth Counterclaim or the events forming the basis for the Ninth Counterclaim.

(f) All additional costs besides labor that were incurred by this individual in reviewing or investigating the Ninth Counterclaim or the events forming the basis for the Ninth Counterclaim.

RESPONSE: Defendant incorporates the general objections stated above. Defendant also objects because the interrogatory is ambiguous and confusing and we are uncertain what information plaintiff is requesting. Without waiving our objections and assuming that plaintiff's interrogatory is limited to the Government's review and investigation:

Domenique Kirchner
(a) Department of Justice ("DOJ") trial attorney; investigation and review
(b) not applicable ("N/A")
(c) November 2003
(d) N/A
(e) None
(f) N/A

Tracy Hilmer
(a) DOJ trial attorney; review
(b) N/A
(c) November 2003
(d) N/A
(e) None
(f) N/A

Robert Kirschman
(a) former Assistant Director, Commercial Litigation Branch, Civil Division; review
(b) N/A
(c) November 2003
(d) N/A

(e) None
(f) N/A

David Cohen
(a) former Director, Commercial Litigation Branch, Civil Division, DOJ; review
(b) N/A
(c) November 2003
(d) N/A
(e) None
(f) N/A

Michael Hertz
(a) Deputy Assistant Attorney General, DOJ; review
(b) N/A
(c) November 2003
(d) N/A
(e) None
(f) N/A

Stephen Altman
(a) former Assistant Director, Commercial Litigation Branch, Civil Division, DOJ; review
(b) N/A
(c) November 2003
(d) N/A
(e) None
(f) N/A

Peter Keisler
(a) former Assistant Attorney General, Civil Division, DOJ; review
(b) N/A
(c) November 2003
(d) N/A
(e) None
(f) N/A

Kathleen Tighe
(a) former Counsel to the Inspector General, GSA, Washington, DC; review
(b) N/A
(c) November 2003
(d) N/A
(e) None
(f) N/A

Eric Miller
(a) GSA Office of Inspector General (OIG) counsel, Chicago, IL; review
(b) N/A
(c) November 2003
(d) N/A
(e) None
(f) N/A

John Walsh
(a) GSA OIG auditor, Kansas City, MO; investigation
(b) N/A
(c) November 2003
(d) N/A
(e) None
(f) N/A.

3. Identify and describe in detail each and every element of costs incurred by the Government in reviewing and investigating the Ninth Counterclaim or the events forming the basis for the Ninth Counterclaim.

RESPONSE: Defendant incorporates the general objections stated above. Without waiving our objections, the Government incurred the costs of its attorneys' review and investigation of the Ninth Counterclaim and the costs of GSA OIG auditor John Walsh's investigation of the Ninth Counterclaim. See response to interrogatory no. 2 above. The Government also incurred costs relating to the subpoena duces tecum it issued to Beck Steel and the deposition of James Brogan. The cost of the deposition transcript was $954.57.

4. Identify and describe in detail each and every element of monetary damages the Government intends to seek in connection with the Ninth Counterclaim.

RESPONSE: Defendant incorporates the general objections stated above. Without waiving our objections, pursuant to the Contract Disputes Act, 41 U.S.C. § 604, the Government seeks the "unsupported part" of the claim. The unsupported part of the claim amounts to $321,065 minus

$240,000 (the amount MDI actually paid to Beck Steel), which equals $81,065, plus MDI's markups. MDI's James Brogan computed that total amount as $90,651.67, or $81,065 plus markups of $9,596.67. See October 4, 2007 Brogan Deposition transcript, p. 165. The Government also incurred costs relating to the subpoena duces tecum it issued to Beck Steel and the deposition of James Brogan. The cost of the deposition transcript was $954.57.

5. Identify and describe in detail each and every element of relief (other than the monetary damages described in the response to Interrogatory 4) the Government intends to seek arising out of or in connection with the Ninth Counterclaim.

RESPONSE: Defendant incorporates the general objections stated above. Without waiving our objections, the Government also sought forfeiture of MDI's claims. On January 26, 2007, the Court declared ACMI's August 30, 2001 claim and its other claims to be forfeited. The Government also seeks applicable penalties under the False Claims Act and applicable court costs including the costs of James Brogan's deposition. The cost of the deposition transcript was $954.57.

6. Identify and describe in detail each and every element of attorneys' fees incurred by the Government in investigating or reviewing the Ninth Counterclaim or the events forming a basis for the Ninth Counterclaim, including a detailed description of the Government's calculation of the amount of attorney time worked and fees allocated by the Government to review and investigation of the Contract Disputes Act.

RESPONSE: Defendant incorporates the general objections stated above. Without waiving our objections, the Government is not seeking recovery of its attorneys' fees relating to the Ninth Counterclaim. See response to interrogatory no. 2.

7. Identify and describe in detail the dates of all meetings regarding the Government's investigation and review of the Ninth Counterclaim or the events forming the basis for the Ninth Counterclaim. Identify all individuals who were in attendance at these meetings and describe in detail all communications that occurred at these meetings.

RESPONSE: Defendant incorporates the general objections stated above. Without waiving our objections, defendant does not recall any meetings regarding the Government's investigation and review of the Ninth Counterclaim and does not believe that there were any meetings.

8. Identify all persons involved in any way in drafting, reviewing, revising, calculating, commenting on, concurring with, approving, or approving for legal sufficiency each and every decision and/or repayment demand issued by the GSA Contracting Officer relating to the Ninth Counterclaim, including but not limited to the June 24, 2002 letter and final decision.

RESPONSE: Defendant incorporates the general objections stated above. We also object because the interrogatory is ambiguous and confusing and also overbroad and is not reasonably calculated to lead to the discovery of relevant evidence. Without waiving our objections, there were no decisions or repayment demands issued by the GSA Contracting officer relating to the Ninth Counterclaim. The June 24, 2002 letter and final decision of the contracting officer was not related to the Ninth Counterclaim.

9. Identify and describe in detail all information and discussions relating to any reports and audits relating to the Ninth Counterclaim and/or Beck Steel, including but not limited to reports and audits by John Walsh and employees of the GSA Office of Inspector General.

RESPONSE: Defendant incorporates the general objections stated above. We also object because to the extent that the interrogatory refers to information and discussions relating to any

reports and audits relating to Beck Steel generally, the interrogatory is overbroad and not reasonably calculated to lead to the discovery of relevant evidence. Without waiving our objections, there were no audits or similar reports related to the Ninth Counterclaim and the Beck Steel component of the Ninth Counterclaim. We have produced John Walsh's record of a telephone conversation with Beck Steel on November 17, 2003. GSA previously produced the GSA OIG audit report regarding MDI's reinstatement claim, and the supporting audit workpapers prepared by GSA OIG auditor John Walsh, and those materials were copied by plaintiff's attorneys. The bates numbers used by plaintiff in marking those GSA OIG documents began with KC-A910-001 and ended with KC-A910-0275.

10. Describe in detail all notifications and instructions to preserve, retain, or cease destruction of documents relating to the Ninth Counterclaim, including but not limited to document retention notices, freeze notices and hold orders.

RESPONSE: Defendant incorporates the general objections stated above. We also object because the interrogatory is not reasonably calculated to lead to the discovery of relevant evidence and such information is protected by the attorney client and work product privileges. Without waiving our objections, all relevant agency documents relating to the Ninth Counterclaim have been preserved and are maintained at GSA's Kansas City office, and copies are being provided to plaintiff. The documents produced by Beck Steel in response to the Government's subpoena duces tecum have been preserved and are maintained at the offices of Government counsel; those documents are available for MDI's inspection at the offices of Government counsel, and copies have been or will be provided to plaintiff.

11. Describe in detail all retention, backup, and archival policies and procedures relating to electronic data and hard copy documents that were effective for the period September 1995 to present, including how such policies and procedures were implemented to preserve documents relating to this litigation.

RESPONSE: Defendant incorporates the general objections stated above. We also object because to the extent that the interrogatory extends beyond the Ninth Counterclaim, the interrogatory is overly broad and beyond the scope of allowable discovery. The Ninth Counterclaim relates to MDI's certified claim dated August 2001 and to the Beck Steel component of that claim, and any discovery prior to that time or related to other matters is improper. We also object because the request is overboard and not reasonably calculated to lead to the discovery of relevant evidence.

Without waiving our objections, defendant previously produced available documents containing retention, backup, and archival policies and procedures in response to plaintiff's request for production of documents dated June 21, 2007. See our July 24, 2007 response and supplemental responses. See also Federal Acquisition Regulation (FAR) 4.8 Government Contract Files; 48 C.F.R. § 4.8.

For GSA OIG employees, there are two separate operations occurring upon users' email files that use Lotus Notes. The GSA OIG user's email file sits on servers controlled by GSA while the GSA OIG user's archive file sits on separate OIG servers controlled by the OIG. Every day, GSA automatically scans every user's email file, but not their email archive files; any messages in the email files 60 days or older, but not in their email archive files, are automatically deleted. According to GSA documents, the automatic delete function on the GSA server first

became operative on December 4, 1999. See GSA document entitled "E-mail policies, 60 Day Deletion Policy," previously produced.

However, with respect to GSA OIG users, the automatic delete function on the GSA server did not automatically delete the email files of GSA OIG users, because the GSA OIG utilized a third party archiving tool provided by GSA. Since approximately October 1998, GSA OIG has used a Lotus Notes program, which has a built-in archiver which automatically saves the user's email. Thus, for GSA OIG employees, the archive program inside Lotus Notes scans the user's email file each day; any messages that the archive program finds that are older than 30 days are automatically copied to the user's archive file. Thus, the GSA OIG system will archive a GSA OIG user's emails 30 days before the GSA server can automatically delete them. However, if a GSA OIG user deleted a message prior to the 30-day period expiring, the message would not have been automatically copied to the user's archive file by the program.

Based upon a review of John Walsh's CDRom disc of email archives from his prior Government computer and the computer archives on his Government computer, his email archives exist as far back as January 2002. The Government has paper copies of emails of Mr. Walsh preserved and maintained in GSA contract files. The Government attorneys also have copies of Mr. Walsh's emails relating to the case. Mr. Walsh's audit work was performed primarily through onsite reviews of MDI documents at MDI's offices and through telephone conversations. His audit workpapers also contain letters requesting documents and correspondence received in response. Everything that Mr. Walsh had relating to MDI was placed in storage sometime after the June 16, 1999 termination for default of MDI.

Contract files regarding all MDI contracts with GSA have been preserved and maintained since the time that they were created and are in storage. GSA contract files are created, preserved and maintained pursuant to Federal Acquisition Regulation (FAR) 4.8 Government Contract Files; 48 C.F.R. § 4.8, and other GSA policies.

Paper copies of relevant emails are printed and maintained in GSA contract files pursuant to Federal Acquisition Regulation (FAR) 4.8 Government Contract Files; 48 C.F.R. § 4.8. GSA employees Karen Poole and Georgann Butler also have preserved and maintained electronic archives of their emails. In addition, Government counsel has preserved and maintained CDRom discs that contain copies of their emails.

With regard to the Ninth Counterclaim, all relevant agency documents relating to the Ninth Counterclaim, including GSA's copy of MDI's August 2001 certified claim, have been preserved and are maintained at GSA's Kansas City office.

The documents produced by Beck Steel in response to the Government's subpoena duces

tecum have been preserved and are maintained at the offices of Government counsel.

12. State the following information for each and every expert witness you intend to call should this matter proceed to trial and for each and every witness from whom you intend to elicit opinion testimony should this matter proceed to trial:

(a) name of witnesses;

(b) address and telephone number;

(c) listing of qualifications (a resume or vitae may be attached);

(d) area of expertise;

(e) anticipated testimony;

(f) specific factual situations to be addressed;

(g) a summary of the grounds for each opinion of each such witness;

(h) whether a report was prepared by the witness and identify all such reports; and

(i) identify all documents referred to or relied upon by such witness in forming his or her opinions in this matter.

RESPONSE: Defendant incorporates the general objections stated above. Defendant also objects because the interrogatory is ambiguous and overbroad in referring to "this matter" as well as repetitious of prior discovery requests. Without waiving our objections and assuming that this interrogatory is limited to the Ninth Counterclaim, defendant has not decided whether it will call any expert witnesses with regard to the Ninth Counterclaim.

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

Jeanne E. Davidson by Domenique Kirchner
JEANNE E. DAVIDSON
Director

JOYCE R. BRANDA
Director

PATRICIA R. DAVIS
Assistant Director

Domenique Kirchner
DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Fax: (202) 514-8624
Attorneys for Defendant

Of Counsel:
TRACY L. HILMER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice

ERIC L. MILLER
Office of the Inspector General
General Services Administration

DALTON PHILLIPS
CATHERINE CROW
General Services Administration
December 21, 2007

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 21st of December, 2007, I caused to be placed in the United States mail (first-class mail, postage paid) copies of "DEFENDANT'S RESPONSE TO PLAINTIFF'S INTERROGATORIES IN CONNECTION WITH THE NINTH COUNTERCLAIM" addressed to:

James D. Wareham
Paul, Hastings, Janofsky & Walker
875 Fifteenth Street, N.W.
Washington, DC 20005

[signature]

# Verification

District of Columbia December 20, 2007

I, John Walsh, being duly sworn, depose and say that I am an Audit Manager with the General Services Administration Office of Inspector General (GSA OIG). Except for the portion of the answer to interrogatory number 11 that addresses the operations on GSA OIG user's email files, I have read the foregoing answers to plaintiff's interrogatories and believe the same to be true and correct based either upon my own knowledge or upon information supplied to me by others which I believe to be true and correct.

[signature]

Subscribed and sworn to before me this 20th day of December, 2007

[signature]
Notary Public

NOTARY PUBLIC STATE OF MISSOURI NOTARY SEAL

BENJAMIN J. SORRELL, JR.
My Commission Expires
October 23, 2009
Jackson County
Commission #05787083

Verification

District of Columbia December 20, 2007

I, Dante Griffin, being duly sworn, depose and say that I am an IT Specialist with the General Services Administration Office of Inspector General (GSA OIG). I have read the portion of the foregoing answer to interrogatory number 11 that addresses the operations on GSA OIG users' email files, and believe the same to be true and correct based either upon my own knowledge or upon information supplied to me by others which I believe to be true and correct.

[signature]

Subscribed and sworn to before me this 20th day of December, 2007

[signature]
Notary Public
My Commission Expires: Feb. 14, 2012