Nos. 99-279C and consolidated cases
(Judge Braden)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MORSE DIESEL INTERNATIONAL, INC.
d/b/a AMEC CONSTRUCTION
MANAGEMENT, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# UNITED STATES' SURREPLY TO PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR "SPOLIATION" SANCTIONS

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
JOYCE R. BRANDA
Directors

PATRICIA R. DAVIS
Assistant Director

DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Fax: (202) 514-8624

Attorneys for Defendant

Of Counsel:

TRACY L. HILMER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice

ERIC L. MILLER
Office of the Inspector General
General Services Administration

CATHERINE CROW
General Services Administration

January 30, 2008

## TABLE OF CONTENTS


I. ACMI Is Not Entitled To An Adverse Inference .... 1

II. The Government Met The Requirements Of RCFC 26(a)(2)(B) .... 5

III. The Government Responded Properly To ACMI's Recent Discovery .... 8

IV. The Government Properly Asserted Its Privileges .... 12

V. ACMI's April 19, 2007 Letter Sought Communications Between Mr. Walsh And Government Counsel Only Regarding Preparation Of His Reports .... 13

VI. ACMI's Assertions Of Likely Spoliation Relating To Other Matters Lack Merit .... 16

CONCLUSION .... 19

## TABLE OF AUTHORITIES

## CASES

Bashir v. Amtrak,
119 F.3d 929 (11th Cir. 1997) .......... 4

Berckeley Investment Group, Ltd. v. Colkitt,
455 F.3d 195 (3d Cir. 2006) .......... 12

Bittaker v. Woodford,
331 F.3d 715 (9th Cir. 2003) .......... 12

Bogosian v. Gulf Oil Corp,
738 F.2d 587 (3d Cir. 1984) .......... 12

Condrey v. SunTrust Bank of Ga.,
431 F.3d 191 (5th Cir. 2003) .......... 4

Daniel v. Ben E. Keith Co.,
97 F.3d 1329 (10th Cir. 1996) .......... 3

Dyson Technology Ltd. v. Maytag Corp.,
241 F.R.D. 247 (D. Del. 2007) .......... 14, 15

Eaton Corp. v. Appliance Valves Corp.,
790 F.2d 874 (Fed. Cir. 1986) .......... 4

Fidelity Nat'l Title Inc. Co. v. Intercounty Nat'l Title Ins. Co.,
412 F.3d 745 (7th Cir. 2005) .......... 11

Hardwick Brothers Co. v. United States,
36 Fed. Cl. 347 (1996), aff'd,
168 F.3d 1322 (Fed. Cir. 1998) .......... 16

In re EchoStar Communications Corp.,
448 F.3d 1294 (Fed. Cir. 2006) .......... 12

Jandreau v. Nicholson,
492 F.3d 1372 (Fed. Cir. 2007) .......... 2, 3

MTS Systems Corp. v. Hysitron Inc.,
2007 WL 2159490 (D. Minn. 2007) .......... 9

McDonald v. Sun Oil Co.,
423 F. Supp. 2d 1114 (D. Or. 2006) .................................................. 10, 11

Morse Diesel Int'l v. United States,
74 Fed. Cl. 601 (2007) .................................................. 1

Morse Diesel Int'l v. United States,
79 Fed. Cl. 116 (2007) .................................................. passim

Ross v. City of Memphis,
423 F.3d 596 (6th Cir. 2005) .................................................. 12

SCM Corp. v. United States,
227 Ct. Cl. 12,
645 F.2d 893 (1981) .................................................. 17

In re Seagate Technology,
497 F.3d 1360 (Fed. Cir. 2007) .................................................. 12

Sensonics, Inc. v. Aeronsonic Corp.,
81 F.3d 1566 (Fed. Cir. 1996) .................................................. 3

Sparton Corp. v. United States,
77 Fed. Cl. 10 (2007) .................................................. 5, 6, 7, 9

Stanojev v. Ebasco Services, Inc.,
643 F.2d 914 (2d Cir. 1981) .................................................. 2

Trentadue v. United States,
397 F.3d 840 (10th Cir. 2005) .................................................. 3

United States v. Bilzerian,
926 F.2d 1285 (2d Cir.), cert. denied,
502 U.S. 813 (1991) .................................................. 12

United States v. Swanquist,
161 F.3d 1064 (7th Cir. 1998) .................................................. 3

United States v. Tarwater,
308 F.3d 394 (6th Cir. 2002) .................................................. 3

United States v. Vasilakos,
508 F.3d 401 (6th Cir. 2007) .................................................. 3

University of Pittsburgh v. Townsend,
2007 WL 10002317 (E.D. Ten. 2007) .................................................................... 9

Willy v. Administrative Review Board,
423 F.3d 483 (5th Cir. 2005) ............................................................................ 12

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MORSE DIESEL INTERNATIONAL, INC. d/b/a AMEC CONSTRUCTION MANAGEMENT, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Nos. 99-279C and consolidated cases |
| | ) | (Judge Braden) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

UNITED STATES' SURREPLY TO PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR "SPOLIATION" SANCTIONS

Defendant, the United States, respectfully submits this surreply to the reply of Morse Diesel International, Inc. d/b/a AMEC Construction Management, Inc. (MDI or ACMI) to defendant's opposition to plaintiff's motion for "spoliation" sanctions.

I. ACMI Is Not Entitled To An Adverse Inference

In our opposition, we demonstrated the Government and Mr. Walsh preserved the relevant documents relating to the Government's counterclaims. Specifically, documents that Mr. Walsh possessed relating to MDI's St. Louis Phase I bond fraud have been preserved since March 1995 (A107, 382), and documents that he obtained relating to MDI's St. Louis Phase II bond fraud have been preserved since November 1996 (A373-81). See Gov. Op. 9-10.[1] Further, the Court did not rely upon documents created by Mr. Walsh in finding ACMI's frauds or determining the amount of the Government's damages, but relied upon undisputed factual evidence in the summary judgment record, including MDI's guilty pleas. Morse Diesel Int'l v.

[1] "A__" refers to the appendix filed with our opposition dated December 21, 2007. "SA__" refers to the appendix to this surreply.

United States, 74 Fed. Cl. 601 (2007) (Morse Diesel III); Morse Diesel Int'l v. United States, 79 Fed. Cl. 116 (2007) (Morse Diesel IV). ACMI failed to demonstrate that Mr. Walsh destroyed documents that may have created disputes of material fact relevant to the Court's summary judgment decisions, and failed even to identify a single such document.

In its reply, ACMI effectively abandons its baseless assertion that Mr. Walsh destroyed relevant documents relating to facts alleged in the Government's counterclaims and focuses instead upon Mr. Walsh's function as an expert witness for the Government, which began in 2002. Reply 2 n.2. ACMI's change of course does not demonstrate that it is entitled to the sanctions it requests because it still fails to demonstrate that, "(1) . . . the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) . . . the records were destroyed with a culpable state of mind; and (3) . . . the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Jandreau v. Nicholson, 492 F.3d 1372, 1375 (Fed. Cir. 2007).

ACMI contends that an adverse inference should be imposed because Mr. Walsh did not retain all of his draft reports and emails with Government counsel regarding preparation of those reports, although he did save some of this material. Reply 13-14; A533-629. Its contention is to no avail because Mr. Walsh's draft reports and related emails were preserved and retained by Government counsel, including OIG counsel. A410-23, 669-70. ACMI unreasonably criticizes GSA OIG counsel Eric Miller's declaration as being insufficient. Reply 13. To the contrary, Mr. Miller testified that he had preserved and retained all correspondence and draft reports of Mr. Walsh, and the Government produced those documents. A669-70, 422. ACMI also contends without support that Government counsel Domenique Kirchner and Tracy Hilmer have failed to produce their email correspondence with Mr. Walsh. Reply 13. Ms. Kirchner and Ms. Hilmer

have produced their email correspondence with Mr. Walsh regarding preparation of his expert reports, and Government counsel Ms. Kirchner signed the Government's opposition and has personal knowledge of the Government's production of documents. A403-10, 423. ACMI has copies of all this material, and the Government filed much of it in support of its motion for protective order, dated July 20, 2007 (Docket Entry 282). Further, the allegedly destroyed documents – Mr. Walsh's draft reports and emails with Government counsel regarding preparation of those reports – are not relevant to a contested factual issue. See Stanojev v. Ebasco Services, Inc., 643 F.2d 914, 923-24 (2d Cir. 1981) (refusing to impose adverse inference of age discrimination based upon destruction of personnel records, where it was unlikely that such records would have supported plaintiff's age discrimination claim and their nonproduction bore "no logical relationship to a finding of age discrimination"). The proper computation of damages is a legal issue and Mr. Walsh's computation of harm reports and his draft reports and emails with Government counsel regarding preparation of those reports are irrelevant. Morse Diesel IV, 79 Fed. Cl. at 125 n.8. If ACMI had presented testimony from its own expert witness in favor of a time-value of money computation of damages, the question still would have been a legal one. Id. ACMI has failed to demonstrate that documents allegedly destroyed were relevant to a factual dispute.

Further, Mr. Walsh's 2002 computation of harm report summarized the underlying evidence and performed mathematical calculations, and his 2007 computation of harm report also performed mathematical calculations; thus, his computation of harm reports themselves were not evidence. United States v. Vasilakos, 508 F.3d 401, 412 (6th Cir. 2007) (summary does not constitute evidence); United States v. Tarwater, 308 F.3d 394 (6th Cir. 2002) ("summary charts were not evidence"); United States v. Swanquist, 161 F.3d 1064, 1073 (7th Cir. 1998)

(same); Daniel v. Ben E. Keith Co., 97 F.3d 1329, 1335 (10th Cir. 1996). Similarly, his draft computation of harm reports are summaries and are not themselves factual evidence. Id.

ACMI also has failed to demonstrate that Mr. Walsh destroyed his draft reports and emails with Government counsel regarding preparation of those reports in bad faith or with "a culpable state of mind." Jandreau, 492 F.3d at 1375. At a minimum, ACMI must demonstrate "purposefulness." Sensonics, Inc. v. Aeronsonic Corp., 81 F.3d 1566, 1572-73 (Fed. Cir. 1996). "Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case." Trentadue v. United States, 397 F.3d 840, 864 (10th Cir. 2005) (requiring bad faith destruction to impose an adverse inference); accord Condrey v. SunTrust Bank of Ga., 431 F.3d 191, 203 (5th Cir. 2003) (same); Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997) (same); Eaton Corp. v. Appliance Valves Corp., 790 F.2d 874, 878 (Fed. Cir. 1986) (applying Seventh Circuit law, and holding, in the absence of bad faith, the court may not infer that the evidence would be unfavorable to the destroying party).

ACMI has not demonstrated bad faith, purposefulness, willfulness or serious fault and its motion should be denied. Indeed, Mr. Walsh preserved and retained many of his draft reports and emails with Government counsel regarding preparation of the reports. A533-629. Government counsel preserved and retained copies of Mr. Walsh's draft reports and emails with Government counsel regarding preparation of those reports. A410-23, 669-70. Further, all of this material is irrelevant. Morse Diesel IV, 79 Fed. Cl. at 125 n.8. Mr. Walsh also testified that it was his understanding that, under "government rules, regulations or policy within [his] department, that once litigation has commenced, or, in fact, if it's even threatened or on the horizon [he] . . . has an obligation to preserve records and documents [including electronic documents] . . . relating to the subject matter of that suit or threatened suit." A509 (Dep. 180)

("Yes, I do have to save documents relating to the suit or pending litigation."). Mr. Walsh testified: "I have to save anything that's material to the suit or the pending litigation," and "I have saved all relevant documents related to the case." A509 (Dep. 181). Mr. Walsh testified that he knew he had to retain and preserve documents. A449 (Dep. 103) ("We have files and files that I realized all those files have to be maintained. . . .") ("I would have to maintain any documents that I – any spreadsheets I created, any documents that I created for use in the case. . . ."); A507 (Dep. 174) (I retained anything that "would have any impact on the case").

II. <u>The Government Met The Requirements Of RCFC 26(a)(2)(B)</u>

ACMI asserts, without support, that the Government made the assertion that it is not bound by the expert disclosure obligations in RCFC 26(a)(2)(B). Reply 2, 10. The Government did not make that assertion. All of the factual material that was considered or relied upon by Mr. Walsh in preparation of his reports had been previously produced in the litigation, and includes, for example, pay applications MDI submitted to GSA, deposition transcripts of MDI and AMEC plc witnesses, and MDI documents produced in discovery. A446. ACMI asserts, without support, that the Government failed to retain all of the factual material that Mr. Walsh sent or received, since becoming a Government expert witness in 2002. Reply 2. To the contrary, Mr. Walsh testified that copies of the factual materials that he had considered in preparing his reports had been maintained, including MDI pay applications, and deposition transcripts of MDI witnesses, including Ron Estock, Steve Dollens, Steve Paquette, Graham Harwood, Bill Lyons, David Hoffman, Michael Bardsley, Ronni Brenner, Tony Romano, Richard Ferrucci and others. A445 (Dep. 85) ("I have access to all of these [GSA] files to the present day. They're all in boxes and in storage in Kansas City."); A446 (Dep. 90) ("I believe I do have copies of those [deposition] transcripts, yes."). The Government, having previously produced all of its factual

material in discovery, was not obligated to produce it a second time. Sparton Corp. v. United States, 77 Fed. Cl. 10, 17 (2007) ("There is simply no requirement for Defendant to reproduce documents that had already been produced"). Nor has the Government withheld attorney opinion work-product documents that were given to Mr. Walsh in the development of his expert reports. Reply 7. Finally, Mr. Walsh testified that DOJ attorneys Domenique Kirchner and Tracy Hilmer were not the source of any factual information considered or relied upon in preparation of his reports. A446 (Dep. 91) ("Department of Justice was not the source information for anything in my report.").

There is no support for ACMI's assertion that Government counsel in her May 3, 2007 letter to ACMI's counsel (A406) made a "false" statement in stating that, "all of the documents that Mr. Walsh has reviewed have already been made available to plaintiff in the litigation." Reply 11. ACMI contends that counsel's statement is "false" because the Government produced over 300 pages of documents relating to Mr. Walsh's reports in May-August 2007. Reply 11.

ACMI has misrepresented the contents and context of the May 3, 2007 letter of defendant's counsel and the nature of the over 300 pages of documents produced in May-August 2007. The May 3, 2007 letter of Government counsel further responded to ACMI's letters dated April 19, 2007 and May 2, 2007. ACMI's letter dated April 19, 2007 requested the Government's production of: (1) "all drafts, redlines, and edits" to Mr. Walsh's reports on "the computation of damages (the reports)"; (2) "copies of all documents that were reviewed in making the reports, including all documents provided by you or others that may have been referenced in the creation of the reports but not necessarily relied upon in the final products"; and (3) "all correspondence regarding the preparation of the reports." A401-02. The statement of Government counsel in her May 3, 2007 letter that ACMI accuses of being "false" addressed

only documents within category 2 in the April 19, 2007 ACMI letter, i.e., "documents that were reviewed in making the reports." A406-07. It did not address the documents requested in categories 1 and 3 of the April 19, 2007 ACMI letter, i.e., draft reports and "all correspondence regarding the preparation of the reports." Id. This was clear from Government counsel's language, which repeated the language in ACMI's April 19, 2007 letter ("documents that were reviewed in making the report"), and her statements that immediately followed, which referred to source documents that Mr. Walsh reviewed in preparing the reports. Id. The May 3, 2007 letter stated:

> As I stated in my April 24, 2007 letter, all of the documents that Mr. Walsh has reviewed have already been made available to plaintiff in the litigation. Numerous fact witnesses have given depositions about such documents. Plaintiff's counsel was present at all of those depositions and obtained copies of all of the exhibits to such depositions. You have all of this material available to you, and, therefore, there should be no problems preparing for Mr. Walsh's deposition. Plaintiff's counsel of record, James Wareham, also participated in a settlement conference with then Assistant Attorney General Robert McCallum in late 2002, and we have been advised that Mr. Wareham worked with plaintiff's prior counsel, Craig King.
>
> For example, copies of plaintiff's pay application one for the San Francisco contract can be found in the exhibits to Connie Ross's deposition. A copy of plaintiff's pay application one for the Sacramento contract can be found in the April 29, 2003 Government appendix, pages 148-77. Copies of plaintiff's pay applications one and two for the St. Louis Phase I contract and plaintiff's pay application one for the St. Louis Phase II contract, and information regarding those pay applications can be found in the declaration of Roger Haddock and its exhibits in the April 29, 2003 Government appendix, pages 268-382.
>
> Information and documents relating to the kickbacks can be found among the exhibits to the Government's summary judgment papers, and the depositions of various witnesses, including Michael Bardsley (May 30, 2002), Michael Chitty (May 30, 2002), Peter Holland (May 31, 2002) and Nick Monemorano (May 19, 2002). For example, documents regarding the San Francisco contract kickback can be found in Exhibit 7 to the Government's Appendix

> dated December 7, 2001. Documents regarding the St. Louis Phase II contract kickback can be found in Exhibit 12 of the Government's Appendix dated December 7, 2001. Documents regarding the St. Louis Phase I and Sacramento contracts kickbacks can be found in Exhibit 38 of the Government's Appendix dated July 9, 2002.

A406-07. The documents that the Government produced in May-August of 2007, in response to categories 1 and 3 of ACMI's April 19, 2007 letter, were drafts of Mr. Walsh's reports and correspondence regarding preparation of those reports, A403-23, 533-629, not source documents which were previously produced. Government counsel's statement in her May 3, 2007 letter was correct.[2]

III. The Government Responded Properly To ACMI's Recent Discovery

ACMI asserts that the Government retained documents in a "piecemeal and ad hoc manner" and engaged in "slapdash efforts to reconstruct relevant documents that should have been produced years ago." Reply 2, 5 n.5. We assume this unexplained and inaccurate language refers to the Government's response to ACMI's April 19, 2007 letter, which requested – for the first time – "all drafts, redlines, and edits" to Mr. Walsh's reports on "computation of damages"

---

[2] ACMI's comment about the April 24, 2007 letter of Government counsel is also misleading. In its reply at page 11, ACMI states: "Notably, after stating in an April 24, 2007 letter to ACMI's counsel that '[w]e have not found any drafts of the May 2002 damages report," four months later on August 24, 2007, the Government produced a February 6, 2002 draft of the May 2002 expert report 'which Mr. Walsh [] found.'" However, the February 6, 2002 draft of the May 2002 expert report of Mr. Walsh was first produced by Government counsel on May 4, 2007, before the start of Mr. Walsh's deposition. A411-21. Mr. Walsh had located the February 6, 2002 draft of his May 2002 report on a CDRom disc containing the archived emails from his prior Government computer. Mr. Walsh testified about his February 6, 2002 draft report at his May 4, 2007 deposition. A427 ("It was a draft of the computation of harm report from 2002").

By letter dated August 24, 2007, Government counsel provided ACMI with another copy of the February 6, 2002 draft report of Mr. Walsh among the documents that Mr. Walsh had located and provided to Government counsel. A533-43. We also note that another copy of the February 6, 2002 draft report of Mr. Walsh was included among the emails regarding Mr. Walsh's reports that were produced by Government counsel's letter dated May 25, 2007.

and "all correspondence regarding preparation of the reports." A401-02. ACMI contends that the Government was required to disclose such documents, "without waiting for a specific discovery request," because Mr. Walsh "was an expert witness for at least five years" (since 2002), citing RCFC 26(a)(2)(B). Reply 6. ACMI contends "the Government's five-year withholding" of draft reports and related emails generated by Mr. Walsh as an expert witness is sanctionable. Reply 2.

There is no support for ACMI's assertions. RCFC 26(a)(2)(B), which first became effective on May 1, 2002, addresses expert disclosures but does not require disclosure of drafts, redlines and edits of an expert's report or all correspondence with counsel regarding preparation of such reports. University of Pittsburgh v. Townsend, 2007 WL 10002317 at *3 (E.D. Ten. 2007) (FRCP 26(a)(2) does not require that all draft reports be disclosed as part of an expert disclosure); MTS Systems Corp. v. Hysitron Inc., 2007 WL 2159490 at *8 (D. Minn. 2007) (disclosure of draft expert reports not required). RCFC 26(a)(2)(B) requires provision of a "written report prepared and signed by the witness" for a "witness who is retained or specially employed to provide expert testimony in the case." The Government met the requirements of RCFC 26(a)(2)(B) by providing written reports prepared and signed by Mr. Walsh, and all source material that he reviewed in preparation of his reports was produced in the litigation, and contained in deposition transcripts and their exhibits in ACMI's possession.

Further expert discovery that ACMI wished to obtain such as "drafts, redlines, and edits" of Mr. Walsh's written reports or "correspondence regarding preparation of the reports," as requested in its April 19, 2007 letter (A401-02), should have been accomplished by the issuance of written interrogatories or requests for production of documents, or taking of depositions. RCFC 26(a)(5) and (b)(4); see Sparton Corp., 77 Fed. Cl. at 14. Indeed, ACMI's argument that

RCFC 26(a)(2)(B) required provision of this material without a specific discovery request is contrary to its April 19, 2007 letter, which refers to discovery of such materials through a party's issuance of interrogatories, requests for production of documents, and depositions, and not to the disclosure provisions of RCFC 26(a)(2)(B). A401. It was not until the letter dated April 19, 2007 that ACMI requested the Government's production of "all drafts, redlines and edits" to Mr. Walsh's computation of harm reports and "all correspondence regarding preparation of the reports." A401-02.

In addition, the April 19, 2007 ACMI letter was not issued in accordance with the Court's rules, which require the issuance of interrogatories and document requests and which allow a party 30 days to respond. RCFC 33(b)(3) and 34(b). The letter was issued less than 30 days prior to Mr. Walsh's deposition, then scheduled for May 4, 2007. In an effort to accommodate ACMI, defendant made multiple searches in response to the April 19, 2007 letter, and provided responsive documents. The fact that we were unable to locate and produce all of the documents before the May 4, 2007 deposition was due to the insufficient time allowed by ACMI to locate documents, and not to any "piecemeal," "adhoc" retention or "slapdash efforts to reconstruct relevant documents," as ACMI alleges. Reply 2, 5 n.5. Further, although Mr. Walsh did not retain all of his draft reports and correspondence with Government counsel regarding preparation of those reports, such materials were retained and preserved by Government counsel, and have been produced to ACMI. A403-23, 669-70. Our production of these documents in response to the April 19, 2007 letter is not a reason to impose any form of sanctions.

Contrary to ACMI's argument at 13-14, RCFC 26(a)(2)(B) did not require that Mr. Walsh retain the notes that he made during the depositions of MDI witnesses at which he provided assistance to Government counsel conducting the deposition. McDonald v. Sun Oil Co., 423 F.

Supp. 2d 1114, 1122 (D. Or. 2006) (denying sanctions where expert destroyed his working notes). ACMI also is not entitled to an adverse inference or any other sanction because Mr. Walsh did not retain such notes. There is no showing regarding the subject matter of any such notes. There is nothing that indicates that the subject matter of Mr. Walsh's notes made at MDI witnesses' depositions would have been unfavorable to the Government or favorable to ACMI or that they would have been relevant evidence to factual issues in this suit. Even if the notes contained Mr. Walsh's impressions of a witness' testimony, they still would not be significant because the court reporter is the official recorder of witness testimony, not Mr. Walsh, and the Court is the arbiter of witness credibility. There is no logical connection between ACMI's requested adverse inference and such notes. Stanojev, 643 F.2d at 923-24 (employer's failure to produce destroyed personnel records created no adverse inference where such records appeared to have no logical connection to issue). There is also no showing that such notes would have been relevant to some factual issue, or that Mr. Walsh knew of their relevance. With regard to Mr. Walsh's role as a potential expert witness, there is no showing that Mr. Walsh reviewed the notes that he made at depositions he attended in preparing his expert reports. Rather, Mr. Walsh reviewed the official transcripts of witnesses' testimony. A446 (Dep. 89-90) ("I reviewed most of the deposition transcripts in this case."). "Experts have 'no legal duty to be a pack rat' and are not 'required to retain every scrap of paper' created in preparing their opinions." MacDonald, 423 F. Supp. at 1122 (quoting Fidelity Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co., 412 F.3d 745, 751 (7th Cir. 2005)). It was reasonable for Mr. Walsh to believe that retention of such notes was unnecessary. Id. Accordingly, ACMI's motion for an adverse inference or other sanction relating to Mr. Walsh's notes made at MDI witnesses' depositions is without merit.

ACMI's motion for sanctions also should be denied because it has failed to demonstrate any prejudice arising from Mr. Walsh's not retaining all of his draft reports and correspondence with Government counsel regarding preparation of those reports or the notes that he made at depositions of MDI witnesses. McDonald, 423 F. Supp.2d at 1122-23. Such documents were not related to whether Mr. Walsh is qualified to testify as an expert, and ACMI is not hampered in conducting a proper cross-examination, if he testifies as an expert. Id. In any event, ACMI has the draft reports and communications between Government counsel and Mr. Walsh regarding preparation of his reports. A403-23, 669-70. Further "examination and cross-examination of the expert can be comprehensive and effective on the relevant issue of the basis for the expert's opinion without an inquiry into the lawyer's role in assisting with the formulation of the theory." Id. at 1123 (quoting Bogosian v. Gulf Oil Corp., 738 F.2d 587, 595 (3d Cir. 1984)). ACMI has not demonstrated any prejudice and is not entitled to any sanctions. Finally, ACMI's own expert did not retain any draft reports or notes of conversations with MDI personnel that he interviewed, and ACMI's request for sanctions should be denied for that reason as well. A78-79.

IV. The Government Properly Asserted Its Privileges

As the Court held, the Government is entitled to maintain a claim of privilege for the content of oral and written communications between Government attorneys and Mr. Walsh upon instructions to preserve and retain documents. Morse Diesel IV, 79 Fed. Cl. at 125 n.8. Contrary to ACMI's argument, the Government is not engaging in "misfeasance by expressly relying upon its assertion of privilege for . . . document preservation instructions [given by counsel] as both a sword and a shield." Reply 9. The Government is not using the content of Government counsel's advice to Government witnesses as a "sword." Instead, it is ACMI who seeks to use the content of instructions of Government counsel to Mr. Walsh as a "sword" against the

Government. As we have demonstrated, the relevant documents have been retained and preserved, and ACMI has not demonstrated that such documents were destroyed. That ought to be the end of ACMI's untimely diversion.

The concept that the attorney-client privilege may not be used as both a shield and sword is not applicable in these circumstances. That concept is restricted to circumstances where a party uses the "contents" of some of its attorney-client communications upon a specific subject matter as evidence as a "sword" while also seeking to withhold the remainder of its attorney-client communications upon that very same subject matter. In re Seagate Technology, 497 F.3d 1360, 1372 (Fed. Cir. 2007); In re EchoStar Communications Corp., 448 F.3d 1294, 1301 (Fed. Cir. 2006); Berckeley Investment Group, Ltd. v. Colkitt, 455 F.3d 195, 222 (3d Cir. 2006); Ross v. City of Memphis, 423 F.3d 596, 604-05 n.5 (6th Cir. 2005); United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir.), cert. denied, 502 U.S. 813 (1991). Thus, courts have emphasized that the sword and shield concept is "conjunctive" only. Willy v. Administrative Review Board, 423 F.3d 483, 497 (5th Cir. 2005); Bittaker v. Woodford, 331 F.3d 715, 720 (9th Cir. 2003). That is not the case here, where it is ACMI who seeks to put the content of the communications of Government attorneys at issue and to use the content of attorney-client communications with Mr. Walsh upon document preservation as a "sword" against the Government. Moreover, the Court has ruled that the Government attorneys' preservation communications are irrelevant and privileged, Morse Diesel IV, 79 Fed. Cl. at 125 n.8, and the Government should not have to reveal its privileged communications to withstand ACMI's motion for spoliation sanctions.

V. ACMI's April 19, 2007 Letter Sought Communications Between Mr. Walsh And Government Counsel Only Regarding Preparation Of His Reports

ACMI asserts that it "the Government belatedly asserts a privilege regarding documents and communications it had with Mr. Walsh" and "continues to this day to secretly withhold correspondence with Mr. Walsh based on this privilege assertion even though it never before made this assertion to ACMI in the course of producing documents related to Mr. Walsh's expert reports" and that this is "another basis" for sanctions. Reply 7-8. ACMI has misrepresented the facts of this proceeding.

By letter dated April 19, 2007, ACMI requested for the first time "all drafts, redlines, and edits to" Mr. Walsh's reports on "the computation of damages" and "all correspondence regarding preparation of the reports." A401-02. The Government made several searches in response to ACMI's letter dated April 19, 2007, and provided responsive documents. A403-23, 669-70. Contrary to ACMI's baseless assertion, the Government is not withholding Mr. Walsh's draft expert reports and correspondence with Government counsel regarding his preparation of his reports.

Rather, in its April 19, 2007 letter, ACMI did not request all communications that Mr. Walsh had with Government counsel (A401-02), which request would have been improper. Dyson Technology Ltd. v. Maytag Corp., 241 F.R.D. 247, 251 (D. Del. 2007) (denying defendant's request for discovery of communications with expert that were unrelated to preparation of his expert report where expert was plaintiff's employee). The Government was not requested to produce all communications between Government counsel and Mr. Walsh that were unrelated to the preparation of his expert reports and was not required to produce a privilege log for such documents. There is no support for ACMI's assertions that the

Government belatedly asserted a privilege regarding documents and communications that it had with Mr. Walsh or is "secretly withholding correspondence with Mr. Walsh based upon this privilege assertion," but did not make this assertion in producing documents in response to ACMI's April 19, 2007 letter. Reply 7-8. There also was never any "secret" that Government counsel and Mr. Walsh had communications that did not involve his preparation of expert reports. Mr. Walsh testified that he had records of e-mails that did not involve preparation of his expert reports. A450 (Dep. 105) ("Yes, I believe there were some other e-mails that were otherwise related to the case.").

ACMI is incorrect in contending that it is entitled to discovery of "all documents sent to, received by, or generated by Mr. Walsh," including all attorney-client communications that Mr. Walsh did not review in making his expert reports or which did not involve preparation of the reports. Reply 7, 9, 10. Mr. Walsh is a Government employee and his communications with Government attorneys unrelated to the preparation or making of his reports are privileged and not discoverable. Dyson Technology Ltd., 241 F.R.D. at 251 (denying defendant's request for discovery of communications with expert that were unrelated to preparation of his expert report where expert was plaintiff's employee). Further, ACM's April 19, 2007 letter requested documents that Mr. Walsh "reviewed in making the reports" and "correspondence regarding the preparation of the reports," and did not encompass Mr. Walsh's communications with Government counsel that were unrelated to his preparation or making of the reports. A401-02.[3]

[3] There is no support for ACMI's assertion that "the Government expressly waived any privilege it now seeks to assert since it previously produced documents such as the March 17, 1998 'Phase II-Action Items' list developed by Mr. Walsh." Reply 6. Contrary to ACMI's unsupported assertion that document was not developed by Mr. Walsh. SA1-2. Further, the Government's production of that list in discovery does not demonstrate that the Government has waived its privileges for the communications between Government counsel and Mr. Walsh

Finally, the Government has not relied upon Mr. Walsh's reports or opinions to support its summary judgment motions. Instead, ACMI relies upon Mr. Walsh's reports and opinions to substantiate its position upon legal issues, without retaining him as its expert witness. RCFC 26(b)(2)(B).

VI. ACMI's Assertions Of Likely Spoliation Relating To Other Matters Lack Merit

ACMI contends that documents relating to future determinations upon matters not yet addressed by the Court or the parties have been likely been destroyed. Reply 14-16. ACMI bases its argument upon what it calls "three known facts," which are not demonstrated in the record.

First, ACMI asserts, without support, that Mr. Walsh received no preservation instructions for a 12-year period, and that the Government's "repeated failure to issue preservation instructions establishes a level of recklessness that merits the imposition of an adverse inference" because of the alleged but unproven spoliation of evidence. Reply 8, 14. Mr. Walsh testified that although he could not remember receiving instructions to retain documents (A449 (Dep. 102-03), he knew he had to retain and preserve documents. A449 (Dep. 103) ("We have files and files that I realized all those files have to be maintained. . . .") ("I would have to maintain any documents that I – any spreadsheets I created, any documents that I created for use in the case. . . ."); A507 (Dep. 174) (Mr. Walsh retained anything that "would have any impact on the case"). Mr. Walsh's conduct is also contrary to ACMI's assertion since he put all of his materials relating to MDI and its subcontractors and the case in a storage sometime after the June 16, 1999 termination for default. A507 (Dep. 173) ("I know at the time of discovery I produced

---

unrelated to his preparation of expert reports for Government counsel.

everything that I had."). Agency policies also required Mr. Walsh's retention and preservation of documents. A630-56. Department of Justice attorneys follow normal procedures with regard to preservation of documents and instruction of witnesses, and the Government is entitled to the presumption that they have acted responsibly and in good faith. Hardwick Brothers Co. v. United States, 36 Fed. Cl. 347, 418 (1996) (applying presumption of good faith and responsible action in response to spoliation allegation and denying sanctions), aff'd on other grounds, 168 F.3d 1322 (Fed. Cir. 1998).

Second, ACMI asserts that Mr. Walsh routinely deleted documents and e-mails that he believed were unimportant without regard for the Government's obligations under the Court's rules. Reply 5 n.5, 6, 7, 15. To the contrary, Mr. Walsh testified that it was his understanding that, under "government rules, regulations or policy within [his] department, that once litigation has commenced, or, in fact, if it's even threatened or on the horizon [he] . . . has an obligation to preserve records and documents [including electronic documents] . . . relating to the subject matter of that suit or threatened suit." A509 (Dep. 180) ("Yes, I do have to save documents relating to the suit or pending litigation."). Mr. Walsh further testified: "I have to save anything that's material to the suit or the pending litigation," and "I have saved all relevant documents related to the case." A509 (Dep. 181). Putting aside email messages, Mr. Walsh testified "all of [his electronic] documents, to the best of [his] recollection, have been preserved." A508 (Dep. 177). Mr. Walsh also testified that he knew he had to preserve everything, including email messages, that had "any bearing on any of the findings in this case" and he knew he had to preserve any documents, including email messages, that related to "any conclusions that came from [him]." A508 (Dep. 175). ACMI's argument is that Mr. Walsh exercised judgment in deciding which documents to retain. Reply 2 n.3, 4, 7. An auditor properly exercises his

"independent judgment" in deciding which documents to retain. SCM Corp. v. United States, 227 Ct. Cl. 12, 645 F.2d 893, 897-98 (1981). Indeed, an auditor's working papers have to be so complete and detailed that another auditor could follow the audit trail without assistance from their preparer. A630-56. ACMI has not demonstrated that Mr. Walsh destroyed documents that were relevant to the factual claims or defenses in this case. Reply 3.

Third, ACMI baldly asserts that Mr. Walsh is a "key witness" in establishing the Government's remaining counterclaims and in the reprocurement case, Fed. Cl. No. 06-867. Reply 15. ACMI fails to present any evidence that demonstrates that the allegations contained in the Government's remaining counterclaims are dependent upon factual testimony of Mr. Walsh or which addresses the significance of such testimony. For example, MDI's fraud in delaying payments to its subcontractors contrary to its contractual obligations is demonstrated in MDI's certified payment applications submitted to GSA contracting officers and MDI's records of its payment of subcontractors, which were produced in discovery. See Government's Notice of Filing Of Documents Regarding Its Counterclaim Relating To MDI Payments To Subcontractors and appendices, dated 1/26/2007 (Docket Entry 249).

Further, the facts of the Government's Ninth Counterclaim appear to be largely undisputed, and ACMI has not demonstrated that they are dependent upon factual testimony of Mr. Walsh. Reply 15. ACMI's witness James Brogan testified that ACMI claimed the wrong amount for the Beck Steel termination costs in its August 2001 claim, which he had certified. SA3-4 (Brogan 10/4/2007 Dep. 163-65). According to Mr. Brogan, ACMI wrongfully claimed $321,000 plus ACMI's markups for the Beck Steel termination costs, but the correct amount was $240,000 (the amount of ACMI's settlement agreement with Beck Steel) plus ACMI's markups. Id. According to Mr. Brogan, the unsupported amount in the claim is $90,651.67 ($1,257,270

minus $90,651.67 = $1,166,618.33). Id. Further, on January 16, 2008, ACMI first issued its requests for production of documents in the reprocurement case, Fed. Cl. No. 06-867. ACMI has not demonstrated that disputed facts in that case depend upon factual testimony of Mr. Walsh. Thus, ACMI's unsupported assertion that documents relevant to future factual determinations that this Court might make have likely been destroyed is without merit. Reply 14-16.

## CONCLUSION

For all the foregoing reasons and those stated in our opposition, ACMI's motion for an adverse inference and sanctions should be denied.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

s/Jeanne E. Davidson
JEANNE E. DAVIDSON
JOYCE R. BRANDA
Directors

PATRICIA R. DAVIS
Assistant Director

s/Domenique Kirchner
DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Fax: (202) 514-8624
Attorneys for Defendant

Of Counsel:
TRACY L. HILMER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice

ERIC L. MILLER
Office of the Inspector General
General Services Administration

CATHERINE CROW
General Services Administration

January 30, 2008

Table of Contents of Supplemental Appendix

| | Page |
|---|---|
| Declaration of John Walsh | SA1 |
| Excerpt from 10/4/2007 Dep. of James Brogan | SA3 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MORSE DIESEL INTERNATIONAL, INC., Plaintiff, v. THE UNITED STATES, Defendant. | No. 99-279 and consolidated cases (Judge Braden) |

DECLARATION OF JOHN WALSH

I, John Walsh, make the following declaration with respect to the above-captioned cases.

1. I have been an auditor with the United States General Services Administration (GSA) Office of Inspector General (OIG) in Kansas City, MO, since October 13, 1987. In April 2000, I was promoted to audit manager. I have given several depositions in this matter.

2. I have reviewed the attached document entitled "PHASE II - ACTION ITEMS, March 17, 1998." I did not author, prepare, write, or develop this document. I understand that plaintiff claims that I "developed" that document. That assertion is false.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th day of January, 2008.

John Walsh

John Walsh

# PHASE II - ACTION ITEMS
## March 17, 1998

1. Tenant Layouts - Releasing the public defender (800 sqft) to complete the 6th floor. The 8th floor will be held to complete at the end, must save credit for that work. Madelynn to review area plans. — Linda D / Linda P
2. Chamber layouts, Change order out on Dec 18. HOK has drawings in shape. Need review and coordination with exiting installation. CRSS meeting and front end developed. — Linda P / Linda D
3. Finishes/Courtroom Fabric Selections/Jury Chairs. Fabric have run made buy some surplus. Chairs to be changed ordered to get chair and fabric desired.
4. 13.3 Claim-Response to Complaint filed Feb 17, 98. Discovery continuing. Consultants hired — Anne/Kevin
5. [redacted] — Anne/Kevin
6. [redacted] given another 60 day extension on funding. Now the end of April. Meeting with Art panel delayed. March 18, 1999 — Linda P/Anne A / Bernd/Cynthia
7. CPM - Current CPM date March 29, 1999. MEP included in Rev 12 not approved yet. Several ideas for As-Built CPM for Phase II. — CRSS/Karen P
8. Spandrel Beams/Precast Consultant - Initial meeting was held with HOK MDI .Precaster, & Midwest. Determined that the subcontractor didn't understand the problem. Requested Minutes from Robert Mendez. Do we have a file on this issue yet? Need to have letter from Bob H or Linda D. — Linda P/HOK
9. Meeting with Marshals. Received copy of Security items. Card Reader issue Letter to Marshals today. — Linda P
10. Year 2000, letter to MDI from Linda D. — Linda D
11. AV changes. Funding is to be forwarded maybe this week. PDL issued for District Courtrooms. Design being completed on others. — Linda P
12. Development of counter claim. John Walsh to start development.
13. Antenna contract, met with Barbara Lalk and Tom Walker
14. 1.4 Claim, Schor letter received. Response letter being prepared.
15. [redacted] Mike B.
16.

SA2

UNITED STATES COURT OF FEDERAL CLAIMS

MORSE DIESEL INTERNATIONAL, )
INC., )
Plaintiff, )
v. ) Nos. 99-279C
THE UNITED STATES OF AMERICA,) et al.
Defendant. ) (Judge Braden)

- - - - - - - - - - -

DEPOSITION OF JAMES J. BROGAN

Thursday, October 4, 2007

Reported by: Lori G. Mackenzie, RPR
Job No: 183438

A. The second figure.
Q. Before you move, just let me ask you this to save some time there, on the bottom is that 131, I see on that same Page 27, under "Work Completed," toward the bottom you I see $131 below a business tax, and I wonder whether that's your 131 for Paragraph 3?
A. Yes.
Q. Okay. All right. Go ahead with what you were going to tell me about the 18 million.
A. Okay. 18,741,507, it's -- okay, that's going to be -- there is some figures we have to reference.
Q. Okay. Can you just tell me what page you're on?
A. Page 13. Total General Conditions of minus -- Work Completed of negative 1,027,735, okay.
That needs to be offset by a figure that appears on Page 12 of Advanced Billings, negative Advanced Billings of 19,769,242.



So, negative 1,027 minus a negative 19,769 -- I don't have my calculator but that should equal the 18,741.
Q. Okay. I follow you.
A. Okay.
Q. Okay. And if we could -- if you could look at Page 27 of Exhibit 3 to your declaration, which is Exhibit 21, and you see at the top I see "Beck Steel."
Do you see that?
A. Yes.
Q. And if I look across under the column "Original," I see 240,000 and then under the column "Adjusted," I see 240,000, under "Work Completed," I see 240,000.
Do you see that?
A. Yes.
Q. And is that 240,000 the amount of the settlement between Morse Diesel and Beck Steel?
A. That's the amount paid pursuant to the settlement between Morse Diesel and Beck



Steel.
Q. So, does this Exhibit 3 also indicate that there was a payment in the amount of 240,000 from AMEC to Beck Steel?
A. Or Morse Diesel, yes.
Q. Yes.
A. Yes. It does.
Q. Could we go back to Exhibit 14?
MR. ANKLAM: Is he going to need this other exhibit in front of him at the same time or no?
MS. KIRCHNER: I don't think so.
MR. ANKLAM: Okay.
BY MS. KIRCHNER:
Q. And if you could turn to Pages I -- Roman Numeral I-3, Roman Numeral I-4, which is Bates Numbers 172 to 173.
Do you see that's the section regarding the Reinstatement Claim?
A. Correct.
Q. And then you have the Reinstatement Cost Summary on that page with the Bates



Number 173.
A. Correct.
Q. What number should have been included in place of the 1,257,270 figure on Page Bates Number 173?
A. That would be as referenced in Exhibit Number 21.
Q. I point you to Paragraph 16.
A. Okay.
Q. If that will help you.
A. It would be 1,166,618.33.
Q. And you're referring to your Exhibit 21, your declaration?
A. Correct.
MR. ANKLAM: And Paragraph 16 therein?
THE WITNESS: Correct.
(Brogan Exhibit Number 22 marked for identification.)
BY MS. KIRCHNER:
Q. Please take a look at what's been marked as Exhibit 22 to your deposition.





SA4