# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMEC CONSTRUCTION MANAGEMENT, INC., f/k/a Morse Diesel International, Inc. | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 99-279 and consolidated cases (Judge Braden) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SURREPLY TO PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....... 1
II. ARGUMENT ....... 3
A. The Government's Attempt to Recharacterize Mr. Walsh's Expert Reports as Summaries to Evade Its Preservation Obligations is Frivolous ....... 4
B. The Government Continues to Misstate Its Preservation and Expert Disclosure Obligations ....... 6
C. The Government's Use of the Privilege as a Sword and Shield is Impermissible ....... 12
D. The Government's Spoliation Will Likely Affect Its Remaining Counterclaims and Reprocurement Case ....... 14
III. CONCLUSION ....... 16

# TABLE OF AUTHORITIES

## CASES

*B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of New York, Inc.*,
171 F.R.D. 57 (S.D.N.Y. 1997) .......... 10

*Bashir v. Amtrak*,
119 F.3d 929 (11th Cir. 1997) .......... 11

*Berckeley Investment Group, Ltd. v. Colkitt*,
455 F.3d 195 (3d Cir. 2006) .......... 13

*Bittaker v. Woodford*,
331 F.3d 715 (9th Cir. 2003) .......... 13

*Bogosian v. Gulf Oil Corp.*,
738 F.2d 587 (3d Cir. 1984) .......... 8

*Condrey v. Suntrust Bank of Georgia*,
431 F.3d 191 (5th Cir. 2005) .......... 11

*DaimlerChrysler Motors v. Bill Davis Racing, Inc.*,
No. Civ. A. 03-72265, 2005 WL. 3502172 (E.D. Mich. Dec. 22, 2005) .......... 11

*Daniel v. Ben E. Keith Co.*,
97 F.3d 1329 (10th Cir. 1996) .......... 5

*Doe v. Norwalk Community College*,
No.3:04-CV-1976-JCH, 2007 WL. 2066497 (D. Conn. July 16, 2007) .......... 12

*Dyson Technology Ltd.v.Maytag Corp.*,
241 F.R.D. 241 (D. Del. 2007) .......... 14

*Eaton Corp. v. Appliance Valves Corp.*,
790 F.2d 874 (Fed. Cir. 1986) .......... 11

*Fidelity National Title Insurance Co. v. Intercounty National Title Insurance Co.*,
412 F.3d 745 (7th Cir. 2005) .......... 9

*Herman v. Marine Midland Bank*,
207 F.R.D. 26 (W.D.N.Y. 2002) .......... 7

*In re Agent Orange product Liability Litigation*,
506 F. Supp. 750 (E.D.N.Y. 1980) .......... 6

*In re Echostar Communications Corp.*,
448 F.3d 1294 (Fed. Cir. 2006) .......... 13

*In re NTL, Inc. Sec. Litigation*,
244 F.R.D. 179 (S.D.N.Y. 2007) .......... 11

*In re Seagate Technology, LLC*,
497 F.3d 1360 (Fed. Cir. 2007) .......... 13

*Jandreau v. Nicholson*,
492 F.3d 1372 (Fed. Cir.2007) .......... 11

*Kelley v. United Airlines, Inc.*,
176 F.R.D. 422 (D. Mass. 1997) .......... 12

*MTS Systems Corp. v. Hysitron Inc.*,
2007 WL. 2159490 (D. Minn. July 25, 2007) .......... 8

*McDonald v. Sun Oil Co.*,
423 F. Supp. 2d 1114 (D. Or. 2006) .......... 10

*Reg'l Airport Authority of Louisville v. LFG, LLC*,
460 F.3d 697 (6th Cir. 2006) .......... 7

*Residential Funding Corp. v. DeGeorge Finance Corp.*,
306 F.3d 99 (2d Cir. 2002) .......... 12

Rogers v. T.J. Samson Community Hospital,
276 F.3d 228 (6th Cir.2002) .......... 12

*Ross v. City of Memphis*,
423 F.3d 596 (6th Cir. 2005) .......... 13

*SCM Corp. v. United States*,
645 F.2d 893 (1981) .......... 7

*Sparton Corp. v. United States*,
77 Fed. Cl. 10 (2007) .......... 8

*Stanojev v. Ebasco Services, Inc.*,
643 F.2d 914 (2d Cir. 1981) .......... 8

*Synthes Spine Co., L.P. v. Walden*,
232 F.R.D. 460 (E.D. Pa. 2005) .......... 10

*Trentadue v. United States*,
397 F.3d 840 (10th Cir. 2005) .......... 11

*United Medical Supply Co., Inc. v. United States*,
77 Fed. Cl. 257 (2007) .......... 6, 12

*United States v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1991) .......... 13

*United States v. City of Torrance*,
163 F.R.D. 590 (C.D. Cal. 1995) .......... 7

*United States v. Swanquist*,
161 F.3d 1064 (7th Cir. 1999) .......... 5

*United States v. Tarwater*,
308 F.3d 494 (6th Cir. 2002) .......... 5

*United States v. Vasilakos*,
508 F.3d 401 (6th Cir. 2007) .......... 4

*University of Pittsburgh v. Townsend*,
2007 WL. 1002317 (E.D. Tenn. Mar. 30, 2007) .......... 8, 9

*Willy v. Administrative Review Board*,
423 F.3d 483 (5th Cir. 2005) .......... 13

*Wm. T. Thompson Co. v. General Nutrition Corp.*,
593 F. Supp. 1443 (C.D. Cal. 1984) .......... 6

**STATUTES AND OTHER AUTHORITIES**

Fed. R. Evid. 1006 .......... 5

Rules of the Court of Federal Claims, Rule 26(a)(2)(B) .......... 4, 6, 8, 10

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AMEC CONSTRUCTION MANAGEMENT, INC., f/k/a Morse Diesel International, Inc.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | Case No. 99-279 and consolidated cases (Judge Braden) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SURREPLY TO PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS**

## I. INTRODUCTION

Plaintiff, AMEC Construction Management, Inc. ("ACMI"), f/k/a Morse Diesel International, Inc., respectfully submits this Response to the United States' Surreply to ACMI's Reply in support of its Motion for Spoliation Sanctions. While continuing to contend on one hand that it took all required steps to preserve all documents relevant to this case (a contention belied by the evidence and testimony), on the other hand the Government persists in desperately waving around numerous inapplicable reasons why it was not obligated to retain documents that Mr. Walsh concedes he destroyed. This inherent contradiction, appearing in both of the Government's attempts to rebut ACMI's Motion, is typical of a spoliator. First, the Government tries to deny the destruction occurred despite overwhelming admissions to the contrary. *See* Surreply at 1. Yet, the Government concedes, as it must, that "Mr. Walsh did not retain all of his draft reports and correspondence with Government counsel regarding preparation of those reports. . ." Surreply at 10. Second, the Government compounds the prejudice to ACMI by asserting that if any documents were destroyed, the Court should just assume that they were

either irrelevant or that they were documents that the Government was not obligated to preserve anyway. *See* Surreply at 3.

The Government's spoliation of documents relating to Mr. Walsh is sanctionable whether or not the Government ultimately relied on Mr. Walsh's reports in its summary judgment briefs. If the law were otherwise, parties could merely withdraw a witness every time spoliation of documents relating to that witness is discovered, and spoliation would not be deterred or punished – a result directly opposite of the purposes of discovery rules.

The Government's failure still to comprehend the preservation obligations and expert disclosure obligations imposed by the rules of this Court and overwhelming case law on these topics is shocking. Even more troubling is the Government's position that destruction of relevant evidence is acceptable if *some* of the evidence is retained and if the Court happens to later determine – luckily for the Government – that the destroyed evidence would not have changed its opinion in the case. Of course, ACMI and the Court will never know the content of the documents destroyed over the 12 years that the Government failed to issue preservation instructions in this case and over the five years that Mr. Walsh worked as an expert. Nor will ACMI and the Court ever know what documents Mr. Walsh destroyed of which Government counsel did not manage to retain a copy. Notably, the Government has not submitted affidavits from all Government counsel involved in the case affirming that they retained all documents of the type Mr. Walsh admitted were destroyed.

In these circumstances, the issuance of sanctions for the Government's spoliation is more than warranted. ACMI has suffered prejudice from the Government's destruction of relevant documents. ACMI was entitled as a matter of right under the rules to all documents sent to, received by, or generated by the Government's expert Mr. Walsh in his role as an expert. The

documents that the Government permitted be destroyed may have created disputes of material fact had they been considered on summary judgment, and, in any event, have prevented this Court and ACMI from considering this case with a full evidentiary record. To cure the prejudice ACMI suffers as a result of the Government's document destruction, this Court should apply an adverse inference and vacate and reconsider the July 2005 and January 2007 summary judgment rulings on liability and its October 2007 summary judgment ruling on the damages amount. In the alternative, the adverse inference warrants a ruling on damages that an interest-only calculation should be used to calculate damages. This Court should also award a monetary penalty, attorneys' fees and costs to ACMI for litigating the spoliation issues.

## II. ARGUMENT

The Government's Surreply merely asserts the very same reasons it asserted in its December 21, 2007 Opposition regarding why it was not obligated to retain documents that Mr. Walsh destroyed. That makes sense because ACMI's Reply did not raise any new arguments or facts that were not included in its opening Memorandum of Law ("Mem.") or that constituted proper rebuttal to the Government's Opposition.[1] Indeed, none of the 24 new cases cited by the Government in its Surreply post-date the filing of its Opposition, and thus all 24 cases could have been cited by the Government in its Opposition. For the second time, the Government asserts that the materials fall into one or more categories: irrelevant, privileged or work product,

---

[1] *See* Motion for Leave to File Attached Response to Defendant's Surreply to Plaintiff's Motion for Spoliation Sanctions, at 2-4 (filed simultaneously). Contrary to the Government's wishful thinking, ACMI has not abandoned the position that Mr. Walsh destroyed relevant documents relating to facts alleged in the Government's counterclaims. Surreply, at 2 (citing Reply at 2 n. 2). ACMI specifically stated in its Reply: "As discussed in ACMI's opening Memorandum of Law, *in both roles [as a fact and expert witness]*, the Government had an obligation to preserve all potentially relevant and discoverable documents." Reply at 2 n. 2 (emphasis added).

outside the scope of discovery, not required to be retained, and/or not requested by ACMI in discovery.

The Government now attempts to cram Mr. Walsh's documents into one of those categories using three methods: (1) recharacterizing Mr. Walsh's expert reports to evade preservation obligations (a frivolous and sanctionable new argument first asserted in the Surreply); (2) misstating the preservation and expert disclosure standards applicable to its conduct; and (3) ignoring the clear import of its use of the attorney-client privilege as a sword and a shield. All three of these methods fail to rebut the justifications for sanctions. Despite the Government's waste of judicial resources in filing its lengthy and repetitive Surreply, the fact remains that the Government failed to satisfy its preservation obligations under the rules and applicable case law for a 12-year period and should be sanctioned for its conduct.

### A. <u>The Government's Attempt to Recharacterize Mr. Walsh's Expert Reports as Summaries to Evade Its Preservation Obligations is Frivolous.</u>

In a strange twist on its argument that Mr. Walsh was not required to retain all documents that he sent, received, or generated in his role as an expert, the Government asserts for the first time that the Government was not required to retain and produce all of Mr. Walsh's draft reports and correspondence with Government counsel because those reports are "summaries." Surreply at 3-4. That spurious position strains credulity, to say the least.

None of the cases cited by the Government in its Surreply support its position that Mr. Walsh's expert reports are mere summaries and fall outside Rule 26(a)(2)(B). All of the cases cited by the Government concern summary testimony offered pursuant to Federal Rule of Evidence 1006 to summarize voluminous documents to aid the jury in examining testimony and documents in evidence, not reports written by experts like Mr. Walsh. *See United States v.*

*Vasilakos*, 508 F.3d 401, 411-12 (6th Cir. 2007) (affirming conviction for mail fraud, money laundering and conspiracy and finding omission of limiting instruction on summary testimony to aid the jury in the examination of testimony and documents in evidence did not affect the trial's outcome); *United States v. Tarwater*, 308 F.3d 494, 516 (6th Cir. 2002) (affirming conviction for filing false tax returns and finding that permitting government to use summary charts at trial was not abuse of discretion); *Daniel v. Ben E. Keith Co.*, 97 F.3d 1329, 1335 (10th Cir. 1996) (affirming judgment for defendant in product liability action and finding plaintiffs suffered no prejudice by defendant's failure to review a summary of test results to facilitate cross-examination and closing argument); *United States v. Swanquist*, 161 F.3d 1064, 1072-73 (7th Cir. 1999) (affirming conviction for making false statement to financial institutions and finding that court did not abuse discretion in admitting testimony concerning summary charts where witness was not testifying as an expert witness but merely as a summary witness).

The matter at issue here is the Government's failure to retain documents, not whether particular documents or testimony would have been admitted into evidence at a trial as summaries pursuant to Fed. R. Evid. 1006. Mr. Walsh's expert reports are clearly not mere summaries, but identified as and relied on by the Government as expert reports. As ACMI pointed out in its opening Memorandum, the Government designated Mr. Walsh as an expert in May 2002, identified Mr. Walsh to the Court as an expert in January 2004 and again in February 2007, and Mr. Walsh testified at his May 2007 deposition that he understood he was acting as an expert witness. *See* Mem. at 9-10. The Government has, to ACMI's knowledge, never referred to those reports only as "summaries" in any Court hearing or pleadings, never invoked Federal Rule of Evidence 1006 with respect to Mr. Walsh's expert reports, and to this day continues to refer to Mr. Walsh's expert reports as reports throughout its Surreply. Moreover, even if Mr.

Walsh did generate summaries in his role as an expert, the Government would be required to retain and disclose those summaries under Rule 26(a)(2)(B).

The Court should reject the Government's attempt to evade its preservation obligations by arguing that Mr. Walsh's expert reports have somehow been magically transformed into summaries, after both parties and the Court have treated them as expert reports for the past five years. Indeed, the Government's argument is so frivolous that it amounts to an abuse of this Court and merits sanctions for ACMI's expenses of responding. RCFC 11.

### B. <u>The Government Continues to Misstate Its Preservation and Expert Disclosure Obligations.</u>

This Court will be making new law contrary to case law throughout the country if it holds that the Government's preservation efforts were adequate in this case and fails to issue sanctions. The Government's Surreply continues to misstate the Government's preservation obligations under the discovery rules. The Government had a duty to preserve all documents that "it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request." *See, e.g., Wm. T. Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984); *In re Agent Orange product Liability Litig.*, 506 F. Supp. 750, 751 (E.D.N.Y. 1980); RCFC 26. Indeed, this Court has emphasized that "as the enforcer of the laws, the United States should take this duty [to preserve documents for use in litigation] more seriously than any other litigant." *United Med. Supply Co., Inc. v. United States,* 77 Fed. Cl. 257, 274 (2007). Yet, the Government failed to prevent Mr. Walsh's

admitted routine destruction of communications with Government counsel and other documents that he determined for himself were "unimportant." Walsh Dep. 08/29/07, at 108:15-183:10.[2]

In its Surreply, the Government attempts to improperly limit its document preservation obligations to so-called "factual material" that Mr. Walsh considered and relied on in preparing his reports. Surreply at 5 (mis-citing Reply at 2). The Government's obligation is not merely to retain what it believes is classified as "factual material." Further, the Government was not obligated only to retain documents sent to or received from DOJ attorneys if those documents could be classified as "the source of any factual information considered or relied upon in preparation of his reports." Surreply at 6. As ACMI asserted in its Motion and Reply, the Government was required to retain and produce all documents and e-mails that Mr. Walsh sent or received since becoming the Government's expert, regardless of whether those documents contained counsel's impressions. Mem. at 18-26; Reply at 4-8. The Government's Surreply continues to ignore an "overwhelming majority" of courts holding that "Rule 26 creates a bright-line rule mandating disclosure of <u>all documents</u>, including attorney opinion work product, given to testifying experts."[3] *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 717 (6th Cir. 2006) (citing *Herman v. Marine Midland Bank*, 207 F.R.D. 26, 29 (W.D.N.Y. 2002)) (emphasis added); *United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal.

[2] The Government's citation to *SCM Corp. v. United States*, 645 F.2d 893 (1981), is inapposite because it merely discusses an audit conducted by the Defense Contract Audit Agency and does not concern any expert report or expert witness.

[3] The Government's argument that ACMI's specific request for the documents demonstrates that the Government was not required to produce them without prompting is circular and illogical. Surreply at 9-10. Under the Government's theory, a party's failure to produce documents would excuse the party from its requirement to do so, and the other party would waive its rights to documents if it reminded the producing party of its production requirements; that is nonsensical. Moreover, the Government did not object to producing documents without receiving formal interrogatories or document production requests; nor did the Government file a motion for a protective order despite its untimely and irrelevant complaints now. Surreply at 9-10.

1995) (holding that correspondence between government's counsel and its experts must be disclosed because disclosure of *all* documents considered by an expert is necessary to assure the independence of an expert's opinion); RCFC 26(a)(2)(B).

Similarly, contrary to the Government's construction of Rule 26 in its Surreply, the preservation obligation and rules pertaining to experts do not encompass only documents that are "relevant to a contested factual issue" or "relevant to a factual dispute." Surreply at 3. The single completely inapposite case the Government cites for that proposition concerns an employee's attempt to prove a prima facie case of age discrimination based solely on inferences that could be drawn from the circumstantial evidence of personnel files that he alleged his employer discarded. *Stanojev v. Ebasco Services, Inc.*, 643 F.2d 914, 923-24 (2d Cir. 1981). In that case, the documents were not alleged to have been improperly destroyed; the Court accepted as reasonable the employer's explanation that it discarded the records when it moved its corporate headquarters. *Id.* at 923. Further, the records would not have supported the employee's discrimination charge because they were from a time period prior to the employee's assumption of the position from which he was discharged and thus could not support any inference of age discrimination against the employee. *Id.* at 923-24.

Indeed, of the five case cited by the Government on this issue, two of the cases affirmatively support ACMI's construction of Rule 26's expert disclosure obligations, and the remaining three are inapposite.[4] *University of Pittsburgh v. Townsend*, 2007 WL 1002317, at *4

---

[4] *Sparton Corp. v. United States*, 77 Fed. Cl. 10, 15 (2007) (finding request for production of documents untimely because it related to fact discovery rather than expert discovery and was served after the close of fact discovery); *MTS Systems Corp. v. Hysitron Inc.*, 2007 WL 2159490, at *8 (D. Minn. July 25, 2007) (setting forth pretrial scheduling order text narrowing scope of expert discovery by order of court); *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, (3d Cir. 1984)
(continued...)

(E.D. Tenn. Mar. 30, 2007) (holding correspondence between experts and counsel must be disclosed pursuant to Rule 26(a)(2)(B) "if the communications provided information or other data to be considered by the expert in forming his opinions"); *Fidelity National Title Ins. Co. v. Intercounty National Title Ins. Co.*, 412 F.3d 745, 750-52 (7th Cir. 2005) (stating: "A testifying expert must disclose and therefore retain whatever materials are given him to review in preparing his testimony, even if in the end he does not rely on them in formulating his expert opinion."). Indeed, the *University of Pittsburgh* court declared a broad rule making all correspondence with an expert discoverable: "While communications that did not furnish information or data to be considered by the expert may not have been required to be disclosed, given the lack of attorney-client privilege or work product protection to these communications, *any* correspondence or communication between counsel and the experts was, at the very least, discoverable." 2007 WL 1002317, at *4 (emphasis in original). As ACMI has discussed repeatedly, any *potentially discoverable* information must be preserved, and the Government concededly failed to do so here. *See* Mem. at 18-26; Reply at 4-8.

The Government's assertions regarding whether it produced all correspondence between Government counsel and Mr. Walsh are further muddled by the Government's contradictory positions on the scope of such correspondence that the Government was required to retain and produce. First, the Government asserted in its Opposition that "such emails [between Government counsel and Mr. Walsh] are, in any event, privileged and/or irrelevant" and that "Notes taken by Mr. Walsh at the depositions of MDI witnesses in the course of this litigation . . . would be protected by the work product privilege and therefore not discoverable."

(...continued)
(pre-1993 Federal Rules amendment case holding documents prepared by attorney and shown to expert witness not subject to disclosure).

Opposition, at 28 and 33. The Government goes a step further in its Surreply in asserting that it was not obligated to retain or produce correspondence between Government counsel and Mr. Walsh if it was not "the source of any factual information considered or relied upon in preparation of his reports." Surreply at 6. Yet, the Government also states, without any support whatsoever: "Nor has the Government withheld attorney opinion work-product documents that were given to Mr. Walsh in the development of his expert reports." Surreply at 6. In light of the Government's statements describing what it believed was not subject to disclosure, it is anyone's guess what correspondence the Government continues to withhold from ACMI.

The Government's desperate effort to explain away its failure to retain Mr. Walsh's notes taken during depositions he attended is belied by the simple fact that the Government was obligated to retain all documents Mr. Walsh considered when preparing his expert report. Surreply at 10-11; cases discussed *supra* at 7-9. Even in the one case the Government cites concerning an expert's working notes, the plaintiffs in that case in fact produced all available handwritten notes taken by the experts. *McDonald v. Sun Oil Co.*, 423 F. Supp. 2d 1114, 1121 (D. Or. 2006). Other courts have held that notes experts create in their role as a testifying expert that are related to the subject matter of the expert's testimony must be disclosed, regardless of whether the notes contain otherwise privileged or work product information. *Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460, 464-65 (E.D. Pa. 2005); *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of New York, Inc.*, 171 F.R.D. 57, 62-63 (S.D.N.Y. 1997) (holding plaintiff required to produce documents reviewed by plaintiff's expert which contain the mental impressions, opinions, and, in some cases, litigation strategies of plaintiffs' attorneys pursuant to Rule 26(a)(2)(B)). Obviously, ACMI cannot tell the Court the subject matter of those notes, as the Government demands, because the Government concedes that Mr.

Walsh did not retain those notes. Surreply at 11. The contents of those notes are gone forever. The Government tellingly does not rebut ACMI's argument that Mr. Walsh's deposition notes are directly relevant to his expert reports because in his expert report Mr. Walsh expressly identified depositions of ACMI witnesses as information he relied on in forming his opinions. *See, e.g.*, Reply at 13-14 (citing Opp. at A568, 579, 588, 596, 605, 613, 621). Thus, Mr. Walsh did use those depositions, and likely the notes he took during those depositions, to record key aspects of the testimony on which he intended to rely, in preparing his report. As such, those notes should have been retained and produced to ACMI.

Moreover, the Government's conduct establishes the requisite culpability required to award sanctions. As ACMI stated in its opening Memorandum of Law and Reply, gross negligence or recklessness is sufficient to warrant spoliation sanctions where a party exhibits repeated acts of negligence and recklessness in failing to preserve documents, as is the case here.[5] *See* Reply at 8-10; Mem. at 32-36.[6] The repeated failure to issue preservation instructions

---

[5] The cases cited by the Government on this issue are entirely distinguishable. *Eaton Corp. v. Appliance Valves Corp.*, 790 F.2d 874, 878 (Fed. Cir. 1986) (applying 7th Circuit bad faith requirement in patent infringement case arising from 7th Circuit; affirming refusal to impose adverse inference in part because originals of the missing documents had been produced and counsel voluntarily disclosed the document destruction); *Bashir v. Amtrak*, 119 F.3d 929, 932 (11th Cir. 1997) (requiring bad faith in 11th Circuit and finding no bad faith where evidence was exceedingly strong that missing tape would further support witness testimony); *Condrey v. Suntrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005) (requiring bad faith in 5th Circuit); *Trentadue v. United States*, 397 F.3d 840, 863 (10th Cir. 2005) (requiring bad faith in 10th Circuit and finding court did not abuse its discretion in not sanctioning government where plaintiffs were permitted during trial to explore the reasons for the mishandling of evidence and to make argument regarding the significance of the missing evidence to the judge).

[6] *See also* cases cited therein: *Jandreau v. Nicholson,* 492 F.3d 1372, 1375-76 & n.3 (Fed. Cir.2007) (noting circuit split); *DaimlerChrysler Motors v. Bill Davis Racing, Inc.*, No. Civ. A. 03-72265, 2005 WL 3502172, at *2 (E.D. Mich. Dec. 22, 2005) (drawing adverse inference requiring an instruction to the jury that it may presume that the evidence destroyed would have been favorable to the plaintiff and awarded attorneys' fees and costs where the defendant was negligent in failing to issue preservation instructions); *In re NTL, Inc. Sec. Litig.*, 244 F.R.D.

(continued...)

establishes a level of recklessness or gross negligence that merits the imposition of an adverse inference from the resultant spoliation of evidence. *Id.* Mr. Walsh conceded that he did not receive any preservation instructions for 12 years – until two months after ACMI discovered his failure to retain relevant documents in his May 4, 2007 deposition. Walsh Dep. 08/29/07, at 163:15-20; 165:12-25; 210:10-16; 230:2-12 (attached as Ex. 5 to Mem.). The Government in its Surreply still fails to put forth any evidence to contradict that admission. Indeed, the Government's purposeful spoliation also is demonstrated by the Government's oft-repeated refrain that destroying documents is irrelevant because the Court happened ultimately to choose not to rely on the Government's expert report in reaching its decision. Unless the Government is prescient, there is no way that the Government could have known at the time it failed to retain documents which documents would prove dispositive in the case.

### C. The Government's Use of the Privilege as a Sword and Shield is Impermissible.

The Government evidently still does not understand the prohibition against using the attorney-client privilege as a sword and a shield. Simply put, because the Government has chosen not to reveal its document preservation instructions, if any, to Mr. Walsh, (i.e. has

(...continued)
179, 182-83, 198, 201 (S.D.N.Y. 2007) (imposing adverse inferences even on parties who have issued document preservation instructions, but failed to ensure that employees were regularly reminded of the preservation notice); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002) ("The sanction of an adverse inference may be appropriate in some cases involving the negligent destruction of evidence because each party should bear the risk of its own negligence."); *Rogers v. T.J. Samson Cmty. Hosp.*, 276 F.3d 228, 232 (6th Cir.2002) (negligent conduct may warrant imposition of adverse inference); *United Med. Supply*, 77 Fed. Cl. at 270-71 (holding repeated acts of gross negligence may warrant the same sanction as a single act committed in bad faith); *Kelley v. United Airlines, Inc.*, 176 F.R.D. 422, 428 (D. Mass. 1997) (adverse inference based on negligent destruction of documents); *Doe v. Norwalk Cmty. Coll.*, No.3:04-CV-1976-JCH, 2007 WL 2066497, at *5, *8 (D. Conn. July 16, 2007) (unpublished opinion) (holding failure to institute litigation hold at least grossly negligent, if not reckless and warranted imposition of an adverse inference jury instruction).

shielded those instructions from ACMI's view), the Government cannot use the existence of any such written document preservation instructions to support its argument that it fulfilled its obligation to preserve documents (i.e. as a sword to prove it should not be sanctioned). Every case the Government cites in its Surreply on this issue supports ACMI's understanding of the sword and shield prohibition.[7] In other words, the Government is abusing the privilege "by asserting claims [i.e. that it issued adequate preservation instructions] that [ACMI] cannot adequately dispute unless it has access to the privileged materials." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (cited by the Government in its Surreply at 13). The Government thus has implicitly waived the privilege by trying to use the privilege as both a sword and a shield.

ACMI is moving for sanctions against the Government for destruction of documents. Thus, any efforts the Government took to preserve documents, and the insufficiency of those efforts, is at the very core of the issues in ACMI's spoliation motion. The Government cannot refuse to disclose the contents of any written preservation instructions simply because those instructions would be used "as a 'sword' against the Government," (Surreply at 13), because the content of the instructions is unfavorable to the Government.

---

[7] *In re Echostar Communications Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006) (holding use of advice of counsel defense is a waiver of the privilege as to all other communications relating to the same subject matter); *In re Seagate Technology, LLC*, 497 F.3d 1360, 1372 (Fed. Cir. 2007) (same); *Ross v. City of Memphis*, 423 F.3d 596, 605 (6th Cir. 2005) (same); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (same); *Bittaker v. Woodford*, 331 F.3d 715, 718-19 (9th Cir. 2003) (same); *Willy v. Administrative Review Board*, 423 F.3d 483, 497 (5th Cir. 2005) (same and stating "a party may not use privileged information both offensively and defensively at the same time"); *Berckeley Investment Group, Ltd. v. Colkitt*, 455 F.3d 195, 222 n. 24 (3d Cir. 2006) (stating plaintiff "cannot rely upon the legal advice it received for the purpose of negating its scienter without permitting [defendant] the opportunity to probe the surrounding circumstances and substance of that advice); *Ross v. City of Memphis*, 423 F.3d 596, 605 (6th Cir. 2005) (same).

ACMI has never asserted that correspondence between Government counsel and Mr. Walsh that is unrelated to Mr. Walsh's formulation of expert opinions must be disclosed. *See* Surreply at 15. Of course, since Mr. Walsh's work prior to being officially identified as an expert in 2002 was by necessity considered by Mr. Walsh in forming his opinions for his expert report, any correspondence prior to 2002 that was considered by Mr. Walsh would be subject to disclosure. Even the case the Government cites, *Dyson Technology Ltd. v. Maytag Corp.*, supports ACMI's position that the Government was required to produce "the information and documents considered by [Mr. Walsh] *in connection with formulating his expert opinions* expressed in his report." 241 F.R.D. 247, 251 (D. Del. 2007). Emphasis added. Thus, *all* correspondence between Government counsel and Mr. Walsh should have been produced without regard to privilege if it was considered by Mr. Walsh in formulating his opinions. Additionally, contrary to the Government's odd statement, ACMI does not need to retain Mr. Walsh as its own expert in order to reference Mr. Walsh's reports and opinions in support of its legal position. Sureply at 16. ACMI is entitled to address Mr. Walsh's reports and opinions because he is the Government's fact witness and expert witness in this case.

**D. The Government's Spoliation Will Likely Affect Its Remaining Counterclaims and Reprocurement Case.**

As ACMI demonstrated in its Reply brief, the Government's unsupported assertions in its Opposition that "normal procedures with regard to preservation of documents and instruction of witnesses" were followed is belied by actual events. Surreply at 17. *See* Reply at 10-14. In actuality, the Government failed to issue document preservation instructions for 12 years and only issued (still-undisclosed) instructions after ACMI discovered the document destruction relating to Mr. Walsh. Despite Mr. Walsh's convoluted and contradictory testimony, the facts that emerge clearly are his admissions that he did not retain all of his documents and he

did not receive any document preservation instructions until May 2007. If those were the Government's "normal procedures," the Government is going to have some significant problems facing future spoliations motions in its remaining counterclaims and the reprocurement case when the spoliation is likely discovered to extend to other witnesses. Thus, the Government's spoliation of documents will likely affect the remainder of the litigation before this Court between the Government and ACMI (Ninth Counterclaim for violation of the Contract Disputes Act and counterclaims related to doorframes, Prompt Payment Act, and change orders, and the excess reprocurement cost case, Case No. 06-867).[8] *See* Mem. at 37-38; Reply at 14-16.

The Government asserts that its allegations in the remaining counterclaims and in the reprocurement case are not dependent upon Mr. Walsh's factual testimony. Surreply at 18-19. Yet, Mr. Walsh's draft reports and the Government's filings with this Court establish that the Government worked with Mr. Walsh as a fact witness and expert witness in developing, investigating, and reporting on the facts, analysis, and damages relating to its remaining counterclaims and the excess reprocurement cost claim. *See* Reply at 14-16. The Government does not state whether it intends to use any documents, as opposed to testimony, that were generated by, sent to, or received from Mr. Walsh in litigation of its other counterclaims and the reprocurement case. If any of Mr. Walsh's documents are used, the concern remains that related documents were destroyed by Mr. Walsh and not retained by the Government. Certainly if the Government intends to propose that Mr. Walsh be stricken as a witness for all purposes – fact and expert – in the remaining counterclaims and the reprocurement case and if the Government

[8] ACMI does not, by referring to these remaining counterclaims, waive its argument that the Government has waived the remaining counterclaims except the Ninth Counterclaim by failing to diligently litigate those claims. *See* 11/27/07 Motion for Clarification (Docket Entry 296).

will agree not to rely on any documents Mr. Walsh generated or sent, that proposal could be part of an adverse inference sanction in addition to the sanctions ACMI requests.

## III. CONCLUSION

For the foregoing reasons, the Court should draw an adverse inference against the Government that all documents destroyed would have been favorable for ACMI on the issues of liability and damages. Accordingly, the Court should vacate and reconsider its July 2005 and January 2007 decisions on liability and the October 2007 decision on damages in light of the adverse inference. Alternatively, the Court should apply an adverse inference solely to the damages issues and adopt ACMI's damages calculation theory of time-value of money.

Additionally, ACMI requests that the Court impose a monetary penalty of an appropriate deterrent amount on the Government and award ACMI its attorney's fees and costs incurred in uncovering and litigating the spoliation issues.

Respectfully submitted,

s/ James D. Wareham

James D. Wareham
Attorney of Record for Plaintiff
Kirby D. Behre
Danielle W. Pierce
Paul, Hastings, Janofsky & Walker LLP
875 Fifteenth Street, N.W.
Washington, D.C. 20005
Tel: 202-551-1728
Fax: 202-551-0128

Date: February 15, 2008